IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2006 NOV -7 P 1:51

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

GREGORY MONTAE FERGERSON,        )
                                 )
        Petitioner,              )
                                 )
v.                               )  CIVIL ACTION NO.
                                 )   3:06-CV-777-MHT
WARDEN KENNETH JONES, et al.,    )
                                 )
        Respondents.             )

## SERVICE OF EXHIBITS ON COURT

Comes now the attorney for the Respondents in the above-styled cause and in response to this Court's Order granting Fergerson's motion for service of exhibits (Doc. No. 11) files with this Court:

(1) Fergerson's brief on direct appeal ;

(2) The State's brief on direct appeal;

(3) Fergerson's reply brief on direct appeal;

(4) Fergerson's application for rehearing and brief in support of his application for rehearing;

(5) Fergerson's petition for writ of certiorari on direct appeal;

(6) Fergerson's brief in support of his petition for writ of certiorari;

(7) The State's brief on appeal from the denial of Fergerson's post-conviction petition;

(8) Fergerson's reply brief on appeal from the denial of his post-conviction petition; and,

(9) Fergerson's application for rehearing and brief in support of the rehearing from the denial of his post-conviction petition including his cover letter dated June 26, 2006.

The transcript of the hearing on Fergerson's request to withdraw his guilty plea is a part of the trial transcript previously filed with this Court as Respondents Exhibit 1.

Respectfully submitted,

Troy King (KIN047)
Attorney General

By-

Jack W. Willis (WIL075)
Assistant Attorney General

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November, 2006, I served a copy of

the foregoing on Fergerson, by placing the same in the United States Mail, first

class, postage prepaid and addressed as follows:

> Gregory Montae Fergerson
> AIS # 231286/E-66
> WE Donaldson Correctional Facility
> 100 Warrior Lane
> Bessemer, Alabama 35023-7299

_____
Jack W. Willis (WIL075)
Assistant Attorney General

Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone: (334) 242-7300
Fax: (334) 242-2848

201069/99390-001

3

CR-03-0290


IN THE COURT OF CRIMINAL APPEALS
STATE OF ALABAMA


GREGORY MONTAE FERGERSON,
APPELLANT,


V.S.


STATE OF ALABAMA,
APPELLEE.


ON APPEAL FROM THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA


CIRCUIT COURT CASE NUMBER:  CC-01-128


APPELLANT'S BRIEF IN SUPPORT OF DIRECT APPEAL


JEFFREY G. TICKAL
P.O. BOX 230
OPELIKA, AL  36803-0230
(334)-749-5115

## STATEMENT REGARDING ORAL ARGUMENT

Please note that pursuant to Rule 28(a)(1), Ala.R.App.P., Mr. Fergerson does not request oral argument. The issue is adequately addressed in the brief and, in the undersigned's opinion, does not need to be further addressed in oral arguments.

ii

## TABLE OF CONTENTS

Statement Regarding Oral Argument--------------- ii

Table of Authorities---------------------------- iv

Statement of the Case--------------------------- 1-3

Statement of the Issue-------------------------- 4

Statement of the Facts-------------------------- 5-17

Statement of the Standard of Review------------- 18-19

Summary of the Argument------------------------- 18-19

Argument in Support of Issue I------------------ 20-40

Conclusion-------------------------------------- 41

Statement of Rulings Adverse to the Appellant--- 42

Certificate of Service-------------------------- 43

# TABLE OF AUTHORITIES

**Table of Cases**

Arthur v. State, 711 So.2d 1031 (Ala.Cr.App. 1996)-----p.34

Atteberry v. State, 448 So.2d 425(Ala.Cr.App. 1983)-p.37-38

Ex parte Ritter, 375 So. 2d 270 (Ala. 1979)----------p. 37

Griffith v. State, 545 So. 2d 236(Ala.Cr.App. 1989)-p.36,40

Henderson v. Morgan, 426 U.S. 637 (1976)------------p. 35

McCarthy v. U.S., 394 U.S. 459 (U.S.Ill. 1969)-------p. 37

Pierce v. State, 484 So. 2d 506 (Ala.Cr.App. 1985)-p. 38-39

Smith V. O'Grady, 312 U.S. 329 (1941)----------------p. 32

U.S. v. Brown, 117 F. 3d 471 (C.A. 11 (Ga.) 1977)-----p. 32

**Statutes and other Authorities**

Rule 14.4(a)(1)(i), Ala.R.Cr.P---------------------p.31,32

## STATEMENT OF THE CASE

This is a direct appeal from the trial court's denial of Mr. Fergerson's motion to withdraw his guilty plea to capital murder. The Honorable Shane Cooper, and Wesley Schuessler initially represented Mr. Fergerson. As discussed below, Mr. Schuessler was allowed to withdraw and the Honorable William Whatley, Jr., was appointed as co-counsel. The Honorable Judge Jacob Walker, III, presided over the proceedings.

In the winter term of 2001, the Grand Jury of Lee County returned an indictment against Gregory Fergerson. (C. 13) The indictment charged Mr. Fergerson with murder made capital because the murder was committed during the course of an armed robbery, in violation of section 13A-5-40(a)(2), Code of Alabama 1975.

Mr. Fergerson filed various motions (C. 19-24, 26-27, 51-75), including a motion to dismiss the indictment (C. 29-36). On May 3, 2001, the trial court denied Mr. Fergerson's motion to dismiss the indictment (C. 9; R. 30), and Mr. Fergerson was arraigned. (R. 31-34.) He entered a

1

plea of not guilty and not guilty by reason of insanity.
(C. 9; R. 34).

Mr. Fergerson filed additional motions, including a
motion from Mr. Schuessler to withdraw as co-counsel. (C.
77, 80, 85-101, 106-107.)  On February 6, 2003, Mr.
Schuessler was allowed to withdraw as co-counsel, and the
Honorable William Whatley entered notice of appearance as
co-counsel. (C. 109,115; R. 77). Numerous other motions
were filed. (C.111, 116-17, 122-23, 135-188).

On August 20, 2003, a hearing was conducted. During the
hearing, Mr. Fergerson indicated his desire to plead guilty
to capital murder pursuant to the State's agreement to
recommend life in the penitentiary without the possibility
of parole. (R. 99-104.) A guilty plea hearing was conducted
on September 8, 2003, and Mr. Fergerson withdrew his plea
of not guilty and entered a plea of guilty to the charge of
capital murder. (C. 4; R. 106-12, 114-29).

On September 10, 2003, a jury trial was conducted, as
required by section 13A-5-42(Code of Alabama 1975). (R.
131-415). The jury found Mr. Fergerson guilty of capital
murder, as charged in the indictment. (C. 3; R. 412-13).
Pursuant to the plea agreement, Mr. Fergerson was sentenced

2

to life in the penitentiary without the possibility of parole. (C. 3; R. 413). The trial court ordered Mr. Fergerson to pay $1000 to the Victim's Compensation Restitution Fund. (C. 3; R. 414).

On September 26, 2003, and again on October 17, 2003, Mr. Fergerson filed pro-se written motions to withdraw his guilty plea. (C. 3, 347-49.) On November 10, 2003, following a hearing, the trial court denied Mr. Fergerson's request to withdraw his guilty plea. (C. 3, 351; R. 416-24.)

On November 14, 2003, Mr. Fergerson gave notice of his intent to appeal the trial court's denial of his motion to withdraw his guilty plea. (C. 2, 352.) The undersigned counsel was appointed to represent Mr. Fergerson on November 25, 2003, and this appeal follows. (C. 353, 355).

3

## STATEMENT OF THE ISSUE

Whether the trial court erred in denying Mr. Fergerson's motion to withdraw his guilty plea when the record clearly establishes that Mr. Fergerson did not understand the charge against him?

4

## STATEMENT OF THE FACTS

On September 8, 2003, Mr. Fergerson entered a plea of guilty to the charge of capital murder. (C.4; R. 114-29). The specific facts surrounding the guilty plea will be discussed at length in the argument portion of this brief. Although Mr. Fergerson pleaded guilty to the charge contained in indictment, a jury trial was still conducted, as required by section 13A-5-42, Code of Alabama 1975. (R. 131-415).

At trial the State presented evidence that around 10:15 p.m on November 4, 2000, two men armed with guns entered the Wendy's fast food restaurant in Opelika, Alabama.[1] Stephanie Johnson, Debrowski Johnson (Stephanie's brother), Maxine Chappell, and the manager, Patrick Hughes, were on duty at that time. (R. 237).

Stephanie testified that she was near the fry stand, her brother was near the lobby, Maxine Chapel was mopping the cooler, and Patrick Hughes was walking from the back of the restaurant toward the customer counter when the two men entered the store. (R. 237). She heard a male voice from

---

[1] Defense counsel agreed to allow the State to read most witnesses' statements into the record, and to waive any hearsay objection to those statements. (R. 109).

5

the other side of the counter order her to get down on the floor. (R. 237). Stephanie said that the black male was wearing a "Scream" mask. (R. 237).

Stephanie stumbled backwards and asked what the man wanted. (R. 238). She got down onto the floor as the man jumped the counter. (R. 238). Stephanie told the police that the man accidentally fired a shotgun at the floor in front of her. (R. 238, 246).

Around that same time, Stephanie saw another black male wearing a "Jason" or hockey-styled mask enter the kitchen door and point a small, black revolver at Patrick Hughes's head. (R. 239; 245-46.) That male directed Hughes toward the back of the store, and Stephanie heard a shot. (R. 239). The two men then fled the store. Stephanie went to the back of the store and found Patrick Hughes lying on the floor. (R. 240).

Debrowski Johnson stated that as he was walking away from cleaning the grill, he heard a male voice order Stephanie to get down and ask where the money was kept. (R. 241.) A door hid Debrowski from the assailant's view. (R. 249.) Debrowski said that man was wearing a "Scream" mask,

6

a black hooded sweatshirt, and black pants, and he was holding a shotgun. (R. 242.)

Debrowski told police that he also saw a man dressed in black and wearing a "Jason" mask standing in the hallway leading to the back of the restaurant. (R. 242-43, 247-48). According to Debrowski, that man was holding a chrome semi-automatic pistol.(R. 243).

As Debrowski slipped out of the door to the restaurant, he heard a gunshot. (R. 243). He ran to a nearby Dominos Pizza store and told an employee to call the police. (R. 243). Debrowski saw two men running toward the bridge near the Wendy's restaurant. (R. 243-44.)

Patrick Hughes died as a result of a gunshot would to the top of the head.(R. 269).

Various items of clothing, and weapons were found scattered along the nearby railroad tracks and under the bridge. (R. 257-58, 287-88). Specifically, some "dark colored sweat clothing" and a hockey mask were found on some rocks in a drainage area. (R. 259) A handgun was recovered from underneath the clothing and the hockey mask. (R. 275-76). A casing remained in the gun, indicating that

7

one of the bullets in the revolver had been fired. (R. 276).

White socks were found scattered in a dirt area at the edge of the railroad tracks. (R. 259, 278). One of the socks found under the bridge had bloodstains on it. (R. 281). A "Scream" mask was found in the middle of a railroad-maintenance road underneath the bridge. (R. 259). A Winchester thirty-thirty rifle was also recovered from underneath the bridge. (R. 274).

At some point after the crime occurred, a woman came to the Wendy's restaurant and told Mr. Thompson, the acting manager, that she knew who had committed the crime. (R. 288). The woman handed Mr. Thompson a piece of paper with the names "Gregory Furgalene" and "Moot Moot," written on the paper. (R. 289). Mr. Thompson got the tag number and description of the woman's automobile and furnished that information to the police. (R. 289).

That woman, whose name is Elizabeth Henley, subsequently gave a statement to the police. The statement provides, in relevant part:

> Henley stated that a close black female friend
> told her, Henley, that Gregory Fergerson and his
> girlfriend Crystal came to her residence and told

8

her that Gregory and a guy named Noot-Noot or
Moot-Moot did the robbery at Wendy's. Henley
stated that the female told her that Gregory said
after the robbery they hid the masks and he,
Gregory, ran to Crystal's house and told her.
Henley stated that Gregory told the female that
Noot-Noot shot the manager because he thought the
manager set off the alarm.  Henley stated that the
female said that Gregory is freaked out about it
and is trying to find a way to tell his mother
what happened.  Henley stated that Gregory is
afraid that Noot-Noot will kill him. Henley stated
that Gregory would probably confess if asked about
the crime.  Henley stated she did not want to give
a statement and did not want to reveal her black
female friend's name.  Henley stated that she
would get in touch with the female and try to
convince her to talk with the OPD.

(R. 290-91).

On November 14, 2000, Gregory Fergerson gave the

following statement to the police:

"My name is Greg Fergerson, and I live at Lot 3
Johnson's Trailer Park with my mom Patricia.  The
detectives asked me about the Wendy's robbery.  I
do not know nothing about it. They said that was
Saturday night the 4th.  That day I was at my mom's
early.  Then went over to Dover for a while.  I
saw Moot-Moot the same guy I got stopped with that
night with the brass knuckles on the block,
Magnolia Street, around in the morning, but not
after that.  A girl I see, Rachel Caldwell, came
by the block and picked me up around six, seven,
or eight that night, and we went to the Super
Eight Motel and got a room on the top back and
stayed all night except for when we visited her
folks.  Rachel drives a white Ford Taurus.  I see
other girls, too: Crystal Ferrell and Shirley
Benford, but my heart is Lee Ann Michelle Reed.
She lives in Wadley.  I didn't see Crystal that

9

night, but I saw her when I got back Sunday and
Sunday night.  I don't know why anybody would put
my name in the Wendy's robbery.   I don't know
anything about it."

(R. 313-21.)

On November 15, 2000, Shirley Ann Benford gave a

statement to the police. (R. 303-11)  She told police that

on the day of the robbery, Greg Fergerson and Moot-Moot

(Jamarian Thornton) had been at her house most of the day.

(R. 304-05).  Fergerson asked Benford if he could borrow a

pair of black pants for Moot-Moot, so she loaned him a pair

of black Tommy Hilfiger windsuit pants. (R. 304-05).

Benford said that Moot-Moot was wearing a Halloween mask

that he kept pulling down over his face. (R. 305). Benford

stated that she overheard a conversation between Fergerson

and Moot-Moot, during which Moot-Moot said, "[B]ehind

Golden Cherry is a good place to hit." (R. 306).

Later that night, Fergerson and Moot-Moot left.

According to Benford, "Moot-Moot was wearing all black and

had the mask on top of his head and Greg was wearing beige

pants and a light colored pullover top." (R. 306.) Benford

did not see either Greg or Moot-Moot carrying a gun,

10

although she had seen both of them with a gun in the past.

(R. 307)

Thirty or forty-five minutes later, Greg Fergerson returned to Benford's residence. (R. 307) Benford told the police:

> Greg had tears in his eyes. He said that he loved me and he hugged me. He told me that everything was going to be all right, but I didn't know what he was talking about. Before they left, I knew that they were going to do something stupid. By stupid, I mean something that … you can get in trouble for because Moot-Moot had a mask and was dressed in black and they way that they were talking. When they left my house before the robbery, they were walking.

> A couple of hours after Greg left my house, I called his mother Patricia Fergerson to see where Greg was. She told me that she didn't know where he was and asked if I knew that Wendy's had been robbed…. She told me that two masks were missing out of the house. One out of Greg's closet and the other out of his nephew's closet. One looked like a Jason mask and the other was a kid's ghost face mask.

(R. 307-09).

Benford told police that a couple of days later, Moot-Moot threatened to kill her if she did not stop talking to people about the incident. Specifically, she said:

> "He told me that he heard I had been running my mouth too much. I know that he was talking about Wendy's. He said that Greg probably wouldn't do

11

anything to me, but if I kept running my mouth, he
would kill me."

(R. 310).

Mr. Fergerson was arrested on November 15, 2000. (C.

12; R. 279). After he was jailed, Mr. Fergerson wrote a

letter to a Rachel Ann Caldwell, which was read into

evidence. (R. 292-96) In the letter, Mr. Fergerson

essentially instructed Caldwell to tell the police that he

was with her on the night of the incident.

Detective John Thompson received a letter dated

November 16, 2000, supposedly written by an Ann Callaway.

In the letter, Callaway claimed that Greg Fergerson could

not have committed the crime because he was with her when

the crime took place. (R. 296-98). The police determined

that Rachel Ann Caldwell in fact wrote the letter and that

its contents were not true. (R. 299).

On November 16, 2000, Mr. Fergerson gave a second

statement to police. It provides, in relevant part:

> I gave a statement the other day and it was not
> true. I do have a heart and want to tell the
> truth.
>
> Me and Moot-Moot, Jamarian Thornton, went to
> Wendy's to rob it. When we went in, I stayed up
> front and Moot-Moot went to the back. I heard a
> gun go off. I had my finger on mine and my gun

12

went off.  We ran, but our ride left us.  The dude
that was going to give us a ride was a nigga that
Moot-Moot knew.  I had on dark sweatpants and
sweatshirt.  We both had on Jason Masks. We walked
from Hardaway Projects—it's called something else
now—to Wendy's.  It's easy to get from Hardaway to
Wendy's walking with guns.  You put the long gun
down your pants leg and the pistol in your pocket.
That night after the robbery, Rachel Caldwell did
come pick me up.  The mask had dark black holes
for eyes and a dark hole for a mouth.  We had been
at Shirley's earlier that night when it was dark."

(R. 323-25.)

On January 12, 2001, Yvonne Dooley gave a statement to

the police.  She told the police that her sister, Crystal

Ferrell, dated Greg Fergerson.  Dooley told police the

following conversation occurred several days after the

crime was committed:

> "…She [Crystal] told me that Greg and Moot-Moot
> had killed the guy at Wendy's. I asked her if Greg
> said he did it, and Crystal said she wasn't going
> to ask him.  I mean, she didn't want to ask him if
> he was the one who killed the guy.  He had told
> her that he robbed the place.  Greg never said
> anything to me.  He only said he had done
> something really fucked up…."

(R. 301-02.)(Irrelevant portions omitted.)

On May 17, 2001, Mr. Nick Abbett, the District Attorney

for Lee County, received the following hand-written letter

from Gregory Fergerson:

13

> My name is Greg Fergerson and I know something
> about the Wendy's case that has not been told.  I
> was thinking that you would find out what really
> happened, but it looks like you ain't.  You have
> it all messed up.  To tell the truth, you have an
> innocent man back here.  It was three people who
> had something to do with it, but he was not one of
> them.  I did have something to do with it, but
> it's not how you think.  I am trying to get myself
> right with God.  But I know I have to tell the
> truth one day, but I do not want it to be too
> late.  I will tell you everything that really
> happened if you would help me out.  I do not know
> how this is going to end, but the way it looks is
> I am gone to get some time for something I did not
> do.  So I have to tell what really happened before
> it gets worse.

(R. 283-85.)

Forensic tests revealed that the bullet removed from

the victim matched bullets that were test-fired from the

revolver. (R. 330,334-35)  DNA from the sock containing the

bloodstain was consistent with the known DNA sample taken

from Jamarian Thornton. (R. 344.) DNA obtained from the

hockey-styled mask was consistent with a known DNA sample

taken from Gregory Fergerson; however, there was no way to

determine when the DNA had been deposited on the mask. (R.

345-46, 349)

Jamarian Thornton agreed to plead guilty to murder and

to testify against Mr. Fergerson in return for a

recommended sentence of life in the penitentiary. (R. 368-

69). Thornton testified at trial that he and Gregory Fergerson were friends. (R. 353). He said on November 4, 2000, Greg asked him if he wanted to rob the Wendy's, and he agreed. (R. 353-54). Thornton claimed that he had a "thirty-thirty rifle" that he purchased from a "crack head" for $10. (R. 354). Thornton testified that Greg had a "38 revolver." (R. 355)

Thornton stated that before going to the Wendy's restaurant, he and Greg spent some time at Shirley Benford's house. (R. 357-38). Thornton said that he got a black hooded sweatshirt from Fergerson and a pair of navy windsuit pants from Benford. (R. 356). Thornton claimed that Greg gave him a "Scream" mask, and that Greg had a "Jason" or hockey mask. (R. 357; 366-67). Thornton testified that the elastic band on the "Scream" mask broke while he was playing around with the mask, and that he re-tied the band. (R. 358).

According to Thornton, he and Greg left Benford's house and walked to Orchard Street. (R. 358). Approximately twenty minutes later, around 9:45, p.m., he and Greg began walking toward Wendy's. (R. 358-59). He testified as follows:

15

"We approached the Wendy's, and we had already
agreed earlier in the conversation that Fergerson
would go to the back and I would stay up front. So
we approached the restaurant. I went to the back.
Excuse me. Fergerson went to the back, and I
stayed up front, and I jumped the counter with the
thirty-thirty rifle in my hand. When I jumped the
counter, my rifle went off. And by that time
Fergerson already made it to the back with the
store manager, from what I understand, and when my
rifle—I accidentally hit the trigger on my rifle
and it went off. I heard—a couple of—a couple of
seconds later I heard Fergerson in the back making
a—you know, a little—it was a little commotion
going on, and I suddenly heard a shot. Fergerson
came from the back and said something to the
nature of—something to the nature—he was
trembling, and I killed him. And we exited the
restraunt."

(R. 359).

During direct examination, Thornton stated that he wore
socks on his hands during the crime. (R. 364-65). He said
he injured his hand a few days before the crime, and that
explained why his blood was found on one of the socks. (R.
366). Thornton admitted that he did not know how to load
the rifle. (R. 363).

Thornton testified that after they left the restaurant,
they ran underneath the bridge and removed the clothes that
they were wearing on top of their other clothes. (R. 360-
61). They discarded the masks, and weapons. (R. 360-62).
Thornton claimed that Mr. Fergerson told him that he shot

16

the manager because the manager was trying to attack him. (R. 363).

Mr. Fergerson's written guilty plea form was admitted into evidence for the jury's consideration. (C. 339-44; R. 378).

The jury found Mr. Fergerson guilty of capital murder as charged in the indictment (R. 412-13), and he was sentenced to life in the penitentiary without the possibility of parole. (R. 414).

17

## SUMMARY OF THE ARGUMENT AND STATEMENT OF THE STANDARD OF REVIEW

Pursuant to Rule 28,(a)(8) & (9), Ala.R.App.P., Mr. Fergerson sets forth the following summary of his argument and the applicable standard of review.

From the very beginning of the criminal proceedings, Mr. Fergerson maintained that he was not the "triggerman," and that he never intended to kill Patrick Hughes. He continually expressed that his only intent was to commit a robbery, and that he had no intent to kill Hughes, nor did he know or foresee that Jamarian Thornton would kill Hughes. Mr. Fergerson's position **never** wavered throughout the criminal proceedings, and was, in fact, the basis for his motion to withdraw his guilty plea.

From the record, it is clear that Mr. Fergerson did not understand the elements of the charge against him. He did not understand that by pleading guilty to the charged offense he was, in essence, agreeing that he possessed the requisite intent to kill Patrick Hughes—a matter that he vehemently denies. Because Mr. Fergerson's guilty plea was

18

not knowingly and intelligently given, the trial court abused its discretion in denying Mr. Fergerson's motion to withdraw his plea.

I.

**Whether the trial court erred in denying Mr. Fergerson's motion to withdraw his guilty plea when the record clearly establishes that Mr. Fergerson did not understand the charge against him?**

The question before this Honorable Court is whether Mr. Fergerson's guilty plea to capital murder was knowingly and intelligently rendered.  From the very beginning of the criminal proceedings, Mr. Fergerson maintained that he was not the "triggerman," and that he never intended to kill Patrick Hughes. He continually expressed that his only intent was to commit a robbery, and that he had no intent to kill Hughes, nor did he know or foresee that Jamarian Thornton would kill Hughes. Mr. Fergerson's position **never** wavered throughout the criminal proceedings, and was, in fact, the basis for his motion to withdraw his guilty plea.

From the record, it is clear that Mr. Fergerson did not understand the elements of the charge against him.  He did not understand that by pleading guilty to the charged offense he was, in essence, agreeing that he possessed the requisite intent to kill Patrick Hughes—a matter that he

20

vehemently denies.  Because Mr. Fergerson's guilty plea was

not knowingly and intelligently given, the trial court

abused its discretion in denying Mr. Fergerson's motion to

withdraw his plea.

There is no dispute that a particularized "intent to

kill" the victim is a critical element in the capital

offense of robbery/murder. The State's theory of the case

is that Mr. Fergerson possessed the requisite intent to

kill Patrick Hughes pursuant to the complicity doctrine.

Whether the indictment adequately charged Mr. Fergerson

with the necessary intent was the subject of an intense,

ongoing debate at the trial court level.  An understanding

of that debate and the proceedings that followed is

critical to resolving the issue presented in this appeal.

### Essential Factual Information

The indictment charged, in pertinent part:

"The Grand Jury of said County charge that … Greg
Fergerson did intentionally cause the death of
Thomas Patrick Hughes, IV, by shooting him with a
rifle and/or a pistol, and Gregory Montae
Fergerson caused said death during the time that
Gregory Montae Fergerson was in the course of
committing a theft of lawful paper currency of the
United States of America, the exact denominations
of which are unknown to the Grand Jury, the
Property of Bodnar Enterpirses, Inc., a
corporation d/b/a Wendy's' … by the use of force

21

> against the person of Thomas Patrick Hughes, IV,
> with intent to overcome his physical resistance or
> physical power of resistance or to compel
> acquiescence to the taking of or escaping with the
> said property, while … Gregory Montae Fergerson,
> or another participant, to-wit:  Jamarian Quortez
> Thornton … was armed with a deadly weapon or a
> dangerous instrument, to-wit: a rifle and/or a
> pistol, in violation of 13A-5-40(a)(2) of the Code
> of Alabama."

(C. 13-14).

On March 2, 2001, defense counsel filed a motion to

dismiss the indictment on the ground that the indictment

was impermissibly vague because it did not give Mr.

Fergerson adequate notice of the charge against him. (C.

29-36). Specifically, counsel argued:

> The present indictment does not come close to
> apprising Gregory Fergerson of the case he needs
> to defend, and it certainly does not charge the
> element of the offense of capital murder in that
> he has the same intent to kill as the shooter.

> There is no language describing any of the facts
> or circumstances of the crime that are relative
> [to] his state of mind or show that he intended
> anything other that to commit a robbery.  It fails
> to set forth particular acts or means by which
> Gregory Fergerson allegedly committed the murder
> because he possessed the same state of mind as the
> shooter."

(C. 31.)  The State filed a written response.  (C. 38-40).

On May 3, 2001, an arraignment hearing was conducted.

Prior to arraignment, the trial court entertained arguments

22

on the motion to dismiss the indictment, during which the

following occurred:

> "MR. SCHUESSLER [defense counsel]: … Our biggest
> battle ground in this case is really on the intent
> aspect and making absolutely sure that a jury
> doesn't convict for capital murder because the
> State convinces them beyond a reasonable doubt
> that he has committed the offense of felony
> murder, and that's an area that we just will
> continue to address at every hearing we have,
> because that to us is where the biggest chance of
> a injustice can take place.  And I have kind of
> outlined that for you on this chart."

> "….

> "MR. SCHUESSLER:  … There was an intentional
> killing by Mr. Thornton, and that is—that is going
> to be the evidence that comes before the jury, but
> if it's not properly instructed, **the State will
> have showed an intentional killing the intent is
> that of Mr. Thornton, and it will be – it will
> become incredibly confusing.  They will have
> intentional killing.  The only participation of
> Mr. Fergerson according – he was a participant in
> a robbery.**

> "THE COURT:  Of course, these cases will be tried
> separately, and I think the Thornton case will be
> tried first."

> "MR. ABBETT [District Attorney]:  I expect to.

> "MR. SCHUESSLER:  Yes, sir.  I read the word
> intentional there based on the affidavit of the
> crime alleged, you know, and just looking at the
> evidence, it would be an assumption of mine at
> this point that there will be evidence of
> intentional killing by Mr. Thornton present in Mr.
> Fergerson's case."

23

MR. GLANZER [Assistant District Attorney]:  We are arguing complicity.

"THE COURT:  Well, at this point, that's denied… "

(R. 28-30). (Emphasis added.)

Following a reading of the indictment, Mr. Fergerson entered a plea of not guilty and not guilty by reason of mental disease or defect. (R. 31-34).  A discussion ensued during which defense counsel argued that because of the confusing indictment, there was a clear risk that Mr. Fergerson could be convicted of capital murder when he was only guilty, at most, of felony murder. (R. 35-41).  For the Court's consideration, defense counsel introduced a memorandum on the distinction between capital murder and felony murder for the nontriggerman. (R. 35-41; C. 42-25). Counsel also moved to prohibit the reading of the indictment to the jury, and submitted a proposed alternative to reading the indictment to the jury. (R. 35-41; C. 46-49)

On August 20, 2003, a hearing was conducted. (R. 100-104).  The attorney who filed and argued the motion to dismiss the indictment no longer represented Mr. Fergerson. Mr. Fergerson's new counsel indicated that a plea agreement

24

had been reached--Mr. Fergerson would plead guilty to

capital murder and the State would recommend a sentence of

life in the penitentiary without the possibility of parole.

(R. 102).  The trial was scheduled for September 8, 2003.

(R. 102).

On September 8, the case was called for trial. A

hearing was conducted outside the presence of any potential

jurors.  The trial court discussed the order of the

proceedings. (R. 107-110).  As the court prepared to take

Mr. Fergerson's guilty plea, the following occurred:

"THE COURT:  … Now, do you want to go through with
the plea at this time?

"(Brief pause was had.)

"MR. FERGERSON:  (Shaking head in the negative.)

"MR. WHATLEY [defense counsel]:  You don't want
to?

"MR. FERGERSON:  (Shaking head in the negative.)

"MR. WHATLEY:  Judge, my client has just informed
me that he does not want to plead guilty."

(R. 110).

The trial court stopped the proceedings in order to

allow defense counsel to confer with Mr. Fergerson. (R.

111) When an agreement could not be reached, the trial

25

court dismissed the proceedings until the following day.
(R. 111-112).

That same day, however, at 2:30 p.m., court reconvened,
and Mr. Fergerson indicated his desire to plead guilty. (R.
115). The trial court asked Mr. Fergerson some general
questions regarding his age, educational background, and
whether he was under the influence of any drugs. (R. 116-
17). The trial court questioned Mr. Fergerson whether he
understood the guilty plea forms that he signed, and
whether he understood that he was waiving those rights by
pleading guilty. (R. 117-19). The court ascertained that
Mr. Fergerson was satisfied with his counsel. (R. 119). The
trial court read the indictment to Mr. Fergerson and asked
if he had any questions regarding the indictment. (R. 119-
22).

Although lengthy, the conversation that transpired next
is critical to the understanding of this issue:

"THE COURT:  Now has that charge been explained to
you by your lawyers?

"MR.FERGERSON:  Yes, sir.

"THE COURT:  Do you have any questions about it?

"MR. FERGERSON:  No, sir.

26

"THE COURT:  Do you want me to read that
indictment to you again?

MR. FERGERSON:  No, sir.

"...

"THE COURT:  All right.  Now, have you discussed
the facts and your involvement in this case with
your lawyers?.

"MR. FERGERSON:  Involvement?

"THE COURT:  Right, have you talked to your
lawyers about this case?

"MR. WHATLEY [defense counsel]: Have you met with
us to talk to us about the facts of this case?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  Okay.  **And did you commit the offense
of capital murder?**

"MR. FERGERSON:  Well, **the robbery, yes, sir, but
the murder, no, sir.**

"...

"MR. FERGERSON:  **I participated in the robbery,
but I didn't pull the trigger.**

"THE COURT:  Well, that – that's not the question.
Did you commit the offense of capital murder?

"MR. FERGERSON:  Yes, sir.

"...

"THE COURT:  And are you pleading guilty of your
own free will and because you are guilty?

27

"MR. FERGERSON:  **I am not guilty of the murder, no, sir.**

"MR. WHATLEY [defense counsel]:  It's a capital murder. **You are pleading to capital murder.  Not asking to murder.**

"MR. FERGERSON: Yes, sir.

"THE COURT:  Again, I am going to ask you again: Are you pleading guilty of your own free will and because you are guilty?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  Now, do you understand that by entering this plea of guilty, you are basically waiving your right to appeal as set forth on the back of Form A?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  All right…

(R. 122-25). (Emphasis added.)

The trial court discussed the applicability of the Habitual Offender statutes. The following then transpired:

"THE COURT:  Okay.  Now, this question is to the attorneys.  Have you conferred with the Defendant and advised him concerning the facts in this case and his rights?

"MR. COOPER:  Yes, Your Honor.

"MR. WHATLEY: Yes, sir.

"THE COURT:  Have ya'll explained the nature of the charge to him?

"MR. COOPER:  Yes, sir.

28

"MR. WHATLEY:  Yes, sir.

"THE COURT:  Do you recommend the Court accept his plea?

"MR. WHATLEY:  Yes, sir, we do.

"MR. COOPER:  Yes, sir.

"THE COURT:  Have you conferred with him regarding his appellate rights?

"MR. WHATLEY:  Yes, sir, we have.

"THE COURT: And at this point I think we should wait until we receive the verdict from the jury. And at this time I am not going to ask the allocution, but I will ask you again, Mr. Fergerson, to the charge of capital murder, how do you plead?

"MR. FERGERSON:  **I plead guilty to the robbery, sir.**

"MR. WHATLEY:  Guilty to –

"THE COURT:  Well, that's not the charge.  The charge isn't robbery.  To the charge of capital murder, how do you plead?

"MR. FERGERSON:  **I thought the charge was murder and robbery.**

"THE COURT:  **It is. It's murder – it's a murder taking place during the course of the robbery. That – that would be the definition of capital murder in your case.**

"MR. FERGERSON:  I plead guilty to it.

"THE COURT:  Okay.

29

"MR. ABBETT [District Attorney]:  Judge, I think I want the record to be clear that he is pleading guilty to the capital murder; he just denies actually being the person that pulled the trigger that killed the decedent, Thomas Patrick Hughes. Is that correct?

"THE COURT:  Is that correct, Mr. Fergerson?

"MR. FERGERSON: Yes, sir.

"THE COURT: **You participated in this robbery with Jamarian Quortez Thornton.**  He was the other person that was wearing a mask on the occasion when Mr. Hughes was killed?

"MR. FERGERSON:  Yes, sir."

(R. 125-27). (Emphasis added.)

On September 10, 2003, the jury trial was conducted. The jury found Mr. Fergerson guilty of capital murder, as charged in the indictment. (R. 412-13).  The trial court asked Mr. Fergerson if he had anything to say and he responded:  "…I would like to say I am sorry for the loss of the family victim, and **I did not take a life.**"  (R. 413). (Emphasis added.)

On September 23, 2003, Mr. Fergerson filed a pro-se motion to withdraw his plea, and he renewed that motion on October 17, 2003. (C. 3, 347-39).  A hearing was conducted on Mr. Fergerson's motion.  **Mr. Fergerson was represented at that hearing by the same attorneys who assisted him**

30

during the guilty plea and trial proceedings, and the trial judge also presided at the guilty plea hearing.

In support of his motion, Mr. Fergerson argued that he wanted to withdraw his plea because of evidence presented at trial, and evidence that he gathered after trial. (R. 418) The gist of Mr. Fergerson's argument was that he should be allowed to withdraw his plea because there was evidence to support his contention that he did not intend to kill the victim: Jamarian Thornton accidentally admitted at trial that he was the person who went to the back of the restraunt with the manager, and there were witnesses who would testify that Thornton admitted to them that he was the triggerman. (R. 417-18.) Although Mr. Fergerson's pro-se motion was not lengthy, given the trial court's familiarity with the case, it was certainly sufficient to apprise the trial court of the reason he wished to withdraw his plea. The trial court denied Mr. Fergerson's motion to withdraw his guilty plea. (R. 420; C. 351).

### Argument

Rule 14.4,(a)(1)(i), Ala.R.Cr.P. states:

"[t]he Court shall not accept a plea of guilty without first addressing the defendant personally in the presence of counsel in open court for

31

> purposes of ascertaining that the defendant has a
> full understanding of what a plea of guilty means
> and its consequences, by informing the defendant
> of and determining that the defendant understands
> the **nature of the charge and the material elements
> of the offense to which the plea is offered.**"

"[R]eal notice of the true nature of the charge [is] the first and most universally recognized requirement of due process...." Smith v. O'Grady, 312 U.S. 329,334 (1941). See also, Committee Comments to Rule 14.4, Ala.R.Cr.P.

> A defendant does not receive "real notice" of the
> nature of the charge against him unless he is
> informed of the elements of the charged offense.
> As we have previously held: The defendant receives
> "real notice" of the charge when he has been
> informed of both the nature of the charge to which
> he is pleading guilty and its elements. **This is so
> because a plea of guilty represents, in essence,
> an admission as to each and every element of the
> offense. In addition, the defendant should
> understand how his conduct satisfies those
> elements.** *Gaddy,* 780 F.2d at 943-44 (citations
> omitted); *see also Stano v. Dugger,* 921 F.2d 1125,
> 1142 (11th Cir.1991) (en banc) (recognizing that,
> prior to entering a guilty plea, a defendant must
> receive information on "the nature of the offense
> and the elements of the crime"). "At the very
> least, due process requires that the defendant,
> prior to tendering a plea of guilty, receive a
> description of the 'critical elements' of the
> charged offense...." *Gaddy,* 780 F.2d at 945
> (citation omitted).

U.S. v. Brown, 117 F. 3d 471, 477 (C.A. 11 (Ga.) 1977).

The issue before this Honorable Court is whether Mr. Fergerson's plea was knowingly and voluntarily rendered?

32

Did Mr. Fergerson have "real notice of the true nature of the charge?" Did he understand that by pleading guilty to capital murder, he was agreeing that he possessed the requisite intent to kill the victim—a matter that he vehemently denied throughout the entire proceedings. Did Mr. Fergerson understand that his plea would, in essence, relieve the State of its burden of proving that he possessed the necessary intent commit the murder? A review of the proceedings clearly indicates that Mr. Fergerson did not understand the charge, or the ramifications of his plea.

From the very outset of the guilty plea proceedings, Mr. Fergerson indicated his reluctance to plead to the charge contained in the indictment—an indictment that defense counsel argued was fatally flawed. In fact, the first guilty plea hearing had to be dismissed because Mr. Fergerson retracted his intent to plead guilty. When court reconvened, Mr. Fergerson was still confused about the charge contained in the indictment. **While perhaps simplistic, it appears that Mr. Fergerson thought that the robbery and murder elements could be segregated into separate offenses, and that all he was admitting to was**

33

that he participated in the robbery and the fact that there

was a murder—not his participation in the murder. The

Court's attempt to clarify the charge only made matters

worse.

> " ' "[N]o defendant is guilty of a capital offense
> unless he had an intent to kill, and that intent
> to kill cannot be supplied by the felony murder
> doctrine. *Beck v. State,* 396 So.2d 645, 662 (Ala.,
> March 6, 1981)"; Carnes, *Alabama's 1981 Capital
> Punishment Statute,* 42 Ala.Law 456, 468 (1981).
> See also *Enmund v. Florida,* 458 U.S. 782, 102
> S.Ct. 3368, 73 L.Ed.2d 1140 (1982), but see
> *Godbolt v. State,* 429 So.2d 1131, 1134
> (Ala.Cr.App.1982), holding that *Enmund* is
> inapplicable to a defendant who does not receive
> the death penalty. **However, a non-triggerman can
> be convicted of a capital offense if he was a
> knowing accomplice to the intentional killing
> itself.** *Ritter v. State,* 375 So.2d 270 (Ala.1979).
> "[T]he accomplice liability doctrine may be used
> to convict a non-triggerman accomplice, if, but
> only if, the defendant was an accomplice in the
> intentional killing as opposed to being an
> accomplice merely in the underlying felony." *Ex
> parte Raines,* 429 So.2d 1111, 1112 (Ala.1982),
> cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76
> L.Ed.2d 368 (1983).

<u>Arthur v. State</u>, 711 So.2d 1031, 1057-1058 (Ala.Cr.App.

1996). The confusion anticipated by the defense in its

motion to dismiss the indictment became a reality in the

guilty plea proceedings.

Mr. Fergerson's guilty plea to what-he-thought was, in

essence, a felony-murder was then used as very damning

34

evidence before the jury. In fact, the prosecutor told the jury in opening arguments that Mr. Fergerson admitted to killing the victim. (R. 225, 226). Clearly, Mr. Fergerson intended no such admission.

It does not matter whether the evidence produced at trial supports Mr. Fergerson's guilty plea. All that matters for the purposes of the issue raised in this appeal is whether Mr. Fergerson, at the time he entered his guilty plea, fully understood the nature of the charges against him.  Mr. Fergerson respectfully maintains that he did not.

> "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving. See E.g., Johnson v. Zerbst, 304 U.S. 458, 464-465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, **or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.  Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.** Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859."

Henderson v. Morgan, 426 U.S. 637 at 645, 96 S.Ct. 2253 at 247, n. 13 (1976). (Emphasis added.)

In this case, "**the court took no steps to satisfy itself that this particular appellant understood the meaning of the charges, and to learn what acts allegedly**

35

committed by appellant constituted the elements of the

charge." <u>Griffith v. State</u>, 545 So. 2d 236, 240

(Ala.Cr.App. 1989).(Emphasis added).

    To determine whether Mr. Fergerson "understood the

meaning of the charge", the trial court simply verified

that Mr. Fergerson signed the "<u>Ireland</u>" form.  That form

purportedly acknowledges Mr. Fergerson's understanding of

the charge; however, the form contains **no** explanation of

the charge.  Despite the ongoing controversy over the

deficient indictment, the trial court did not explain the

elements of the capital crime to Mr. Fergerson.  The trial

court appears to rely on defense counsels' assurances that

they had explained the charges to Mr. Fergerson. Given Mr.

Fergerson's apparent confusion over the charge, this was

just not sufficient.  See <u>Griffith</u>, 545 So. 2d 236, 238.

    Furthermore, the trial court did not attempt to "learn

what acts allegedly committed by the appellant constituted

the elements of the charge." <u>Griffith</u>, 545 So.2d 236, 240.

> The judge must determine 'that the conduct which
> the defendant admits constitutes the offense
> charged in the indictment or information or an
> offense included therein to which the defendant
> has pleaded guilty.' **Requiring this examination of
> the relation between the law and the acts the
> defendant admits having committed is designed to**

36

> 'protect a defendant who is in the position of
> pleading voluntarily with an understanding of the
> nature of the charge but without realizing that
> his conduct does not actually fall within the
> charge.'

McCarthy v. U.S., 394 U.S. 459, 467, 89 S.Ct. 1166,

1171 (U.S.Ill. 1969)(Emphasis added.)

Mr. Fergerson was **never** asked to testify to any facts

that would purportedly support his plea of guilty to

capital murder pursuant to the accomplice liability

doctrine. There was **no** evidence that Mr. Fergerson and

Jamarian Thornton discussed and agreed beforehand that the

manager would be killed if the manager did not cooperate.

There was **no** evidence that Mr. Fergerson "encouraged and

supported the killing and was present with [Thornton's]

knowledge to render assistance [in the murder] should it

become necessary." Ex parte Ritter, 375 So. 2d 270, 275

(Ala. 1979).

In fact, with the exception of Jamarian Thornton's

self-serving claims, there is **no** evidence before, during,

or after the guilty plea proceeding that establishes that

Mr. Fergerson possessed the particularized intent to kill

Patrick Hughes. See Atteberry v. State, 448 So. 2d 425, 427

(Ala.Cr.App. 1983) ("The finding of a factual basis must be

37

grounded upon some indication in the record that the accused actually committed acts that would justify a conviction based upon his guilty plea.") All that is ever successfully established is that Mr. Fergerson intended to participate in the armed robbery and, as discussed above, this is not sufficient to support a conviction for capital murder.

In this case, the reading of the indictment did not satisfy the trial court's burden of ascertaining that there was a factual basis for the plea—the indictment was not "simple", and it failed to adequately charge or define the element of intent.  See Pierce v. State, 484 So. 2d 506 (Ala.Cr.App. 1985). (Although the indictment tracked the language of the statute, the mere reading of the indictment was not sufficient to establish a factual basis for the guilty plea because the indictment failed to define the critical element of intent.)

> When some of the elements of the offense are not stated, misunderstandings are likely to occur. United States v. Punch, 709 F.2d 889, 894 (5th Cir.1983) (determination of compliance with Fed.R.Crim.P. 11). "[W]henever this possibility [of misunderstanding] is present and the defendant before sentencing claims that it was a reality, the courts should be loath to deny an accused his right to trial." Id. (quoting United States v.

38

*Roberts,* 570 F.2d 999, 1011 (D.C.Cir.1977), aff'd,
445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622
(1980)). "[A] swift change of heart is itself
strong indication that the plea was entered in
haste and confusion." 709 F.2d at 895 n. 10
(quoting *United States v. Barker,* 514 F.2d 208,
222 (D.C.Cir.), cert. denied, 421 U.S. 1013, 95
S.Ct. 2420, 44 L.Ed.2d 682 (1975)). Like those in
*Punch,* Pierce's remarks may be construed as
revealing his ignorance either that intent was an
element of the offense or that the prosecution had
the burden of proof of intent, and, at the very
least, they reveal considerable confusion on his
part. 709 F.2d at 895.

<u>Pierce v. State</u>, 484 So.2d 506, 510 (Ala.Cr.App.1985)

From the time of his arrest until the present, Mr.

Fergerson has maintained that he did not intend to kill

Patrick Hughes, nor did he know or foresee that Jamarian

Thornton would kill Hughes. All he intended was to be an

accomplice in the robbery.  It is clear that Mr. Fergerson

did not understand the charge against him, nor did he

understand that by pleading guilty, he was admitting that

he possessed the requisite intent to kill Hughes.

It is within the sound discretion of the trial
court to refuse withdrawal of a plea of guilty,
and the denial of the motion will not be disturbed
except where an abuse of judicial discretion is
shown. *State v. Holman,* 486 So.2d 500 (Ala.1986);
*Dawson v. State,* 44 Ala.App. 525, 215 So.2d 459
(1968), cert. denied, 283 Ala. 714, 215 So.2d 463
(Ala.1968). We cite, with approval, the general
rule found in 22 C.J.S. *Criminal Law* § 421(3)
(1961), as follows:

39

"In a proper case, the discretion of the court
should be freely exercised to allow a withdrawal
of a plea of guilty; **it should be liberally
exercised especially in capital cases, in favor of
life and liberty or innocence and liberty; and, as
the law favors a trial on the merits, the court
should resolve all doubts and exercise its
discretion in favor of such a trial.**

"... **[T]he withdrawal of the plea of guilty should
not be denied in any case where it is in the least
evident that the ends of justice will be subserved
by permitting not guilty to be pleaded in its
place.**

"....

"... **Where the evidence as to whether the plea was
entered through fear, duress, misunderstanding, or
improper influence is in hopeless conflict, the
better practice is to permit the plea to be
withdrawn. Indeed, any doubt as to the plea's
being voluntary should be resolved in accused's
favor.**" (Footnotes omitted.)

Griffith v. State, 545 So.2d 236, 237. (Emphasis added.)

As set forth above, Mr. Fergerson's guilty plea was not

knowingly and voluntarily entered, therefore the trial

court abused its discretion in denying his motion to

withdraw his guilty plea.

40

**CONCLUSION**

Accordingly, Mr. Fergerson requests that this Honorable Court reverse the judgment of the trial court, and remand this case to the trial court with instructions that Mr. Fergerson be allowed to withdraw his plea and proceed to trial, or enter another plea only after fully understanding the charge against him.

Respectfully Submitted,

Jeffrey G. Tickal
Attorney for Appellant

41

**SUMMARY OF RULING AND ACTIONS ADVERSE TO THE APPELLANT**

**Record Page Number and Summary of Ruling-**

C. 9; R. 23 - Denial of Youthful Offender Status.

C. 102-03, 105; R. 71 - Overrules objection to handwriting exemplar.

C. 9; R. 30 - Denial of Motion to Dismiss Indictment.

C. 3, 351; R. 420 - Denial of Motion to Withdraw Guilty Plea.

42

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing brief upon the following parties by United States Mail, postage prepaid, on this the _19_ day of February 2004.


Hon. William Pryor
Attorney General
11 S. Union Street
Montgomery, AL  36101


Jeffrey G. Tickal

43

CR-03-0290

In the COURT of CRIMINAL APPEALS
of ALABAMA

———————————— ♦ ————————————

GREGORY MONTAE FERGERSON,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

———————————— ♦ ————————————

On Appeal From the Circuit Court of
Lee County
(CC01-128)

BRIEF OF APPELLEE

Troy King
*Attorney General*

Andy S. Poole
*Assistant Attorney General*

Jack Willis
*Assistant Attorney General*
Counsel of Record *

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

March 18, 2004

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument in this case.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT........................... i

TABLE OF CONTENTS........................................... ii

TABLE OF AUTHORITIES....................................... iii

STATEMENT OF THE CASE....................................... 1

ISSUE PRESENTED FOR REVIEW................................. 4

STATEMENT OF THE FACTS..................................... 4

STANDARD OF REVIEW......................................... 8

SUMMARY OF ARGUMENT....................................... 8

ARGUMENT.................................................. 11

Fergerson's Issue, That His Guilty Plea Was Not Knowingly
And Voluntarily Entered Because He Did Not Understand The
Charge He Was Pleading To, Was Not Preserved For Appellate
Review.................................................... 11

CONCLUSION................................................ 16

CERTIFICATE OF SERVICE.................................... 17

## TABLE OF AUTHORITIES

**Cases**

<u>Myers v. State</u>, 677 So. 2d 807, 810-811 (Ala. Crim.
  App. 1995) ............................................... 11

<u>Robinson v. State</u>, 730 So. 2d 252, 253-254 (Ala. Crim.
  App. 1998) ............................................... 12

**Rules**

A.R.App.P.,

   Rule 45A ................................................. 11

## STATEMENT OF THE CASE

This appeal arises from the conviction of the appellant, Gregory Montae Fergerson, in the Lee County Circuit Court for the offense of capital murder. Fergerson was sentenced to life without parole. Judge Jacob A. Walker III presided. Fergerson argues that, although he pleaded guilty to capital murder, the trial court erred when it denied his motion to withdraw his guilty plea made after he was sentenced. The basis of his argument is that Fergerson did not understand the charge he was pleading guilty to; thus, his guilty plea was involuntary and not knowingly made. This issue was not preserved for appellate review.

On January 12, 2001, the Lee County Grand Jury indicted Fergerson for the offense of capital murder. Specifically, the indictment charged that Fergerson intentionally caused the death of Thomas Patrick Hughes IV by shooting him with a rifle or a pistol while Fergerson was committing the robbery of Wendy's Store Number 303 in Opelika. (C. 13-14) Fergerson applied for youthful offender status; on March 12, 2001, his application to be treated as a youthful offender was denied. (C. 10) On May 3, 2001, Fergerson

pleaded not guilty and not guilty by reason of mental disease or defect. (C. 9)

After extensive pre-trial proceedings and trial preparation, Fergerson, through his attorneys, advised the court that he desired to enter a plea of guilty to the charge of capital murder. On September 10, 2003, a guilty plea hearing was held and Fergerson pleaded guilty to capital murder as charged in the indictment. (C. 4) The court then proceeded with the process of empanelling a jury to hear the State's evidence. (C. 4) On September 10, 2003, after hearing the witnesses submitted by the State, the jury returned a verdict of guilty of capital murder as charged in the indictment. (C. 3) The trial court adjudged Fergerson guilty of capital murder and, per the plea agreement entered into by Fergerson and the State, sentenced Fergerson to life in the penitentiary without parole. (C. 3)

On September 26, 2003, Fergerson filed a pro se motion asking to withdraw his guilty plea. (C. 3) The motion stated no grounds other than Fergerson would like to withdraw his guilty plea and have his case tried before a jury. (C. 347-348)

2

On November 10, 2003, a hearing was held on the motion
to withdraw the guilty plea.  Counsel advised the court
that it was a pro se motion and the court allowed Fergerson
to state his grounds.  Fergerson stated that he wanted to
"take my plea back and go to trial."  (R. 417)  As reasons,
he stated that there was testimony at trial that showed
that the co-defendant actually shot the victim, and
Fergerson had found out that there were some individuals
who were willing to testify on his behalf that that was the
case.  (R. 418)  Trial counsel advised the court that it
was his opinion that Fergerson was unhappy with his
sentence, and further added that Fergerson was advised of
the sentences in his case and the case was resolved with a
plea agreement with the State.  Counsel was at a loss to
offer Fergerson assistance as far as grounds for the motion
to withdraw his plea because counsel was unaware of
anything that would support the request.  (R. 419-420)  The
trial court denied the motion to withdraw the guilty plea.
(R. 420)

3

## ISSUE PRESENTED FOR REVIEW

Was Fergerson's issue, that his guilty plea was not knowingly and voluntarily entered because he did not understand the charge he was pleading to, preserved for appellate review?

## STATEMENT OF THE FACTS

On September 8, 2003, Fergerson, through his attorney, advised the court that he desired to plead guilty to capital murder with the agreement that the State would recommend a sentence of life without the possibility of parole. (R. 115) The court conducted an extensive colloquy with Fergerson. During the colloquy the court verified that Fergerson executed an Ireland form, Exhibit A, and that the rights and matters set forth on that form were read and explained to him by his attorneys. (R. 115-118) The court read the indictment to Fergerson and verified that the capital murder charge had been explained to him by his attorneys. (R. 119-122) The court asked if Fergerson had any questions about the indictment and whether Fergerson wanted the court to read the indictment to him again. (R. 122) The court also asked Fergerson if

4

he had discussed the facts of the case and his involvement

in the crime with his attorneys.  (R. 122)

Fergerson stated that he had talked to his attorneys

and, in response to the court's questions, stated that he

committed the crime of robbery, but not murder.  (R. 123)

The court stated that that was not the question and again

asked: "Did you commit the offense of capital murder?"  (R.

123)  Fergerson answered: "Yes, sir."  (R. 123)  When asked

if he was pleading guilty of his own free will and because

he was guilty, Fergerson stated: "I am not guilty of the

murder, no sir."  His attorney then stated: "It's a capital

murder.  You are pleading the capital murder."  (R. 124)

When asked again if he was pleading guilty of his own free

will and because he was guilty, Fergerson answered that he

was.  (R. 124)  When asked how he pleaded to the charge of

capital murder, Fergerson stated that he pleaded guilty to

robbery.  (R. 126)  The court explained to him that the

charge was not robbery but capital murder, that was murder

taking place during the course of a robbery.  (R. 126)

Fergerson stated: "I plead guilty to it."  (R. 127)

Pursuant to Alabama Code Section 13A-5-42 (1975), a

jury was struck and the State presented evidence to prove

5

Fergerson's guilt.  The State submitted evidence that, on November 4, 2000 at approximately 10:25 p.m., Fergerson and Jamarian Thornton entered Wendy's Store 303 in Opelika and attempted to rob it.  Employees of Wendy's told the police that the robbers wore masks.  One of those masks was a hockey goalie type mask made popular by the "Jason" movies. The other mask was a "Scream" mask.  The employees could not identify the robbers because they were masked, but they testified that the robber wearing the "Scream" mask was armed with a rifle and stayed in front while the robber with the "Jason" mask, armed with a pistol, went to the back with Hughes.  (R. 236-248)  Hughes was shot through the head while in the back of the store.  (R. 269-270)

Thornton testified that Fergerson wore the "Jason" mask that night, was armed with a pistol, and was the one that shot Hughes.  (R. 354-359)  The "Jason" mask was recovered and, upon testing, a DNA sample matching a known sample from Fergerson was found on the mask.  (R. 345-346) Fergerson told Thornton that he shot Hughes because he thought Hughes was trying to attack Fergerson.  (R. 363) Fergerson and Thornton fled the Wendy's and discarded their clothing and the weapons.  (R. 360-362)

6

After the evidence was submitted to the jury, the jury
returned a verdict of guilty.  Upon adjudicating Fergerson
guilty, he was sentenced, pursuant to the agreement, to
life without parole.  On September 26, 2003, Fergerson
filed a motion to withdraw his guilty plea.  The motion
stated that Fergerson would like to withdraw his guilty
plea and go to trial.  (C. 348)  A hearing was held on
November 10, 2003.  At the hearing, Fergerson stated that
he wanted to withdraw his guilty plea and go to trial.  His
grounds for withdrawing his guilty plea were that, during
Thornton's testimony, Thornton at first stated that it was
he who had gone to the back of the Wendy's.  Thornton
immediately corrected himself and stated that it was
Fergerson who went to the back.  Fergerson stated that that
evidence proved it was Thornton and not Fergerson who shot
and killed the victim.  He also stated that he had learned
that Thornton had talked to certain individuals and told
them he was the one who shot the victim.  Fergerson stated
that those individuals would testify in Fergerson's behalf.
(R. 417-418)  The State noted that Fergerson's assertion
that he was not the shooter was known to everybody
throughout the proceedings.  (R. 418)  The court stated

7

that the evidence was sufficient to support the conviction

for capital murder and denied Fergerson's motion to

withdraw his guilty plea.  (R. 420)

### STANDARD OF REVIEW

The issue raised on appeal involves a question of law —

whether the issue was properly preserved for appellate

review.  Because the case involves a pure question of law

the standard of review is de novo.  This Court's review,

however, is limited to the constitutional claims raised

before the trial court.  State v. C. M., C.D.M., and S.D.,

746 So. 2d 410, 414 (Ala. Crim. App. 1999).  Plain error

review does not apply in capital cases where the death

penalty has not been imposed.  To preserve an issue

concerning the voluntariness of a guilty plea, the issue

must first be raised in the trial court.  Myers v. State,

677 So. 2d 807, 810-811 (Ala. Crim. App. 1995).

### SUMMARY OF ARGUMENT

Fergerson argues that his guilty plea was not knowingly

or voluntarily entered because he did not understand the

nature of the capital murder charge to which he was

8

pleading guilty.  Fergerson argues that, because the plea was not voluntarily and knowingly entered, the trial court abused its discretion when it did not allow him to withdraw the guilty plea.

Fergerson pleaded guilty to capital murder.  After the guilty plea, the State, as required, submitted its case to the jury and the jury returned a verdict of guilty of capital murder as charged in the indictment.  After Fergerson was sentenced to life without parole, he filed a pro se motion to withdraw his guilty plea.  The motion to withdraw the guilty plea stated no grounds other than he wished to withdraw his guilty plea and go to trial.  The trial court conducted a hearing on the motion to withdraw the guilty plea.  At the hearing, Fergerson disputed his accomplice's version of the robbery and murder that occurred at Wendy's and stated that it was the accomplice who committed the murder.  The trial court considered the grounds for the motion to withdraw the guilty plea to be a challenge to the sufficiency of the State's evidence to support the guilty plea to capital murder.  On that basis, the trial court denied the motion.

9

The issue concerning the voluntariness of the guilty plea is raised for the first time on appeal. Voluntariness was not stated as a ground for the motion to withdraw the guilty plea. The issue was not raised orally during the hearing on the motion to withdraw the guilty plea. Although Fergerson pleaded guilty and was convicted and sentenced for capital murder, the death penalty was not imposed. He was sentenced to life without parole. Because the sentence of death was not imposed, this case is not reviewable under the plain error standard. To preserve an issue for appeal from a conviction for capital murder where a sentence of life without parole is imposed, a defendant must make a timely objection or motion in the trial court stating the specific grounds for the objection or motion before the issue can be raised on appeal. A statement of specific grounds waives all grounds not stated. In the present case, Fergerson waived his issue concerning the voluntariness of the plea because it was not properly preserved in the trial court.

10

**ARGUMENT**

**Fergerson's Issue, That His Guilty Plea Was Not Knowingly And Voluntarily Entered Because He Did Not Understand The Charge He Was Pleading To, Was Not Preserved For Appellate Review.**

Fergerson argues that the trial court erred when it did not allow him to withdraw his guilty plea to capital murder. He argues that the motion was due to be granted because, when he pleaded guilty, Fergerson did not understand the charge to which he was pleading; thus, his guilty plea was not knowingly and voluntarily entered. Although Fergerson filed a pro se motion to withdraw his guilty plea and a hearing was held on the motion, Fergerson did not raise the issue of the voluntariness of his guilty plea in the trial court. It was therefore not preserved for appellate review.

It is well settled under Alabama law that matters not objected to at trial cannot be raised or considered for the first time on appeal. To preserve an issue for appellate review, objections are still required in capital cases where the death penalty is not imposed. The doctrine of plain error does not apply in cases where the death penalty is not imposed. Myers v. State, 677 So. 2d 807, 810-811 (Ala. Crim. App. 1995); Rule 45A, A.R.App.P.

11

Claims concerning the voluntariness of a guilty plea must first be presented to the trial court or they are waived on direct appeal. The statement of specific grounds of objection waives all grounds not specified and the trial court will not be put in error on grounds not assigned at trial in the motion to withdraw the guilty plea. Robinson v. State, 730 So. 2d 252, 253-254 (Ala. Crim. App. 1998). Robinson, in his written motion to withdraw his guilty plea, stated that he wanted to withdraw his guilty plea because he was allegedly innocent. During the hearing on the motion, Robinson stated that he wanted to withdraw his guilty plea because he did not want to register as a sex offender. He did not raise the issue of the voluntariness of his guilty plea. This Court ruled that Robinson had not raised the issue of voluntariness because it was not included in the grounds of his written motion to withdraw his guilty plea nor was the ground raised at the hearing on the motion. Robinson at 253-254.

Fergerson's motion to withdraw his guilty plea stated as follows:

> I Greg Fergerson took a plea bargain on said day of Sept. 10/203[.] I would like to file a motion to withdraw my plea. I have thirty days to withdraw and I would like to go to trail [sic]

12

with my case, could I please get a hearing as soon as possible.

(C. 347-348)

On November 10, 2003, a hearing was held on Fergerson's motion to withdraw his guilty plea. Because it was a pro se motion, trial counsel allowed Fergerson to speak for himself. When asked what the basis was for the request, Fergerson stated: "I want to take my plea back - I want to take my plea back and go to trial." (R. 417) When asked further by the court for reasons, Fergerson stated:

> Because, you know, after the hearing we had for the - my guilty plea and all, Thornton, he actually said that he - he went to the back and then he changed and said that I went to the back. So right there it made me say that he just sat there and told on himself then. That's why I'm saying that's why I wanted to withdraw my plea. Then I had found out that he.had told some - some friends of his that he was actually the shooter, and they are willing to testify on my behalf.

(R. 417-418)

Fergerson was referring to the testimony of Jamarian Thornton, the individual who, with Fergerson, attempted to rob Wendy's. The hearing that Fergerson referred to was the presentation of the State's evidence to the jury after the guilty plea was entered. Thornton testified that it was Fergerson who went to the back of the Wendy's with

13

Hughes and shot Hughes in the head killing him.  During his
testimony, Fergerson stated that they went into the
restaurant and: "I went to the back.  Excuse me.  Fergerson
went to the back, and I stayed up front . . . "  (R. 359)

The court and the State treated Fergerson's grounds to
withdraw his plea as a challenge to the sufficiency of the
State's evidence.  (R. 418-420)  The court in its order
denying the motion stated:

> Well, of course, the court took the plea in this
> case.  We had the trial in this case regarding the
> -- regarding this.  I think - the jury, of
> course, found Mr. Fergerson guilty of capital
> murder.  I don't believe that it was ever the
> contention of the defense that  --  Mr. Fergerson
> had to be the actual shooter in order to be guilty
> of capital murder.  I believe that was clearly
> expressed to the jury throughout the course of the
> trial.  So the request of Mr. Fergerson to
> withdraw his guilty plea is denied.  (R. 420)

The court did not address any issue concerning the
voluntariness of the guilty plea.  There was nothing stated
by Fergerson in his motion or at the hearing that alerted
the trial court that the basis of the motion to withdraw
the guilty plea was the voluntariness of the plea and that
Fergerson did not understand the nature of the charge that
he was pleading guilty to.

14

Although convicted of capital murder, Fergerson, pursuant to the plea agreement with the State, received a sentence of life without parole. Thus, this case is not reviewable under the plain error standard of review. Because the issue was not raised in Fergerson's motion to withdraw his guilty plea or during the hearing on the motion, it was not raised in the trial court. Because the issue is raised for the first time on appeal, it cannot be reviewed by this Court.

15

**CONCLUSION**

Based upon the foregoing, the denial of Fergerson's motion to withdraw his guilty plea should be affirmed by this Honorable Court.

Respectfully submitted,

Troy King
*Attorney General*
By:

Jack W. Willis
*Assistant Attorney General*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this <u>18th</u> of March, 2004, I did serve a copy of the foregoing on the attorney for Fergerson, by placing the same in the United States ail, first class, postage prepaid and addressed as follows:

      Jeffrey G. Tickal
      P. O. Box 230
      Opelika, Alabama  36803-0230

      Jack W. Willis
      Assistant Attorney General

ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama  36130-0152
(334) 242-7300

141558/61594-001

17

CR-03-0290


IN THE COURT OF CRIMINAL APPEALS
STATE OF ALABAMA


GREGORY MONTAE FERGERSON,
APPELLANT,


V.S.


STATE OF ALABAMA,
APPELLEE.


ON APPEAL FROM THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA


CIRCUIT COURT CASE NUMBER:  CC-01-128


APPELLANT'S REPLY BRIEF IN SUPPORT OF DIRECT APPEAL


JEFFREY G. TICKAL
P.O. BOX 230
OPELIKA, AL  36803-0230
(334)-749-5115

## TABLE OF CONTENTS

Table of Authorities----------------------------    iii

Summary of the Argument--------------------------    1

Argument-----------------------------------------    2

Conclusion---------------------------------------    6

Certificate of Service---------------------------    7

ii

# TABLE OF AUTHORITIES

**Table of Cases:**

<u>Pierce v. State</u>, 484 So. 2d 506,
 510 (Ala.Cr.App. 1985)------------------------------    5


<u>Griffith v. State</u>, 545 So. 2d 236,
 237 (Ala.Cr.App. 1989)------------------------------    5

**Statutes and other Authorities:**

Rule 14.4(e), Ala.R.Cr.P.----------------------------    5

## SUMMARY OF ARGUMENT

Mr. Fergerson's claim that his guilty plea was not knowingly and voluntarily rendered was properly presented to the trial court, and has been preserved for appellate review. Accordingly, this Honorable Court should review his claim on the merits and reverse the judgment of the trial court. Failure to do so would be a miscarriage of justice, and will only invite a post-conviction claim for relief.

1

I.

**Mr. Fergerson's assertion that his plea was not knowingly and voluntarily rendered has been preserved for appellate review.**

The State argues that Mr. Fergerson's assertion that his guilty plea was not knowingly and voluntarily rendered is not properly before this Honorable Court because, the State alleges, it is raised for the first time in this appeal. In an effort to support its position and avoid addressing the merits of his claim, the State tries to couch Mr. Fergerson's motion to withdraw his guilty plea as an attack on the sufficiency of the evidence, as opposed to a challenge to the voluntariness of his plea. Contrary to the State's allegation, a review of the record indicates that Mr. Fergerson did present his claim to the trial court and therefore preserve his assertion for appellate review.

As noted in his original brief to this Court, from the very outset of the guilty plea proceedings, Mr. Fergerson indicated his reluctance to plead to the charge contained in the indictment—an indictment that Mr. Fergerson's original defense counsel argued was fatally flawed. In fact, the first guilty plea hearing had to be dismissed

2

because Mr. Fergerson retracted his intent to plead guilty.
When court reconvened, Mr. Fergerson was still confused
about the charge contained in the indictment.    **While
perhaps simplistic, it appears that Mr. Fergerson thought
that the robbery and murder elements could be segregated
into separate offenses, and that all he was admitting to
was that he participated in the robbery and the fact that
there was a murder—not his participation in the murder. The
Court's attempt to clarify the charge only made matters
worse.**

    Mr. Fergerson's motion to withdraw his guilty plea and
his argument on that motion were simply a reiteration of
his previous position—that all he intended was to be an
accomplice in a robbery. The gist of Mr. Fergerson's
argument was that he should be allowed to withdraw his plea
because there was evidence to support his contention that
he did not intend to kill the victim:  Jamarian Thornton
accidentally admitted at trial that he was the person who
went to the back of the restaurant with the manager, and
there were witnesses who would testify that Thornton
admitted to them that he was the triggerman.   This was not

3

a challenge to the sufficiency of the evidence, as the
State claims.

Although Mr. Fergerson may not have used the magic
words "involuntary plea" in his pro se motion to withdraw
his plea and in the subsequent hearing on that motion,
there is little doubt that the trial court understood that
motion to be a challenge to the voluntariness of the guilty
plea—this was, after all, the same trial judge who presided
over the **entire** proceedings. **Surely, given the extensive
discussion over his original defense counsel's concerns
regarding the charge, and the very apparent confusion
exhibited by Mr. Fergerson at the guilty plea hearing, the
trial court was aware that Mr. Fergerson did not understand
the nature of the charge against him. If the trial court
was not aware of this confusion, then that only highlights
the problem in this case.**

Although Mr. Fergerson's trial attorneys were present
at the hearing on the motion to withdraw his guilty plea,
they did not assist with or advocate his motion. With all
due respect, this Honorable Court should be mindful that
these were the same attorneys who, however well
intentioned, encouraged Mr. Fergerson to plead guilty to a

4

capital offense despite his apparent and understandable confusion over the charge.  These same attorneys conceded any defense, and, in fact, implored the jury to find Mr. Fergerson guilty of the charge.

Mr. Fergerson was left with no recourse but to argue his motion to withdraw the guilty plea himself. While perhaps inarticulately worded and argued, his pro-se motion was sufficient to put the trial court on notice of the matter now presented on appeal.

Whenever there is a possibility that a defendant does not understand the charge against him, the trial court should not accept a guilty plea. Pierce v. State, 484 So. 2d 506, 510 (Ala.Cr.App. 1985); Griffith v. State, 545 So. 2d 236, 237 (Ala.Cr.App. 1989).  Given the very serious implications of Mr. Fergerson's guilty plea—it relieved the State of its burden of proving that he possessed the requisite intent to commit the murder—and his obvious confusion over the charge, the trial court should not have accepted Mr. Fergerson's guilty plea.

Even so, the trial court had the opportunity to rectify the error by granting Mr. Fergerson's motion to withdraw his guilty plea. In fact, Rule 14.4(e), Ala.R.Cr.P.,

5

mandates that "[t]he court **shall** allow withdrawal of a plea of guilty when necessary to correct a manifest injustice." (Emphasis added.) Unfortunately, the trial court opted not to correct its previous error.

## Conclusion

Under the circumstances of this case, it would be a miscarriage of justice and patently unfair to find that Mr. Fergerson has not preserved his claim that his plea was not knowingly and voluntarily rendered. Accordingly, Mr. Fergerson respectfully requests that this Honorable Court review his argument on the merits, and that this Court reverse the judgment of the trial court. Failure to do so will only invite a post-conviction petition challenging the guilty plea.

Respectfully Submitted,

Jeffrey C. Tickal
Attorney for Appellant

6

CR-03-0290

**MAR 1 8 2004**

CLERK
ALA COURT CRIMINAL APPEALS

In the COURT of CRIMINAL APPEALS
of ALABAMA

◆

GREGORY MONTAE FERGERSON,

*Appellant,*

v.

STATE OF ALABAMA,

*Appellee.*

◆

On Appeal From the Circuit Court of
Lee County
(CC01-128)

BRIEF OF APPELLEE

Troy King
*Attorney General*

Andy S. Poole
*Assistant Attorney General*

Jack Willis
*Assistant Attorney General*
Counsel of Record *

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

March 18, 2004

CR-03-0290

IN THE COURT OF CRIMINAL APPEALS

GREGORY MONTAE FERGERSON,
APPELLANT,

v.

STATE OF ALABAMA,
APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA (CC-01-128)

## APPLICATION FOR REHEARING AND RULE 40(e) REQUEST FOR FINDING OF ADDITIONAL FACTS

Comes now the Appellant, Gregory Montae Fergerson, by and through his attorney, and moves this Honorable Court for a rehearing, praying that the opinion entered on May 21, 2004, be withdrawn and that this Court issue a new opinion reversing the judgment of the trial court.

This Honorable Court held that Mr. Fergerson's claim that his guilty plea was not knowingly and voluntarily rendered was not properly before this Court because it was raised for the first time on appeal. This Court reasoned:

> "Before the trial judge accepted the appellant's guilty plea, he specifically asked the appellant if the charge had been explained by his lawyers

and if he had any questions.  Fergerson told the trial court that he understood the charge.  The appellant's attorneys told the court that they had explained the nature of the charge to him, and the appellant also signed an <u>Ireland</u> form stating that he understood.

"…

"… The appellant's position throughout the proceedings was that he was not the shooter.  He did not claim that he did not understand the charge against him or argue that he was an accomplice in the underlying robbery only."

Mr. Fergerson respectfully disagrees with this Court's conclusion. As the transcript reflects, Mr. Fergerson **continually** expressed confusion over the charge.  Yet, despite the very apparent confusion, the trial court took no steps to clarify Mr. Fergerson's confusion.  The trial court merely relied upon counsel's assurances that the charge had been explained to Mr. Fergerson.  As discussed in Mr. Fergerson's original brief to this Court, under the facts of this case, this was simply not sufficient.

Moreover, contrary to this Court's curious conclusion, Mr. Fergerson **repeatedly and vehemently expressed** that he was an accomplice **only** in the robbery, not the murderer. His claim that he was not the "shooter" is synonymous with his position that he did not participate in the murder.

2

Although Mr. Fergerson may not have used the magic words "involuntary plea" in his pro se motion to withdraw his plea and in the subsequent hearing on that motion, there is little doubt that the trial court understood that motion to be a challenge to the voluntariness of the guilty plea—this was, after all, the same trial judge who presided over the entire proceedings. **Surely, given the extensive discussion over his original defense counsel's concerns regarding the charge, and the very apparent confusion exhibited by Mr. Fergerson at the guilty plea hearing, the trial court was aware that Mr. Fergerson did not understand the nature of the charge against him. If the trial court was not aware of this confusion, then that only highlights the problem in this case.**

Accordingly, Mr. Fergerson respectfully requests that Honorable Court grant his request for a rehearing and that this Court withdraw its opinion of May 21, 2004, and review his claim on the merits. Your appellant prays that after reviewing his claim on the merits, this Court will reverse the judgment of the trial court.

Your appellant submits herewith his Rule 40(e) Request for Findings of Additional Facts and an argument and brief in support of his application for rehearing.

## RULE 40(e) REQUEST FOR FINDING OF ADDITIONAL FACTS

Comes now your Appellant, Gregory Montae Fergerson, by and through his attorney, pursuant to Rule 40(e), Ala.R.App.P., and respectfully requests that his Honorable Court revise its opinion of May 21, 2004. This Court, in its opinion, briefly addressed the facts of the crime, but all but omitted any discussion of the facts pertaining to his guilty plea. Mr. Fergerson avers that the facts surrounding his guilty plea are particularly important. Accordingly, Mr. Fergerson respectfully requests that this Court revise its opinion to include the facts set forth below:

The indictment charged, in pertinent part:

"The Grand Jury of said County charge that … Greg Fergerson did intentionally cause the death of Thomas Patrick Hughes, IV, by shooting him with a rifle and/or a pistol, and Gregory Montae Fergerson caused said death during the time that Gregory Montae Fergerson was in the course of committing a theft of lawful paper currency of the United States of America, the exact denominations of which are unknown to the Grand Jury, the Property of Bodnar Enterpirses, Inc., a

> corporation d/b/a Wendy's' … by the use of force
> against the person of Thomas Patrick Hughes, IV,
> with intent to overcome his physical resistance or
> physical power of resistance or to compel
> acquiescence to the taking of or escaping with the
> said property, while … Gregory Montae Fergerson,
> or another participant, to-wit:  Jamarian Quortez
> Thornton … was armed with a deadly weapon or a
> dangerous instrument, to-wit: a rifle and/or a
> pistol, in violation of 13A-5-40(a)(2) of the Code
> of Alabama."

(C. 13-14).

On March 2, 2001, defense counsel filed a motion to

dismiss the indictment on the ground that the indictment

was impermissibly vague because it did not give Mr.

Fergerson adequate notice of the charge against him. (C.

29-36).  Specifically, counsel argued:

> The present indictment does not come close to
> apprising Gregory Fergerson of the case he needs
> to defend, and it certainly does not charge the
> element of the offense of capital murder in that
> he has the same intent to kill as the shooter.
>
> There is no language describing any of the facts
> or circumstances of the crime that are relative
> [to] his state of mind or show that he intended
> anything other that to commit a robbery.  It fails
> to set forth particular acts or means by which
> Gregory Fergerson allegedly committed the murder
> because he possessed the same state of mind as the
> shooter."

(C. 31.)  The State filed a written response.  (C. 38-40).

On May 3, 2001, an arraignment hearing was conducted.

Prior to arraignment, the trial court entertained arguments

5

on the motion to dismiss the indictment, during which the
following occurred:

> "MR. SCHUESSLER [defense counsel]: … Our biggest
> battle ground in this case is really on the intent
> aspect and making absolutely sure that a jury
> doesn't convict for capital murder because the
> State convinces them beyond a reasonable doubt
> that he has committed the offense of felony
> murder, and that's an area that we just will
> continue to address at every hearing we have,
> because that to us is where the biggest chance of
> a injustice can take place.  And I have kind of
> outlined that for you on this chart."

> "….

> "MR. SCHUESSLER:  … There was an intentional
> killing by Mr. Thornton, and that is—that is going
> to be the evidence that comes before the jury, but
> if it's not properly instructed, **the State will
> have showed an intentional killing the intent is
> that of Mr. Thornton, and it will be - it will
> become incredibly confusing.  They will have
> intentional killing.  The only participation of
> Mr. Fergerson according - he was a participant in
> a robbery.**

> "THE COURT:  Of course, these cases will be tried
> separately, and I think the Thornton case will be
> tried first."

> "MR. ABBETT [District Attorney]:  I expect to.

> "MR. SCHUESSLER:  Yes, sir.  I read the word
> intentional there based on the affidavit of the
> crime alleged, you know, and just looking at the
> evidence, it would be an assumption of mine at
> this point that there will be evidence of
> intentional killing by Mr. Thornton present in Mr.
> Fergerson's case."

MR. GLANZER [Assistant District Attorney]: We are arguing complicity.

"THE COURT: Well, at this point, that's denied... "

(R. 28-30). (Emphasis added.)

Following a reading of the indictment, Mr. Fergerson entered a plea of not guilty and not guilty by reason of mental disease or defect. (R. 31-34). A discussion ensued during which defense counsel argued that because of the confusing indictment, there was a clear risk that Mr. Fergerson could be convicted of capital murder when he was only guilty, at most, of felony murder. (R. 35-41). For the Court's consideration, defense counsel introduced a memorandum on the distinction between capital murder and felony murder for the nontriggerman. (R. 35-41; C. 42-25). Counsel also moved to prohibit the reading of the indictment to the jury, and submitted a proposed alternative to reading the indictment to the jury. (R. 35-41; C. 46-49)

On August 20, 2003, a hearing was conducted. (R. 100-104). **The attorney who filed and argued the motion to dismiss the indictment no longer represented Mr. Fergerson.** Mr. Fergerson's new counsel indicated that a plea agreement had been reached--Mr. Fergerson would plead guilty to

capital murder and the State would recommend a sentence of
life in the penitentiary without the possibility of parole.
(R. 102).  The trial was scheduled for September 8, 2003.
(R. 102).

On September 8, the case was called for trial. A
hearing was conducted outside the presence of any potential
jurors.  The trial court discussed the order of the
proceedings. (R. 107-110).  As the court prepared to take
Mr. Fergerson's guilty plea, the following occurred:

> "THE COURT:  … Now, do you want to go through with
> the plea at this time?
>
> "(Brief pause was had.)
>
> "MR. FERGERSON:  (Shaking head in the negative.)
>
> "MR. WHATLEY [defense counsel]:  You don't want
> to?
>
> "MR. FERGERSON:  (Shaking head in the negative.)
>
> "MR. WHATLEY:  Judge, my client has just informed
> me that he does not want to plead guilty."

(R. 110).

The trial court stopped the proceedings in order to
allow defense counsel to confer with Mr. Fergerson. (R.
111) When an agreement could not be reached, the trial
court dismissed the proceedings until the following day.
(R. 111-112).

8

That same day, however, at 2:30 p.m., court reconvened, and Mr. Fergerson indicated his desire to plead guilty. (R. 115). The trial court asked Mr. Fergerson some general questions regarding his age, educational background, and whether he was under the influence of any drugs. (R. 116-17). The trial court questioned Mr. Fergerson whether he understood the guilty plea forms that he signed, and whether he understood that he was waiving those rights by pleading guilty. (R. 117-19). The court ascertained that Mr. Fergerson was satisfied with his counsel. (R. 119). The trial court read the indictment to Mr. Fergerson and asked if he had any questions regarding the indictment. (R. 119-22).

Although lengthy, the conversation that transpired next is critical to the understanding of this issue:

"THE COURT:  Now has that charge been explained to you by your lawyers?

"MR.FERGERSON:  Yes, sir.

"THE COURT:  Do you have any questions about it?

"MR. FERGERSON:  No, sir.

"THE COURT:  Do you want me to read that indictment to you again?

MR. FERGERSON:  No, sir.

"...

"THE COURT:  All right.  Now, have you discussed
the facts and your involvement in this case with
your lawyers?

"MR. FERGERSON:  Involvement?

"THE COURT:  Right, have you talked to your
lawyers about this case?

"MR. WHATLEY [defense counsel]: Have you met with
us to talk to us about the facts of this case?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  Okay.  **And did you commit the offense
of capital murder?**

"MR. FERGERSON:  Well, **the robbery, yes, sir, but
the murder, no, sir.**

"...

"MR. FERGERSON:  **I participated in the robbery,
but I didn't pull the trigger.**

"THE COURT:  Well, that - that's not the question.
Did you commit the offense of capital murder?

"MR. FERGERSON:  Yes, sir.

"...

"THE COURT:  And are you pleading guilty of your
own free will and because you are guilty?

"MR. FERGERSON:  **I am not guilty of the murder,
no, sir.**

"MR. WHATLEY [defense counsel]:  It's a capital
murder.  **You are pleading to capital murder.  Not
asking to murder.**

10

"MR. FERGERSON: Yes, sir.

"THE COURT:  Again, I am going to ask you again:
Are you pleading guilty of your own free will and
because you are guilty?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  Now, do you understand that by
entering this plea of guilty, you are basically
waiving your right to appeal as set forth on the
back of Form A?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  All right…

(R. 122-25). (Emphasis added.)

The trial court discussed the applicability of the

Habitual Offender statutes. The following then transpired:

"THE COURT:  Okay.  Now, this question is to the
attorneys.  Have you conferred with the Defendant
and advised him concerning the facts in this case
and his rights?

"MR. COOPER:  Yes, Your Honor.

"MR. WHATLEY: Yes, sir.

"THE COURT:  Have ya'll explained the nature of
the charge to him?

"MR. COOPER:  Yes, sir.

"MR. WHATLEY:  Yes, sir.

"THE COURT:  Do you recommend the Court accept his
plea?

"MR. WHATLEY:  Yes, sir, we do.

11

"MR. COOPER:  Yes, sir.

"THE COURT:  Have you conferred with him regarding his appellate rights?

"MR. WHATLEY:  Yes, sir, we have.

"THE COURT: And at this point I think we should wait until we receive the verdict from the jury. And at this time I am not going to ask the allocution, but I will ask you again, Mr. Fergerson, to the charge of capital murder, how do you plead?

"MR. FERGERSON:  **I plead guilty to the robbery, sir.**

"MR. WHATLEY:  Guilty to -

"THE COURT:  Well, that's not the charge.  The charge isn't robbery.  To the charge of capital murder, how do you plead?

"MR. FERGERSON:  **I thought the charge was murder and robbery.**

"THE COURT:  **It is. It's murder - it's a murder taking place during the course of the robbery. That - that would be the definition of capital murder in your case.**

"MR. FERGERSON:  I plead guilty to it.

"THE COURT:  Okay.

"MR. ABBETT [District Attorney]:  **Judge, I think I want the record to be clear that he is pleading guilty to the capital murder; he just denies actually being the person that pulled the trigger that killed the decedent, Thomas Patrick Hughes. Is that correct?**

"THE COURT:  Is that correct, Mr. Fergerson?

12

"MR. FERGERSON: Yes, sir.

"THE COURT: **You participated in this robbery with Jamarian Quortez Thornton.** He was the other person that was wearing a mask on the occasion when Mr. Hughes was killed?

"MR. FERGERSON: Yes, sir."

(R. 125-27). (Emphasis added.)

On September 10, 2003, the jury trial was conducted. The jury found Mr. Fergerson guilty of capital murder, as charged in the indictment. (R. 412-13). The trial court asked Mr. Fergerson if he had anything to say and he responded: "…I would like to say I am sorry for the loss of the family victim, and **I did not take a life.**" (R. 413). (Emphasis added.)

On September 23, 2003, Mr. Fergerson filed a pro-se motion to withdraw his plea, and he renewed that motion on October 17, 2003. (C. 3, 347-39). A hearing was conducted on Mr. Fergerson's motion. **Mr. Fergerson was represented at that hearing by the same attorneys who assisted him during the guilty plea and trial proceedings, and the trial judge also presided at the guilty plea hearing.**

In support of his motion, Mr. Fergerson argued that he wanted to withdraw his plea because of evidence presented at trial, and evidence that he gathered after trial. (R.

418) The gist of Mr. Fergerson's argument was that he should be allowed to withdraw his plea because there was evidence to support his contention that he did not intend to kill the victim: Jamarian Thornton accidentally admitted at trial that he was the person who went to the back of the restraunt with the manager, and there were witnesses who would testify that Thornton admitted to them that he was the triggerman. (R. 417-18.) Although Mr. Fergerson's pro-se motion was not lengthy, given the trial court's familiarity with the case, it was certainly sufficient to apprise the trial court of the reason he wished to withdraw his plea. The trial court denied Mr. Fergerson's motion to withdraw his guilty plea. (R. 420; C. 351).

Respectfully Submitted,

Jeffrey G. Tickal
Attorney for Mr. Fergerson

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing application for rehearing upon the following parties by United States Mail, postage prepaid, on this the 4th day of June 2004.

Hon. Troy King
Attorney General
C/O Jack Willis
Attorney of Record
11 S. Union Street
Montgomery, AL  36101

William Whatley, Jr.
P.O. Box 230743
Montgomery, AL  36123-0743

G. Shane Cooper
P.O. Box 728
Atmore, AL  36502-0728


Jeffrey G. Tickal

15

CR-03-0290

IN THE COURT OF CRIMINAL APPEALS
STATE OF ALABAMA


GREGORY MONTAE FERGERSON,
APPELLANT,


V.S.


STATE OF ALABAMA,
APPELLEE.


ON APPEAL FROM THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA


CIRCUIT COURT CASE NUMBER:  CC-01-128


APPELLANT'S BRIEF IN SUPPORT OF DIRECT APPEAL


JEFFREY G. TICKAL
P.O. BOX 230
OPELIKA, AL  36803-0230
(334)-749-5115

Willis
61594

CR-03-0290

IN THE COURT OF CRIMINAL APPEALS
STATE OF ALABAMA

GREGORY MONTAE FERGERSON,
APPELLANT,

V.S.

STATE OF ALABAMA,
APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA

CIRCUIT COURT CASE NUMBER:  CC-01-128

APPELLANT'S BRIEF IN SUPPORT OF APPLICATION FOR REHEARING

JEFFREY G. TICKAL
P.O. BOX 230
OPELIKA, AL  36803-0230
(334)-749-5115

## TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . .    iii

Statement of the Case and Facts . . . . . . . . .    1

Summary of the Argument and Standard of Review. .    1

Argument. . . . . . . . . . . . . . . . . . . .    3

Conclusion. . . . . . . . . . . . . . . . . . .    7

Certificate of Service. . . . . . . . . . . . . .    9

# TABLE OF AUTHORITIES

## Table of Cases

<u>Ex parte State of Alabama</u>, 571
   So.2d 333 (Ala. 1990). . . . . . . . . . . . .    2,8

<u>Griffith v. State</u>, 545 So.2d 236, 237
   (Ala. Cr. App. 1985) . . . . . . . . . . . .    6

<u>Pardue v. State</u>, 571 So.2d 320, 330
   n. 2 (Ala. Cr. App. 1989). . . . . . . . . . .    2,8

<u>Pierce v. State</u>, 484 So.2d 506, 510
   (Ala. Cr. App. 1985) . . . . . . . . . . . .    6

## Statutes and other Authorities

Rule 14.4(e) Ala. R. Cr. P. . . . . . . . . . . .    7

Rule 40(e) Ala. R. App. P.  . . . . . . . . . . .    1

iii

## STATEMENT OF THE CASE AND FACTS

Mr. Fergerson adopts the statement of the case and facts as set forth in his original brief and his Rule 40(e), Ala.R.App.P., Request for Finding of Additional Facts contained in the accompanying Application for Rehearing, with the addition of the following information:

On May 21, 2004, this Honorable Court affirmed the judgment of the trial court.  Thus, this application for rehearing follows.

## SUMMARY OF ARGUMENT AND STANDARD OF REVIEW

Mr. Fergerson's claim that his guilty plea was not knowingly and voluntarily rendered was properly presented to the trial court, and was preserved for appellate review. Accordingly, this Honorable Court should withdraw its opinion of May 21, 2004, and review Mr. Fergerson's claim on the merits.  After a review on the merits, this Honorable Court should reverse the judgment of the trial court and direct the trial court to set aside  Mr. Fergerson guilty plea to capital murder.  Failure to do so will be a miscarriage of justice, and will only invite a post-conviction claim for relief, and this Honorable Court

1

does not invite petitions for post-conviction relief.
Pardue v. State, 571 So. 2d 320, 330, n. 2 (Ala.Cr.App.
1989), rev'd on other grounds, Ex parte State of Alabama,
571 So. 2d 333 (Ala. 1990).

2

I.

**Mr. Fergerson's assertion that his plea was not knowingly and voluntarily rendered was preserved for appellate review.**

This Honorable Court held that Mr. Fergerson's claim that his plea was not knowingly and voluntarily rendered was not properly before this Court because it was raised for the first time on appeal.  This Court reasoned:

> "Before the trial judge accepted the appellant's guilty plea, he specifically asked the appellant if the charge had been explained by his lawyers and if he had any questions.  Fergerson told the trial court that he understood the charge.  The appellant's attorneys told the court that they had explained the nature of the charge to him, and the appellant also signed an <u>Ireland</u> form stating that he understood.
>
> "...
>
> "... The appellant's position throughout the proceedings was that he was not the shooter.  He did not claim that he did not understand the charge against him or argue that he was an accomplice in the underlying robbery only."

Contrary to this Court's conclusion, a review of the record indicates that Mr. Fergerson did present his claim to the trial court and therefore preserve his assertion for appellate review.

3

As noted in his original brief to this Court, from the very outset of the guilty plea proceedings, Mr. Fergerson indicated his reluctance to plead to the charge contained in the indictment—an indictment that Mr. Fergerson's original defense counsel argued was fatally flawed. In fact, the first guilty plea hearing had to be dismissed because Mr. Fergerson retracted his intent to plead guilty. When court reconvened, Mr. Fergerson was still confused about the charge contained in the indictment.  **While perhaps simplistic, it appears that Mr. Fergerson thought that the robbery and murder elements could be segregated into separate offenses, and that all he was admitting to was that he participated in the robbery and the fact that there was a murder—not his participation in the murder. The Court's attempt to clarify the charge only made matters worse.** Essentially, his claim that he was not the "shooter" is synonymous with his position that he did not participate in the murder.

Mr. Fergerson's motion to withdraw his guilty plea and his argument on that motion were simply a reiteration of his previous position—that all he intended was to be an accomplice in a robbery. The gist of Mr. Fergerson's

4

argument was that he should be allowed to withdraw his plea because there was evidence to support his contention that he did not intend to kill the victim: Jamarian Thornton accidentally admitted at trial that he was the person who went to the back of the restaurant with the manager, and there were witnesses who would testify that Thornton admitted to them that he was the triggerman. This was not a challenge to the sufficiency of the evidence, as the State claimed.

Although Mr. Fergerson may not have used the magic words "involuntary plea" in his pro se motion to withdraw his plea and in the subsequent hearing on that motion, there is little doubt that the trial court understood that motion to be a challenge to the voluntariness of the guilty plea—this was, after all, the same trial judge who presided over the entire proceedings. **Surely, given the extensive discussion over his original defense counsel's concerns regarding the charge, and the very apparent confusion exhibited by Mr. Fergerson at the guilty plea hearing, the trial court was aware that Mr. Fergerson did not understand the nature of the charge against him.** If the trial court

5

was not aware of this confusion, then that only highlights the problem in this case.

Although Mr. Fergerson's trial attorneys were present at the hearing on the motion to withdraw his guilty plea, they did not assist with or advocate his motion.  With all due respect, this Honorable Court should be mindful that these were the same attorneys who, however well intentioned, encouraged Mr. Fergerson to plead guilty to a capital offense despite his apparent and understandable confusion over the charge.  These same attorneys conceded any defense, and, in fact, implored the jury to find Mr. Fergerson guilty of the charge.

Mr. Fergerson was left with no recourse but to argue his motion to withdraw the guilty plea himself. While perhaps inarticulately worded and argued, his pro-se motion was sufficient to put the trial court on notice of the matter now presented on appeal.

Whenever there is a possibility that a defendant does not understand the charge against him, the trial court should not accept a guilty plea. Pierce v. State, 484 So. 2d 506, 510 (Ala.Cr.App. 1985); Griffith v. State, 545 So. 2d 236, 237 (Ala.Cr.App. 1985).  Given the very serious

6

implications of Mr. Fergerson's guilty plea—it relieved the
State of its burden of proving that he possessed the
requisite intent to commit the murder—and his obvious
confusion over the charge, the trial court should not have
accepted Mr. Fergerson's guilty plea.

Even so, the trial court had the opportunity to rectify
the error by granting Mr. Fergerson's motion to withdraw
his guilty plea. In fact, Rule 14.4(e), Ala.R.Cr.P.,
**mandates** that "[t]he court **shall** allow withdrawal of a plea
of guilty when necessary to correct a manifest injustice."
(Emphasis added.) Unfortunately, the trial court opted not
to correct its previous error.

### Conclusion

Under the circumstances of this case, it is a
miscarriage of justice and patently unfair to find that Mr.
Fergerson failed to preserve his claim that his plea was
not knowingly and voluntarily rendered. Accordingly, this
Honorable Court should withdraw its opinion of May 21,
2004, and review Mr. Fergerson's claim on the merits.
After a review on the merits, this Honorable Court should
reverse the judgment of the trial court and instruct the
trial court to allow Mr. Fergerson to withdraw his guilty

7

plea to capital murder.   Failure to do so will only invite

a post-conviction petition challenging the guilty plea on

the ground that Mr. Fergerson received ineffective

assistance of trial counsel, and this Honorable Court does

not invite petitions for post-conviction relief. <u>Pardue v.</u>

<u>State</u>, 571 So. 2d 320, 330, n. 2 (Ala.Cr.App. 1989), rev'd

on other grounds, <u>Ex parte State of Alabama</u>, 571 So. 2d 333

(Ala. 1990).

                    Respectfully Submitted,


                    Jeffrey G. Tickal
                    Attorney for Appellant

8

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing brief upon the following parties by United States Mail, postage prepaid, on this the _____ day of June 2004.

Hon. Troy King
Attorney General
C/O Jack Willis
Attorney of Record
11 S. Union Street
Montgomery, AL  36101

William Whatley, Jr.
P.O. Box 230743
Montgomery, AL  36123-0743

G. Shane Cooper
P.O. Box 728
Atmore, AL  36502-0728


_____
Jeffrey G. Tickal

9

S.C.No._____

IN THE SUPREME COURT
STATE OF ALABAMA

GREGORY MONTAE FERGERSON,
PETITIONER/APPELLANT,

v.

STATE OF ALABAMA,
RESPONDENT/APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA
CIRCUIT COURT CASE NUMBER:  CC-01-128

PETITION FOR WRIT OF CERTIORARI AND BRIEF
DIRECTED TO THE COURT OF CRIMINAL APPEALS
COURT OF CRIMINAL APPEALS NUMBER: CR-03-0290

JEFFREY G. TICKAL
P.O. BOX 230
OPELIKA, AL  36803-0230
(334)-749-5115

PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CRIMINAL APPEALS


GREGORY MONTAE FERGERSON,
                    Petitioner/Appellant

            v.


STATE OF ALABAMA,
                Respondent/Appellee


Appeal from the Circuit Court of Lee County, Alabama
Case number CC-01-128


                S.C. No._____


TO THE SUPREME COURT OF ALABAMA:

      Comes your Petitioner, Gregory Montae Fergerson, and

petitions this Court for a Writ of Certiorari to issue to

the Court of Criminal Appeals in the above styled cause

under Rule 39, ARAP, and shows the following:

      Petitioner was charged, pursuant to the accomplice

liability doctrine, with the capital murder of Patrick

Hughes. Petitioner pleaded guilty to capital murder in the

Circuit Court of Lee County, Alabama, on September 8, 2003.

On September 10, 2003, a jury trial was conducted, as
required by section 13A-5-42, Code of Alabama 1975.  The
jury found Mr. Fergerson guilty of capital murder, as
charged in the indictment.  Pursuant to the plea agreement,
Mr. Fergerson was sentenced to life in the penitentiary
without the possibility of parole.

The Court of Criminal Appeals affirmed the judgment on
May 21, 2004.  An application for rehearing was filed on
June 4, 2004, and overruled on June 18, 2004.

A copy of the opinion of the Court of Criminal Appeals
is attached to this petition, which shows the Court of
Criminal Appeals case to be Number CR-03-0290.

### GROUNDS

The basis of this petition for the writ is that the
decision of the Court of Criminal Appeals is in conflict
with its prior decisions on the same point of law.  The
Court of Criminal Appeals held that Mr. Fergerson's claim
that his guilty plea was not knowingly and voluntarily
rendered was not properly before the Court because it was
raised for the first time on appeal. In support of its
decision, the Court cited Robinson v. State, 730 So. 2d 252
(Ala. Crim. App. 1998), and  Anderson v. State, 668 So. 2d

2

159 (Ala. Crim. App. 1995) for the general proposition that a claim regarding the voluntariness of a guilty plea must first be presented to the trial court or it is waived.

As will be discussed more thoroughly below, the Court of Criminal Appeal's incorrectly applied the general law from the above cases to the facts in the instant case, and erroneously concluded that Mr. Fergerson's challenge to the voluntariness of the guilty plea was not preserved for appellate review.  Contrary to the Court's conclusion, Mr. Fergerson **did** present his claim regarding the voluntariness of his guilty plea to the trial court, thus preserving his assertion for appellate review.

In order to understand how the Court of Criminal Appeals decision is in conflict with prior decisions issued by that Court, an understanding of the facts is in order. The Court of Criminal Appeals briefly addressed the facts of the underlying crime, **but all but omitted any discussion of the facts pertaining to Mr. Fergerson's guilty plea.** Although the facts of the underlying crime are important, the facts pertaining Mr. Fergerson's guilty plea are the focus of this appeal.

3

## STATEMENT OF THE FACTS

The Court of Criminal Appeals issued an unpublished memorandum which contained a statement of facts that the Petitioner was not satisfied with.  I verify, pursuant to Rule 39(d)(5)(a), the following statement of facts is a verbatim copy of the facts that were presented to the Court of Criminal Appeals in the Petitioner's application for rehearing, specifically, Rule 40(e).

Jeffrey G. Tickal
Attorney for Petitioner

## REQUEST FOR FINDING OF ADDITIONAL FACTS

The indictment charged, in pertinent part:

"The Grand Jury of said County charge that … Greg
Fergerson did intentionally cause the death of
Thomas Patrick Hughes, IV, by shooting him with a
rifle and/or a pistol, and Gregory Montae
Fergerson caused said death during the time that
Gregory Montae Fergerson was in the course of
committing a theft of lawful paper currency of the
United States of America, the exact denominations
of which are unknown to the Grand Jury, the
Property of Bodnar Enterpirses, Inc., a
corporation d/b/a Wendy's' … by the use of force
against the person of Thomas Patrick Hughes, IV,
with intent to overcome his physical resistance or
physical power of resistance or to compel
acquiescence to the taking of or escaping with the
said property, while … Gregory Montae Fergerson,
or another participant, to-wit:  Jamarian Quortez

4

> Thornton … was armed with a deadly weapon or a
> dangerous instrument, to-wit: a rifle and/or a
> pistol, in violation of 13A-5-40(a)(2) of the Code
> of Alabama."

(C. 13-14).

On March 2, 2001, defense counsel filed a motion to

dismiss the indictment on the ground that the indictment

was impermissibly vague because it did not give Mr.

Fergerson adequate notice of the charge against him. (C.

29-36). Specifically, counsel argued:

> The present indictment does not come close to
> apprising Gregory Fergerson of the case he needs
> to defend, and it certainly does not charge the
> element of the offense of capital murder in that
> he has the same intent to kill as the shooter.
>
> There is no language describing any of the facts
> or circumstances of the crime that are relative
> [to] his state of mind or show that he intended
> anything other that to commit a robbery. It fails
> to set forth particular acts or means by which
> Gregory Fergerson allegedly committed the murder
> because he possessed the same state of mind as the
> shooter."

(C. 31.) The State filed a written response. (C. 38-40).

On May 3, 2001, an arraignment hearing was conducted.

Prior to arraignment, the trial court entertained arguments

on the motion to dismiss the indictment, during which the

following occurred:

5

"MR. SCHUESSLER [defense counsel]: … Our biggest battle ground in this case is really on the intent aspect and making absolutely sure that a jury doesn't convict for capital murder because the State convinces them beyond a reasonable doubt that he has committed the offense of felony murder, and that's an area that we just will continue to address at every hearing we have, because that to us is where the biggest chance of a injustice can take place. And I have kind of outlined that for you on this chart."

"….

"MR. SCHUESSLER: … There was an intentional killing by Mr. Thornton, and that is—that is going to be the evidence that comes before the jury, but if it's not properly instructed, **the State will have showed an intentional killing the intent is that of Mr. Thornton, and it will be - it will become incredibly confusing. They will have intentional killing. The only participation of Mr. Fergerson according - he was a participant in a robbery.**

"THE COURT:  Of course, these cases will be tried separately, and I think the Thornton case will be tried first."

"MR. ABBETT [District Attorney]:  I expect to.

"MR. SCHUESSLER: Yes, sir.  I read the word intentional there based on the affidavit of the crime alleged, you know, and just looking at the evidence, it would be an assumption of mine at this point that there will be evidence of intentional killing by Mr. Thornton present in Mr. Fergerson's case."

MR. GLANZER [Assistant District Attorney]:  We are arguing complicity.

"THE COURT:  Well, at this point, that's denied… "

6

(R. 28-30). (Emphasis added.)

Following a reading of the indictment, Mr. Fergerson entered a plea of not guilty and not guilty by reason of mental disease or defect. (R. 31-34). A discussion ensued during which defense counsel argued that because of the confusing indictment, there was a clear risk that Mr. Fergerson could be convicted of capital murder when he was only guilty, at most, of felony murder. (R. 35-41). For the Court's consideration, defense counsel introduced a memorandum on the distinction between capital murder and felony murder for the nontriggerman. (R. 35-41; C. 42-25). Counsel also moved to prohibit the reading of the indictment to the jury, and submitted a proposed alternative to reading the indictment to the jury. (R. 35-41; C. 46-49)

On August 20, 2003, a hearing was conducted. (R. 100-104). The attorney who filed and argued the motion to dismiss the indictment no longer represented Mr. Fergerson. Mr. Fergerson's new counsel indicated that a plea agreement had been reached--Mr. Fergerson would plead guilty to capital murder and the State would recommend a sentence of

7

life in the penitentiary without the possibility of parole.
(R. 102).  The trial was scheduled for September 8, 2003.
(R. 102).

On September 8, the case was called for trial. A
hearing was conducted outside the presence of any potential
jurors.  The trial court discussed the order of the
proceedings. (R. 107-110).  As the court prepared to take
Mr. Fergerson's guilty plea, the following occurred:

> "THE COURT: ... Now, do you want to go through with
> the plea at this time?
>
> "(Brief pause was had.)
>
> "MR. FERGERSON:  (Shaking head in the negative.)
>
> "MR. WHATLEY [defense counsel]:  You don't want
> to?
>
> "MR. FERGERSON:  (Shaking head in the negative.)
>
> "MR. WHATLEY:  Judge, my client has just informed
> me that he does not want to plead guilty."

(R. 110).

The trial court stopped the proceedings in order to
allow defense counsel to confer with Mr. Fergerson. (R.
111) When an agreement could not be reached, the trial
court dismissed the proceedings until the following day.
(R. 111-112).

8

That same day, however, at 2:30 p.m., court reconvened, and Mr. Fergerson indicated his desire to plead guilty. (R. 115). The trial court asked Mr. Fergerson some general questions regarding his age, educational background, and whether he was under the influence of any drugs. (R. 116-17). The trial court questioned Mr. Fergerson whether he understood the guilty plea forms that he signed, and whether he understood that he was waiving those rights by pleading guilty. (R. 117-19). The court ascertained that Mr. Fergerson was satisfied with his counsel. (R. 119). The trial court read the indictment to Mr. Fergerson and asked if he had any questions regarding the indictment. (R. 119-22).

Although lengthy, the conversation that transpired next is critical to the understanding of this issue:

"THE COURT: Now has that charge been explained to you by your lawyers?

"MR.FERGERSON: Yes, sir.

"THE COURT: Do you have any questions about it?

"MR. FERGERSON: No, sir.

"THE COURT: Do you want me to read that indictment to you again?

MR. FERGERSON: No, sir.

"...

"THE COURT:  All right.  Now, have you discussed the facts and your involvement in this case with your lawyers?

"MR. FERGERSON:  Involvement?

"THE COURT:  Right, have you talked to your lawyers about this case?

"MR. WHATLEY [defense counsel]: Have you met with us to talk to us about the facts of this case?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  Okay.  **And did you commit the offense of capital murder?**

"MR. FERGERSON:  Well, **the robbery, yes, sir, but the murder, no, sir.**

"...

"MR. FERGERSON:  **I participated in the robbery, but I didn't pull the trigger.**

"THE COURT:  Well, that – that's not the question. Did you commit the offense of capital murder?

"MR. FERGERSON:  Yes, sir.

"...

"THE COURT:  And are you pleading guilty of your own free will and because you are guilty?

"MR. FERGERSON:  **I am not guilty of the murder, no, sir.**

10

"MR. WHATLEY [defense counsel]: It's a capital murder. **You are pleading to capital murder. Not asking to murder.**

"MR. FERGERSON: Yes, sir.

"THE COURT: Again, I am going to ask you again: Are you pleading guilty of your own free will and because you are guilty?

"MR. FERGERSON: Yes, sir.

"THE COURT: Now, do you understand that by entering this plea of guilty, you are basically waiving your right to appeal as set forth on the back of Form A?

"MR. FERGERSON: Yes, sir.

"THE COURT: All right...

(R. 122-25). (Emphasis added.)

The trial court discussed the applicability of the

Habitual Offender statutes. The following then transpired:

"THE COURT: Okay. Now, this question is to the attorneys. Have you conferred with the Defendant and advised him concerning the facts in this case and his rights?

"MR. COOPER: Yes, Your Honor.

"MR. WHATLEY: Yes, sir.

"THE COURT: Have ya'll explained the nature of the charge to him?

"MR. COOPER: Yes, sir.

"MR. WHATLEY: Yes, sir.

11

"THE COURT:  Do you recommend the Court accept his plea?

"MR. WHATLEY:  Yes, sir, we do.

"MR. COOPER:  Yes, sir.

"THE COURT:  Have you conferred with him regarding his appellate rights?

"MR. WHATLEY:  Yes, sir, we have.

"THE COURT: And at this point I think we should wait until we receive the verdict from the jury. And at this time I am not going to ask the allocution, but I will ask you again, Mr. Fergerson, to the charge of capital murder, how do you plead?

"MR. FERGERSON:  **I plead guilty to the robbery, sir.**

"MR. WHATLEY:  Guilty to –

"THE COURT:  Well, that's not the charge.  The charge isn't robbery.  To the charge of capital murder, how do you plead?

"MR. FERGERSON:  **I thought the charge was murder and robbery.**

"THE COURT:  **It is. It's murder – it's a murder taking place during the course of the robbery. That – that would be the definition of capital murder in your case.**

"MR. FERGERSON:  I plead guilty to it.

"THE COURT:  Okay.

"MR. ABBETT [District Attorney]:  Judge, I think I want the record to be clear that he is pleading guilty to the capital murder; he just denies

12

actually being the person that pulled the trigger
that killed the decedent, Thomas Patrick Hughes.
Is that correct?

"THE COURT:  Is that correct, Mr. Fergerson?

"MR. FERGERSON: Yes, sir.

"THE COURT: **You participated in this robbery with
Jamarian Quortez Thornton.**  He was the other
person that was wearing a mask on the occasion
when Mr. Hughes was killed?

"MR. FERGERSON:  Yes, sir."

(R. 125-27). (Emphasis added.)

On September 10, 2003, the jury trial was conducted.

The jury found Mr. Fergerson guilty of capital murder, as

charged in the indictment. (R. 412-13).  The trial court

asked Mr. Fergerson if he had anything to say and he

responded:  "…I would like to say I am sorry for the loss

of the family victim, and **I did not take a life.**"  (R.

413). (Emphasis added.)

On September 23, 2003, Mr. Fergerson filed a pro-se

motion to withdraw his plea, and he renewed that motion on

October 17, 2003. (C. 3, 347-39).  A hearing was conducted

on Mr. Fergerson's motion.  **Mr. Fergerson was represented**

**at that hearing by the same attorneys who assisted him**

13

during the guilty plea and trial proceedings, and the trial
judge also presided at the guilty plea hearing.

In support of his motion, Mr. Fergerson argued that he
wanted to withdraw his plea because of evidence presented
at trial, and evidence that he gathered after trial.  (R.
418) The gist of Mr. Fergerson's argument was that he
should be allowed to withdraw his plea because there was
evidence to support his contention that he did not intend
to kill the victim: Jamarian Thornton accidentally admitted
at trial that he was the person who went to the back of the
restaurant with the manager, and there were witnesses who
would testify that Thornton admitted to them that he was
the triggerman. (R. 417-18.) Although Mr. Fergerson's pro-
se motion was not lengthy, given the trial court's
familiarity with the case, it was certainly sufficient to
apprise the trial court of the reason he wished to withdraw
his plea. The trial court denied Mr. Fergerson's motion to
withdraw his guilty plea. (R. 420; C. 351).

### ARGUMENT

The Court of Criminal Appeals Court held that Mr.
Fergerson's claim that his plea was not knowingly and
voluntarily rendered was not properly before the Court

14

because it was raised for the first time on appeal.  This
Court reasoned:

> "… The appellant's position throughout the
> proceedings was that he was not the shooter.  **He
> did not claim that he did not understand the
> charge against him or argue that he was an
> accomplice in the underlying robbery only."**

(Emphasis added.)

Contrary to the Court's conclusion, as the above cited
portions of the record reflect, Mr. Fergerson **did** present
his claim to the trial court and therefore preserve his
assertion for appellate review. From the very outset of the
guilty plea proceedings, Mr. Fergerson indicated his
reluctance to plead to the charge contained in the
indictment—an indictment that Mr. Fergerson's original
defense counsel argued was fatally flawed. In fact, the
first guilty plea hearing had to be dismissed because Mr.
Fergerson retracted his intent to plead guilty.  When court
reconvened, Mr. Fergerson was still confused about the
charge contained in the indictment.  **While perhaps
simplistic, it appears that Mr. Fergerson thought that the
robbery and murder elements could be segregated into
separate offenses, and that all he was admitting to was**

15

that he participated in the robbery and the fact that there was a murder—not his participation in the murder. The Court's attempt to clarify the charge only made matters worse.

Mr. Fergerson's motion to withdraw his guilty plea and his argument on that motion were simply a reiteration of his previous position—that all he intended was to be an accomplice in a robbery. The gist of Mr. Fergerson's argument was that he should be allowed to withdraw his plea because there was evidence to support his contention that he did not intend to kill the victim:  Jamarian Thornton accidentally admitted at trial that he was the person who went to the back of the restaurant with the manager, and there were witnesses who would testify that Thornton admitted to them that he was the triggerman.

Although Mr. Fergerson may not have used the magic words "involuntary plea" in his pro se motion to withdraw his plea and in the subsequent hearing on that motion, there is little doubt that the trial court understood that motion to be a challenge to the voluntariness of the guilty plea—this was, after all, the same trial judge who presided over the **entire** proceedings. **Surely, given the extensive**

16

discussion over his original defense counsel's concerns regarding the charge, and the very apparent confusion exhibited by Mr. Fergerson at the guilty plea hearing, the trial court was aware that Mr. Fergerson did not understand the nature of the charge against him.  If the trial court was not aware of this confusion, then that only highlights the problem in this case.

Although Mr. Fergerson's trial attorneys were present at the hearing on the motion to withdraw his guilty plea, they did not assist with or advocate his motion.  With all due respect, this Honorable Court should be mindful that these were the same attorneys who, however well intentioned, encouraged Mr. Fergerson to plead guilty to a capital offense despite his apparent and understandable confusion over the charge.  These same attorneys conceded any defense, and, in fact, implored the jury to find Mr. Fergerson guilty of the charge.

Mr. Fergerson was left with no recourse but to argue his motion to withdraw the guilty plea himself. While perhaps inarticulately worded and argued, his pro-se motion was sufficient to put the trial court on notice of the matter presented on appeal.

17

Whenever there is a possibility that a defendant does not understand the charge against him, the trial court should not accept a guilty plea. <u>Pierce v. State</u>, 484 So. 2d 506, 510 (Ala.Cr.App. 1985); <u>Griffith v. State</u>, 545 So. 2d 236, 237. Given the very serious implications of Mr. Fergerson's guilty plea—it relieved the State of its burden of proving that he possessed the requisite intent to commit the murder—and his obvious confusion over the charge, the trial court should not have accepted Mr. Fergerson's guilty plea.

Even so, the trial court had the opportunity to rectify the error by granting Mr. Fergerson's motion to withdraw his guilty plea. In fact, Rule 14.4(e), Ala.R.Cr.P., **mandates** that "[t]he court **shall** allow withdrawal of a plea of guilty when necessary to correct a manifest injustice." (Emphasis added.) Unfortunately, the trial court opted not to correct its previous error.

This error was compounded by the Court of Criminal Appeals incorrect conclusion that Mr. Fergerson did not preserve his challenge to the voluntariness of his guilty plea. Contrary to the Court's conclusion, Mr. Fergerson repeatedly expressed confusion over the charge to the trial

18

court and he continuously maintained that he was an accomplice in the robbery only. Under the circumstances of this case, it is a miscarriage of justice and patently unfair to find that Mr. Fergerson failed to preserve his claim that his plea was not knowingly and voluntarily rendered.

Petitioner respectfully requests that after a preliminary examination the writ of certiorari be granted and that this Court proceed under its rules to review the matters complained of, and to reverse the judgment of the Court of Criminal Appeals, and for such other relief as Petitioner may be entitled. Failure to do so will only invite a post-conviction petition challenging the guilty plea on the ground that Mr. Fergerson received ineffective assistance of trial counsel, and this Honorable Court does not invite petitions for post-conviction relief. Pardue v. State, 571 So. 2d 320, 330, n. 2 (Ala.Cr.App. 1989), rev'd on other grounds, Ex parte State of Alabama, 571 So. 2d 333 (Ala. 1990).

Respectfully submitted,

Jeffrey G. Tickal

19

I certify that I have this day served copies of this petition and the accompanying brief on all other parties to the appeal in the Court of Criminal Appeals, and to the Court of Criminal Appeals.

Respectfully Submitted,

Jeffrey G. Tickal
P.O. Box 230
Opelika, AL  36803-0230
(334)749-5115

20

S.C.No._____

IN THE SUPREME COURT
STATE OF ALABAMA

GREGORY MONTAE FERGERSON,
PETITIONER/APPELLANT,

v.

STATE OF ALABAMA,
RESPONDENT/APPELLEE.

ON APPEAL FROM THE CIRCUIT COURT OF
LEE COUNTY, ALABAMA
CIRCUIT COURT CASE NUMBER:  CC-01-128

APPELLANT'S BRIEF IN SUPPORT OF PETITION FOR WRIT OF
CERTIORARI

JEFFREY G. TICKAL
P.O. BOX 230
OPELIKA, AL  36803-0230
(334)-749-5115

## STATEMENT REGARDING ORAL ARGUMENT

Please note that pursuant to Rule 28(a)(1), Ala.R.App.P., Mr. Fergerson does not request oral argument. The issues are adequately addressed in the brief and, in the undersigned's opinion, do not need to be further addressed in oral arguments.

ii

# TABLE OF CONTENTS

Statement Regarding Oral Argument--------------- ii

Table of Authorities---------------------------- iv

Statement of the Case--------------------------- 1-3

Statement of the Issues------------------------- 4

Statement of the Facts-------------------------- 5-17

Statement of the Standard of Review------------- 18-19

Summary of the Argument------------------------- 18-19

Argument in Support of Issues I & II------------ 20-45

Conclusion-------------------------------------- 44-45

Certificate of Service-------------------------- 46

## TABLE OF AUTHORITIES

**Table of Cases**                                    **Page No.**

<u>Arthur v. State</u>, 711 So.2d 1031 (Ala.Cr.App. 1996)--- 34-35

<u>Atteberry v. State</u>, 448 So.2d 425(Ala.Cr.App. 1983)- 38

<u>Ex parte Ritter</u>, 375 So. 2d 270 (Ala. 1979)--------- 37,38

<u>Griffith v. State</u>, 545 So. 2d 236 (Ala. Cr. App. 1989) 36, 37,40,41 & 44

<u>Henderson v. Morgan</u>, 426 U.S. 637 (1976)------------- 35,36

<u>McCarthy v. U.S.</u>, 394 U.S. 459 (U.S.Ill. 1969)------- 37

<u>Pardue v. State</u>, 571 so. 2d 320 (Ala.Cr.App. 1989)---- 45

<u>Pierce v. State</u>, 484 So. 2d 506 (Ala.Cr.App. 1985)-38,39,44

<u>Smith V. O'Grady</u>, 312 U.S. 329 (1941)-----------------32

<u>U.S. v. Brown</u>, 117 F. 3d 471 (C.A. 11 (Ga.) 1977)-----32,33


**Statutes and other Authorities**

Rule 14.4(a)(1)(i), Ala.R.Cr.P------------------------32

Rule 14.4(e), Ala.R.Cr.P.----------------------------44

iv

## STATEMENT OF THE CASE

This is a direct appeal from the trial court's denial of Mr. Fergerson's motion to withdraw his guilty plea to capital murder.  The Honorable Shane Cooper, and Wesley Schuessler initially represented Mr. Fergerson. As discussed below, Mr. Schuessler was allowed to withdraw and the Honorable William Whatley, Jr., was appointed as co-counsel. The Honorable Judge Jacob Walker, III, presided over the proceedings.

In the winter term of 2001, the Grand Jury of Lee County returned an indictment against Gregory Fergerson. (C. 13) The indictment charged Mr. Fergerson with murder made capital because the murder was committed during the course of an armed robbery, in violation of section 13A-5-40(a)(2), Code of Alabama 1975.

Mr. Fergerson filed various motions (C. 19-24, 26-27, 51-75), including a motion to dismiss the indictment (C. 29-36).  On May 3, 2001, the trial court denied Mr. Fergerson's motion to dismiss the indictment (C. 9; R. 30), and Mr. Fergerson was arraigned.  (R. 31-34.) He entered a

1

plea of not guilty and not guilty by reason of insanity.
(C. 9; R. 34).

Mr. Fergerson filed additional motions, including a
motion from Mr. Schuessler to withdraw as co-counsel. (C.
77, 80, 85-101, 106-107.)  On February 6, 2003, Mr.
Schuessler was allowed to withdraw as co-counsel, and the
Honorable William Whatley entered notice of appearance as
co-counsel.  (C. 109,115; R. 77).  Numerous other motions
were filed. (C.111, 116-17, 122-23, 135-188).

On August 20, 2003, a hearing was conducted. During the
hearing, Mr. Fergerson indicated his desire to plead guilty
to capital murder pursuant to the State's agreement to
recommend life in the penitentiary without the possibility
of parole. (R. 99-104.) A guilty plea hearing was conducted
on September 8, 2003, and Mr. Fergerson withdrew his plea
of not guilty and entered a plea of guilty to the charge of
capital murder. (C. 4; R. 106-12, 114-29).

On September 10, 2003, a jury trial was conducted, as
required by section 13A-5-42(Code of Alabama 1975). (R.
131-415). The jury found Mr. Fergerson guilty of capital
murder, as charged in the indictment. (C. 3; R. 412-13).
Pursuant to the plea agreement, Mr. Fergerson was sentenced

2

to life in the penitentiary without the possibility of parole. (C. 3; R. 413). The trial court ordered Mr. Fergerson to pay $1000 to the Victim's Compensation Restitution Fund. (C. 3; R. 414).

On September 26, 2003, and again on October 17, 2003, Mr. Fergerson filed pro-se written motions to withdraw his guilty plea. (C. 3, 347-49.) On November 10, 2003, following a hearing, the trial court denied Mr. Fergerson's request to withdraw his guilty plea. (C. 3, 351; R. 416-24.)

On November 14, 2003, Mr. Fergerson gave notice of his intent to appeal the trial court's denial of his motion to withdraw his guilty plea. (C. 2, 352.) The undersigned counsel was appointed to represent Mr. Fergerson on November 25, 2003. (C. 353, 355).

On May 21, 2004, the Court of Criminal Appeals affirmed the judgment. An application for rehearing was filed on June 4, 2004, and overruled on June 18, 2004. Thus, this petition for writ of certiorari follows.

3

## STATEMENT OF THE ISSUES

Whether the trial court erred in denying Mr. Fergerson's motion to withdraw his guilty plea when the record clearly establishes that Mr. Fergerson did not understand the charge against him?

Whether the Court of Criminal Appeals erred in holding that Mr. Fergerson failed to preserve his assertion that his guilty plea was not knowingly and voluntarily rendered?

4

## STATEMENT OF THE FACTS

On September 8, 2003, Mr. Fergerson entered a plea of guilty to the charge of capital murder. (C.4; R. 114-29). The specific facts surrounding the guilty plea will be discussed at length in the argument portion of this brief. Although Mr. Fergerson pleaded guilty to the charge contained in indictment, a jury trial was still conducted, as required by section 13A-5-42, Code of Alabama 1975. (R. 131-415).

At trial the State presented evidence that around 10:15 p.m on November 4, 2000, two men armed with guns entered the Wendy's fast food restaurant in Opelika, Alabama.[1] Stephanie Johnson, Debrowski Johnson (Stephanie's brother), Maxine Chappell, and the manager, Patrick Hughes, were on duty at that time. (R. 237).

Stephanie testified that she was near the fry stand, her brother was near the lobby, Maxine Chapel was mopping the cooler, and Patrick Hughes was walking from the back of the restaurant toward the customer counter when the two men entered the store. (R. 237). She heard a male voice from

---

[1] Defense counsel agreed to allow the State to read most witnesses' statements into the record, and to waive any hearsay objection to those statements. (R. 109).

5

the other side of the counter order her to get down on the floor. (R. 237). Stephanie said that the black male was wearing a "Scream" mask. (R. 237).

Stephanie stumbled backwards and asked what the man wanted. (R. 238). She got down onto the floor as the man jumped the counter. (R. 238). Stephanie told the police that the man accidentally fired a shotgun at the floor in front of her. (R. 238, 246).

Around that same time, Stephanie saw another black male wearing a "Jason" or hockey-styled mask enter the kitchen door and point a small, black revolver at Patrick Hughes's head. (R. 239; 245-46.) That male directed Hughes toward the back of the store, and Stephanie heard a shot. (R. 239). The two men then fled the store. Stephanie went to the back of the store and found Patrick Hughes lying on the floor. (R. 240).

Debrowski Johnson stated that as he was walking away from cleaning the grill, he heard a male voice order Stephanie to get down and ask where the money was kept. (R. 241.) A door hid Debrowski from the assailant's view. (R. 249.) Debrowski said that man was wearing a "Scream" mask,

6

a black hooded sweatshirt, and black pants, and he was
holding a shotgun. (R. 242.)

Debrowski told police that he also saw a man dressed in
black and wearing a "Jason" mask standing in the hallway
leading to the back of the restaurant. (R. 242-43, 247-48).
According to Debrowski, that man was holding a chrome semi-
automatic pistol.(R. 243).

As Debrowski slipped out of the door to the restaurant,
he heard a gunshot. (R. 243).  He ran to a nearby Dominos
Pizza store and told an employee to call the police. (R.
243).  Debrowski saw two men running toward the bridge near
the Wendy's restaurant. (R. 243-44.)

Patrick Hughes died as a result of a gunshot would to
the top of the head.(R. 269).

Various items of clothing, and weapons were found
scattered along the nearby railroad tracks and under the
bridge. (R. 257-58, 287-88). Specifically, some "dark
colored sweat clothing" and a hockey mask were found on
some rocks in a drainage area. (R. 259) A handgun was
recovered from underneath the clothing and the hockey mask.
(R. 275-76).  A casing remained in the gun, indicating that

7

one of the bullets in the revolver had been fired. (R. 276).

White socks were found scattered in a dirt area at the edge of the railroad tracks. (R. 259, 278). One of the socks found under the bridge had bloodstains on it. (R. 281). A "Scream" mask was found in the middle of a railroad-maintenance road underneath the bridge. (R. 259). A Winchester thirty-thirty rifle was also recovered from underneath the bridge. (R. 274).

At some point after the crime occurred, a woman came to the Wendy's restaurant and told Mr. Thompson, the acting manager, that she knew who had committed the crime. (R. 288). The woman handed Mr. Thompson a piece of paper with the names "Gregory Furgalene" and "Moot Moot," written on the paper. (R. 289). Mr. Thompson got the tag number and description of the woman's automobile and furnished that information to the police. (R. 289).

That woman, whose name is Elizabeth Henley, subsequently gave a statement to the police. The statement provides, in relevant part:

> Henley stated that a close black female friend
> told her, Henley, that Gregory Fergerson and his
> girlfriend Crystal came to her residence and told

8

her that Gregory and a guy named Noot-Noot or
Moot-Moot did the robbery at Wendy's. Henley
stated that the female told her that Gregory said
after the robbery they hid the masks and he,
Gregory, ran to Crystal's house and told her.
Henley stated that Gregory told the female that
Noot-Noot shot the manager because he thought the
manager set off the alarm. Henley stated that the
female said that Gregory is freaked out about it
and is trying to find a way to tell his mother
what happened. Henley stated that Gregory is
afraid that Noot-Noot will kill him. Henley stated
that Gregory would probably confess if asked about
the crime. Henley stated she did not want to give
a statement and did not want to reveal her black
female friend's name. Henley stated that she
would get in touch with the female and try to
convince her to talk with the OPD.

(R. 290-91).

On November 14, 2000, Gregory Fergerson gave the

following statement to the police:

"My name is Greg Fergerson, and I live at Lot 3
Johnson's Trailer Park with my mom Patricia. The
detectives asked me about the Wendy's robbery. I
do not know nothing about it. They said that was
Saturday night the 4th. That day I was at my mom's
early. Then went over to Dover for a while. I
saw Moot-Moot the same guy I got stopped with that
night with the brass knuckles on the block,
Magnolia Street, around in the morning, but not
after that. A girl I see, Rachel Caldwell, came
by the block and picked me up around six, seven,
or eight that night, and we went to the Super
Eight Motel and got a room on the top back and
stayed all night except for when we visited her
folks. Rachel drives a white Ford Taurus. I see
other girls, too: Crystal Ferrell and Shirley
Benford, but my heart is Lee Ann Michelle Reed.
She lives in Wadley. I didn't see Crystal that

9

night, but I saw her when I got back Sunday and
Sunday night.   I don't know why anybody would put
my name in the Wendy's robbery.   I don't know
anything about it."

(R. 313-21.)

On November 15, 2000, Shirley Ann Benford gave a

statement to the police. (R. 303-11)  She told police that

on the day of the robbery, Greg Fergerson and Moot-Moot

(Jamarian Thornton) had been at her house most of the day.

(R. 304-05).  Fergerson asked Benford if he could borrow a

pair of black pants for Moot-Moot, so she loaned him a pair

of black Tommy Hilfiger windsuit pants. (R. 304-05).

Benford said that Moot-Moot was wearing a Halloween mask

that he kept pulling down over his face. (R. 305). Benford

stated that she overheard a conversation between Fergerson

and Moot-Moot, during which Moot-Moot said, "[B]ehind

Golden Cherry is a good place to hit." (R. 306).

Later that night, Fergerson and Moot-Moot left.

According to Benford, "Moot-Moot was wearing all black and

had the mask on top of his head and Greg was wearing beige

pants and a light colored pullover top." (R. 306.) Benford

did not see either Greg or Moot-Moot carrying a gun,

10

although she had seen both of them with a gun in the past.

(R. 307)

Thirty or forty-five minutes later, Greg Fergerson

returned to Benford's residence. (R. 307) Benford told the

police:

> Greg had tears in his eyes. He said that he loved
> me and he hugged me. He told me that everything
> was going to be all right, but I didn't know what
> he was talking about. Before they left, I knew
> that they were going to do something stupid. By
> stupid, I mean something that … you can get in
> trouble for because Moot-Moot had a mask and was
> dressed in black and they way that they were
> talking. When they left my house before the
> robbery, they were walking.
>
> A couple of hours after Greg left my house, I
> called his mother Patricia Fergerson to see where
> Greg was. She told me that she didn't know where
> he was and asked if I knew that Wendy's had been
> robbed…. She told me that two masks were missing
> out of the house. One out of Greg's closet and
> the other out of his nephew's closet. One looked
> like a Jason mask and the other was a kid's ghost
> face mask.

(R. 307-09).

Benford told police that a couple of days later, Moot-

Moot threatened to kill her if she did not stop talking to

people about the incident. Specifically, she said:

> "He told me that he heard I had been running my
> mouth too much. I know that he was talking about
> Wendy's. He said that Greg probably wouldn't do

11

anything to me, but if I kept running my mouth, he would kill me."

(R. 310).

Mr. Fergerson was arrested on November 15, 2000. (C. 12; R. 279). After he was jailed, Mr. Fergerson wrote a letter to a Rachel Ann Caldwell, which was read into evidence. (R. 292-96) In the letter, Mr. Fergerson essentially instructed Caldwell to tell the police that he was with her on the night of the incident.

Detective John Thompson received a letter dated November 16, 2000, supposedly written by an Ann Callaway. In the letter, Callaway claimed that Greg Fergerson could not have committed the crime because he was with her when the crime took place. (R. 296-98). The police determined that Rachel Ann Caldwell in fact wrote the letter and that its contents were not true. (R. 299).

On November 16, 2000, Mr. Fergerson gave a second statement to police. It provides, in relevant part:

> I gave a statement the other day and it was not true. I do have a heart and want to tell the truth.
>
> Me and Moot-Moot, Jamarian Thornton, went to Wendy's to rob it. When we went in, I stayed up front and Moot-Moot went to the back. I heard a gun go off. I had my finger on mine and my gun

12

went off.  We ran, but our ride left us.  The dude
that was going to give us a ride was a nigga that
Moot-Moot knew.  I had on dark sweatpants and
sweatshirt.  We both had on Jason Masks. We walked
from Hardaway Projects—it's called something else
now—to Wendy's.  It's easy to get from Hardaway to
Wendy's walking with guns.  You put the long gun
down your pants leg and the pistol in your pocket.
That night after the robbery, Rachel Caldwell did
come pick me up.  The mask had dark black holes
for eyes and a dark hole for a mouth.  We had been
at Shirley's earlier that night when it was dark."

(R. 323-25.)

On January 12, 2001, Yvonne Dooley gave a statement to

the police.  She told the police that her sister, Crystal

Ferrell, dated Greg Fergerson.  Dooley told police the

following conversation occurred several days after the

crime was committed:

"…She [Crystal] told me that Greg and Moot-Moot
had killed the guy at Wendy's. I asked her if Greg
said he did it, and Crystal said she wasn't going
to ask him.  I mean, she didn't want to ask him if
he was the one who killed the guy.  He had told
her that he robbed the place.  Greg never said
anything to me.  He only said he had done
something really fucked up…."

(R. 301-02.)(Irrelevant portions omitted.)

On May 17, 2001, Mr. Nick Abbett, the District Attorney

for Lee County, received the following hand-written letter

from Gregory Fergerson:

13

> My name is Greg Fergerson and I know something
> about the Wendy's case that has not been told.  I
> was thinking that you would find out what really
> happened, but it looks like you ain't.  You have
> it all messed up.  To tell the truth, you have an
> innocent man back here.  It was three people who
> had something to do with it, but he was not one of
> them.  I did have something to do with it, but
> it's not how you think.  I am trying to get myself
> right with God.  But I know I have to tell the
> truth one day, but I do not want it to be too
> late.  I will tell you everything that really
> happened if you would help me out.  I do not know
> how this is going to end, but the way it looks is
> I am gone to get some time for something I did not
> do.  So I have to tell what really happened before
> it gets worse.

(R. 283-85.)

Forensic tests revealed that the bullet removed from

the victim matched bullets that were test-fired from the

revolver. (R. 330,334-35)  DNA from the sock containing the

bloodstain was consistent with the known DNA sample taken

from Jamarian Thornton. (R. 344.) DNA obtained from the

hockey-styled mask was consistent with a known DNA sample

taken from Gregory Fergerson; however, there was no way to

determine when the DNA had been deposited on the mask. (R.

345-46, 349)

Jamarian Thornton agreed to plead guilty to murder and

to testify against Mr. Fergerson in return for a

recommended sentence of life in the penitentiary. (R. 368-

14

69). Thornton testified at trial that he and Gregory Fergerson were friends. (R. 353). He said on November 4, 2000, Greg asked him if he wanted to rob the Wendy's, and he agreed. (R. 353-54). Thornton claimed that he had a "thirty-thirty rifle" that he purchased from a "crack head" for $10. (R. 354). Thornton testified that Greg had a "38 revolver." (R. 355)

Thornton stated that before going to the Wendy's restaurant, he and Greg spent some time at Shirley Benford's house. (R. 357-38). Thornton said that he got a black hooded sweatshirt from Fergerson and a pair of navy windsuit pants from Benford. (R. 356). Thornton claimed that Greg gave him a "Scream" mask, and that Greg had a "Jason" or hockey mask. (R. 357; 366-67). Thornton testified that the elastic band on the "Scream" mask broke while he was playing around with the mask, and that he re-tied the band. (R. 358).

According to Thornton, he and Greg left Benford's house and walked to Orchard Street. (R. 358). Approximately twenty minutes later, around 9:45, p.m., he and Greg began walking toward Wendy's. (R. 358-59). He testified as follows:

15

"We approached the Wendy's, and we had already
agreed earlier in the conversation that Fergerson
would go to the back and I would stay up front. So
we approached the restaurant.  I went to the back.
Excuse me.  Fergerson went to the back, and I
stayed up front, and I jumped the counter with the
thirty-thirty rifle in my hand.  When I jumped the
counter, my rifle went off.  And by that time
Fergerson already made it to the back with the
store manager, from what I understand, and when my
rifle—I accidentally hit the trigger on my rifle
and it went off.  I heard—a couple of—a couple of
seconds later I heard Fergerson in the back making
a—you know, a little—it was a little commotion
going on, and I suddenly heard a shot.  Fergerson
came from the back and said something to the
nature of—something to the nature—he was
trembling, and I killed him.  And we exited the
restraunt."

(R. 359).

During direct examination, Thornton stated that he wore

socks on his hands during the crime. (R. 364-65).  He said

he injured his hand a few days before the crime, and that

explained why his blood was found on one of the socks. (R.

366).  Thornton admitted that he did not know how to load

the rifle. (R. 363).

Thornton testified that after they left the restaurant,

they ran underneath the bridge and removed the clothes that

they were wearing on top of their other clothes. (R. 360-

61). They discarded the masks, and weapons. (R. 360-62).

Thornton claimed that Mr. Fergerson told him that he shot

16

the manager because the manager was trying to attack him.
(R. 363).

Mr. Fergerson's written guilty plea form was admitted
into evidence for the jury's consideration. (C. 339-44; R.
378).

The jury found Mr. Fergerson guilty of capital murder
as charged in the indictment (R. 412-13), and he was
sentenced to life in the penitentiary without the
possibility of parole. (R. 414).

17

## SUMMARY OF THE ARGUMENT AND STATEMENT OF THE STANDARD OF REVIEW

Pursuant to Rule 28,(a)(8) & (9), Ala.R.App.P., Mr. Fergerson sets forth the following summary of his argument and the applicable standard of review.

From the very beginning of the criminal proceedings, Mr. Fergerson maintained that he was not the "triggerman," and that he never intended to kill Patrick Hughes. He continually expressed that his only intent was to commit a robbery, and that he had no intent to kill Hughes, nor did he know or foresee that Jamarian Thornton would kill Hughes. Mr. Fergerson's position **never** wavered throughout the criminal proceedings, and was, in fact, the basis for his motion to withdraw his guilty plea.

From the record, it is clear that Mr. Fergerson did not understand the elements of the charge against him.  He did not understand that by pleading guilty to the charged offense he was, in essence, agreeing that he possessed the requisite intent to kill Patrick Hughes—a matter that he vehemently denies.  Because Mr. Fergerson's guilty plea was

18

not knowingly and intelligently given, the trial court
abused its discretion in denying Mr. Fergerson's motion to
withdraw his plea.

Contrary to the Court of Criminal Appeal's conclusion,
Mr. Fergerson did present his claim regarding the
voluntariness of his guilty plea to the trial court, thus
preserving his assertion for appellate review. The Court of
Criminal Appeals erred to reversal in refusing to address
the merits of Mr. Fergerson's claim.

19

## I. & II.

**Whether the trial court erred in denying Mr. Fergerson's motion to withdraw his guilty plea when the record clearly establishes that Mr. Fergerson did not understand the charge against him?**

**Whether the Court of Criminal Appeals erred in concluding that Mr. Fergerson failed to preserve his assertion that his guilty plea was not knowingly and voluntarily rendered?**

The issues of whether Mr. Fergerson understood the charge against him prior to pleading guilty and whether his lack of understanding was adequately brought to the trial court's attention are inextricably linked and will be addressed as one issue below.

The issue presented to the Trial Court and the Court of Criminal Appeals was whether Mr. Fergerson's guilty plea to capital murder was knowingly and intelligently rendered. From the very beginning of the criminal proceedings, Mr. Fergerson maintained that he was not the "triggerman," and that he never intended to kill Patrick Hughes. He continually expressed that his only intent was to commit a robbery, and that he had no intent to kill Hughes, nor did he know or foresee that Jamarian Thornton would kill

20

Hughes. Mr. Fergerson's position **never** wavered throughout the criminal proceedings, and was, in fact, the basis for his motion to withdraw his guilty plea.

From the record, it is clear that Mr. Fergerson did not understand the elements of the charge against him. He did not understand that by pleading guilty to the charged offense he was, in essence, agreeing that he possessed the requisite intent to kill Patrick Hughes—a matter that he vehemently denies. Because Mr. Fergerson's guilty plea was not knowingly and intelligently given, the trial court abused its discretion in denying Mr. Fergerson's motion to withdraw his plea. This assertion was preserved for appellate review; therefore, the Court of Criminal Appeals erred in refusing to address the merits of Mr. Fergerson's claim.

There is no dispute that a particularized "intent to kill" the victim is a critical element in the capital offense of robbery/murder. The State's theory of the case is that Mr. Fergerson possessed the requisite intent to kill Patrick Hughes pursuant to the complicity doctrine. Whether the indictment adequately charged Mr. Fergerson with the necessary intent was the subject of an intense,

21

ongoing debate at the trial court level. An understanding

of that debate and the proceedings that followed is

critical to resolving the issues presented in this appeal.

### Essential Factual Information

The indictment charged, in pertinent part:

"The Grand Jury of said County charge that … Greg
Fergerson did intentionally cause the death of
Thomas Patrick Hughes, IV, by shooting him with a
rifle and/or a pistol, and Gregory Montae
Fergerson caused said death during the time that
Gregory Montae Fergerson was in the course of
committing a theft of lawful paper currency of the
United States of America, the exact denominations
of which are unknown to the Grand Jury, the
Property of Bodnar Enterpirses, Inc., a
corporation d/b/a Wendy's' … by the use of force
against the person of Thomas Patrick Hughes, IV,
with intent to overcome his physical resistance or
physical power of resistance or to compel
acquiescence to the taking of or escaping with the
said property, while … Gregory Montae Fergerson,
or another participant, to-wit: Jamarian Quortez
Thornton … was armed with a deadly weapon or a
dangerous instrument, to-wit: a rifle and/or a
pistol, in violation of 13A-5-40(a)(2) of the Code
of Alabama."

(C. 13-14).

On March 2, 2001, defense counsel filed a motion to

dismiss the indictment on the ground that the indictment

was impermissibly vague because it did not give Mr.

Fergerson adequate notice of the charge against him. (C.

29-36). Specifically, counsel argued:

22

> The present indictment does not come close to
> apprising Gregory Fergerson of the case he needs
> to defend, and it certainly does not charge the
> element of the offense of capital murder in that
> he has the same intent to kill as the shooter.
>
> There is no language describing any of the facts
> or circumstances of the crime that are relative
> [to] his state of mind or show that he intended
> anything other that to commit a robbery.  It fails
> to set forth particular acts or means by which
> Gregory Fergerson allegedly committed the murder
> because he possessed the same state of mind as the
> shooter."

(C. 31.)  The State filed a written response.  (C. 38-40).

On May 3, 2001, an arraignment hearing was conducted.

Prior to arraignment, the trial court entertained arguments

on the motion to dismiss the indictment, during which the

following occurred:

> "MR. SCHUESSLER [defense counsel]: … Our biggest
> battle ground in this case is really on the intent
> aspect and making absolutely sure that a jury
> doesn't convict for capital murder because the
> State convinces them beyond a reasonable doubt
> that he has committed the offense of felony
> murder, and that's an area that we just will
> continue to address at every hearing we have,
> because that to us is where the biggest chance of
> a injustice can take place.  And I have kind of
> outlined that for you on this chart."
>
> "….
>
> "MR. SCHUESSLER:  … There was an intentional
> killing by Mr. Thornton, and that is—that is going
> to be the evidence that comes before the jury, but
> if it's not properly instructed, **the State will**

23

have showed an intentional killing the intent is that of Mr. Thornton, and it will be – it will become incredibly confusing. They will have intentional killing. The only participation of Mr. Fergerson according – he was a participant in a robbery.

"THE COURT:  Of course, these cases will be tried separately, and I think the Thornton case will be tried first."

"MR. ABBETT [District Attorney]:  I expect to.

"MR. SCHUESSLER:  Yes, sir.  I read the word intentional there based on the affidavit of the crime alleged, you know, and just looking at the evidence, it would be an assumption of mine at this point that there will be evidence of intentional killing by Mr. Thornton present in Mr. Fergerson's case."

MR. GLANZER [Assistant District Attorney]:  We are arguing complicity.

"THE COURT:  Well, at this point, that's denied… "

(R. 28-30). (Emphasis added.)

Following a reading of the indictment, Mr. Fergerson

entered a plea of not guilty and not guilty by reason of

mental disease or defect. (R. 31-34).  A discussion ensued

during which defense counsel argued that because of the

confusing indictment, there was a clear risk that Mr.

Fergerson could be convicted of capital murder when he was

only guilty, at most, of felony murder. (R. 35-41).  For

the Court's consideration, defense counsel introduced a

24

memorandum on the distinction between capital murder and felony murder for the nontriggerman. (R. 35-41; C. 42-25). Counsel also moved to prohibit the reading of the indictment to the jury, and submitted a proposed alternative to reading the indictment to the jury. (R. 35-41; C. 46-49)

On August 20, 2003, a hearing was conducted. (R. 100-104). The attorney who filed and argued the motion to dismiss the indictment no longer represented Mr. Fergerson. Mr. Fergerson's new counsel indicated that a plea agreement had been reached--Mr. Fergerson would plead guilty to capital murder and the State would recommend a sentence of life in the penitentiary without the possibility of parole. (R. 102). The trial was scheduled for September 8, 2003. (R. 102).

On September 8, the case was called for trial. A hearing was conducted outside the presence of any potential jurors. The trial court discussed the order of the proceedings. (R. 107-110). As the court prepared to take Mr. Fergerson's guilty plea, the following occurred:

> "THE COURT: ... Now, do you want to go through with the plea at this time?

25

"(Brief pause was had.)

"MR. FERGERSON:   (Shaking head in the negative.)

"MR. WHATLEY [defense counsel]:   You don't want to?

"MR. FERGERSON:   (Shaking head in the negative.)

"MR. WHATLEY:   Judge, my client has just informed me that he does not want to plead guilty."

(R. 110).

The trial court stopped the proceedings in order to allow defense counsel to confer with Mr. Fergerson. (R. 111) When an agreement could not be reached, the trial court dismissed the proceedings until the following day. (R. 111-112).

That same day, however, at 2:30 p.m., court reconvened, and Mr. Fergerson indicated his desire to plead guilty. (R. 115).  The trial court asked Mr. Fergerson some general questions regarding his age, educational background, and whether he was under the influence of any drugs. (R. 116-17).  The trial court questioned Mr. Fergerson whether he understood the guilty plea forms that he signed, and whether he understood that he was waiving those rights by pleading guilty. (R. 117-19). The court ascertained that Mr. Fergerson was satisfied with his counsel. (R. 119). The

26

trial court read the indictment to Mr. Fergerson and asked

if he had any questions regarding the indictment. (R. 119-

22).

Although lengthy, the conversation that transpired next

is critical to the understanding of this issue:

"THE COURT:  Now has that charge been explained to
you by your lawyers?

"MR.FERGERSON:  Yes, sir.

"THE COURT:  Do you have any questions about it?

"MR. FERGERSON:  No, sir.

"THE COURT:  Do you want me to read that
indictment to you again?

MR. FERGERSON:  No, sir.

"...

"THE COURT:  All right.  Now, have you discussed
the facts and your involvement in this case with
your lawyers?

"MR. FERGERSON:  Involvement?

"THE COURT:  Right, have you talked to your
lawyers about this case?

"MR. WHATLEY [defense counsel]: Have you met with
us to talk to us about the facts of this case?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  Okay.  **And did you commit the offense
of capital murder?**

27

"MR. FERGERSON:  Well, **the robbery, yes, sir, but the murder, no, sir.**

"...

"MR. FERGERSON:  **I participated in the robbery, but I didn't pull the trigger.**

"THE COURT:  Well, that - that's not the question. Did you commit the offense of capital murder?

"MR. FERGERSON:  Yes, sir.

"...

"THE COURT:  And are you pleading guilty of your own free will and because you are guilty?

"MR. FERGERSON:  **I am not guilty of the murder, no, sir.**

"MR. WHATLEY [defense counsel]:  It's a capital murder. **You are pleading to capital murder.  Not asking to murder.**

"MR. FERGERSON: Yes, sir.

"THE COURT:  Again, I am going to ask you again: Are you pleading guilty of your own free will and because you are guilty?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  Now, do you understand that by entering this plea of guilty, you are basically waiving your right to appeal as set forth on the back of Form A?

"MR. FERGERSON:  Yes, sir.

"THE COURT:  All right...

(R. 122-25).  (Emphasis added.)

28

The trial court discussed the applicability of the Habitual Offender statutes. The following then transpired:

"THE COURT:  Okay.  Now, this question is to the attorneys.  Have you conferred with the Defendant and advised him concerning the facts in this case and his rights?

"MR. COOPER:  Yes, Your Honor.

"MR. WHATLEY: Yes, sir.

"THE COURT:  Have ya'll explained the nature of the charge to him?

"MR. COOPER:  Yes, sir.

"MR. WHATLEY:  Yes, sir.

"THE COURT:  Do you recommend the Court accept his plea?

"MR. WHATLEY:  Yes, sir, we do.

"MR. COOPER:  Yes, sir.

"THE COURT:  Have you conferred with him regarding his appellate rights?

"MR. WHATLEY:  Yes, sir, we have.

"THE COURT: And at this point I think we should wait until we receive the verdict from the jury. And at this time I am not going to ask the allocution, but I will ask you again, Mr. Fergerson, to the charge of capital murder, how do you plead?

"MR. FERGERSON:  **I plead guilty to the robbery, sir.**

"MR. WHATLEY:  Guilty to –

29

"THE COURT:  Well, that's not the charge.  The charge isn't robbery.  To the charge of capital murder, how do you plead?

"MR. FERGERSON:  **I thought the charge was murder and robbery.**

"THE COURT:  **It is. It's murder – it's a murder taking place during the course of the robbery. That – that would be the definition of capital murder in your case.**

"MR. FERGERSON:  I plead guilty to it.

"THE COURT:  Okay.

"MR. ABBETT [District Attorney]:  Judge, I think I want the record to be clear that he is pleading guilty to the capital murder; he just denies actually being the person that pulled the trigger that killed the decedent, Thomas Patrick Hughes. Is that correct?

"THE COURT:  Is that correct, Mr. Fergerson?

"MR. FERGERSON: Yes, sir.

"THE COURT: **You participated in this robbery with Jamarian Quortez Thornton.**  He was the other person that was wearing a mask on the occasion when Mr. Hughes was killed?

"MR. FERGERSON:  Yes, sir."

(R. 125-27).  (Emphasis added.)

On September 10, 2003, the jury trial was conducted. The jury found Mr. Fergerson guilty of capital murder, as charged in the indictment. (R. 412-13).  The trial court

30

asked Mr. Fergerson if he had anything to say and he
responded:  "…I would like to say I am sorry for the loss
of the family victim, and **I did not take a life.**"  (R.
413). (Emphasis added.)

On September 23, 2003, Mr. Fergerson filed a pro-se
motion to withdraw his plea, and he renewed that motion on
October 17, 2003. (C. 3, 347-39).  A hearing was conducted
on Mr. Fergerson's motion.  **Mr. Fergerson was represented
at that hearing by the same attorneys who assisted him
during the guilty plea and trial proceedings, and the trial
judge also presided at the guilty plea hearing.**

In support of his motion, Mr. Fergerson argued that he
wanted to withdraw his plea because of evidence presented
at trial, and evidence that he gathered after trial.  (R.
418) The gist of Mr. Fergerson's argument was that he
should be allowed to withdraw his plea because there was
evidence to support his contention that he did not intend
to kill the victim: Jamarian Thornton accidentally admitted
at trial that he was the person who went to the back of the
restraunt with the manager, and there were witnesses who
would testify that Thornton admitted to them that he was
the triggerman. (R. 417-18.) Although Mr. Fergerson's pro-

31

se motion was not lengthy, given the trial court's

familiarity with the case, it was certainly sufficient to

apprise the trial court of the reason he wished to withdraw

his plea. The trial court denied Mr. Fergerson's motion to

withdraw his guilty plea. (R. 420; C. 351).

**Argument**

Rule 14.4,(a)(1)(i), Ala.R.Cr.P. states:

> "[t]he Court shall not accept a plea of guilty
> without first addressing the defendant personally
> in the presence of counsel in open court for
> purposes of ascertaining that the defendant has a
> full understanding of what a plea of guilty means
> and its consequences, by informing the defendant
> of and determining that the defendant understands
> the **nature of the charge and the material elements
> of the offense to which the plea is offered.**"

"[R]eal notice of the true nature of the charge [is] the

first and most universally recognized requirement of due

process...." <u>Smith v. O'Grady</u>, 312 U.S. 329,334 (1941). See

also, Committee Comments to Rule 14.4, Ala.R.Cr.P.

> A defendant does not receive "real notice" of the
> nature of the charge against him unless he is
> informed of the elements of the charged offense.
> As we have previously held: The defendant receives
> "real notice" of the charge when he has been
> informed of both the nature of the charge to which
> he is pleading guilty and its elements. **This is so
> because a plea of guilty represents, in essence,
> an admission as to each and every element of the
> offense. In addition, the defendant should
> understand how his conduct satisfies those**

32

> **elements.** *Gaddy,* 780 F.2d at 943-44 (citations
> omitted); *see also Stano v. Dugger,* 921 F.2d 1125,
> 1142 (11th Cir.1991) (en banc) (recognizing that,
> prior to entering a guilty plea, a defendant must
> receive information on "the nature of the offense
> and the elements of the crime"). "At the very
> least, due process requires that the defendant,
> prior to tendering a plea of guilty, receive a
> description of the 'critical elements' of the
> charged offense...." *Gaddy,* 780 F.2d at 945
> (citation omitted).

U.S. v. Brown, 117 F. 3d 471, 477 (C.A. 11 (Ga.) 1977).

The issue before the trial court and the Court of

Criminal Appeals was whether Mr. Fergerson's plea was

knowingly and voluntarily rendered?  Did Mr. Fergerson have

"real notice of the true nature of the charge?" Did he

understand that by pleading guilty to capital murder, he

was agreeing that he possessed the requisite intent to kill

the victim—a matter that he vehemently denied throughout

the entire proceedings.  Did Mr. Fergerson understand that

his plea would, in essence, relieve the State of its burden

of proving that he possessed the necessary intent commit

the murder?  A review of the proceedings clearly indicates

that Mr. Fergerson did not understand the charge, or the

ramifications of his plea.

From the very outset of the guilty plea proceedings,

Mr. Fergerson indicated his reluctance to plead to the

33

charge contained in the indictment—an indictment that
defense counsel argued was fatally flawed. In fact, the
first guilty plea hearing had to be dismissed because Mr.
Fergerson retracted his intent to plead guilty.  When court
reconvened, Mr. Fergerson was still confused about the
charge contained in the indictment.  **While perhaps**
**simplistic, it appears that Mr. Fergerson thought that the**
**robbery and murder elements could be segregated into**
**separate offenses, and that all he was admitting to was**
**that he participated in the robbery and the fact that there**
**was a murder—not his participation in the murder. The**
Court's attempt to clarify the charge only made matters
worse.

> " ' "[N]o defendant is guilty of a capital offense
> unless he had an intent to kill, and that intent
> to kill cannot be supplied by the felony murder
> doctrine. *Beck v. State,* 396 So.2d 645, 662 (Ala.,
> March 6, 1981)"; Carnes, *Alabama's 1981 Capital*
> *Punishment Statute,* 42 Ala.Law 456, 468 (1981).
> See also *Enmund v. Florida,* 458 U.S. 782, 102
> S.Ct. 3368, 73 L.Ed.2d 1140 (1982), but see
> *Godbolt v. State,* 429 So.2d 1131, 1134
> (Ala.Cr.App.1982), holding that *Enmund* is
> inapplicable to a defendant who does not receive
> the death penalty. **However, a non-triggerman can**
> **be convicted of a capital offense if he was a**
> **knowing accomplice to the intentional killing**
> **itself.** *Ritter v. State,* 375 So.2d 270 (Ala.1979).
> **"[T]he accomplice liability doctrine may be used**
> **to convict a non-triggerman accomplice, if, but**

34

> only if, the defendant was an accomplice in the
> intentional killing as opposed to being an
> accomplice merely in the underlying felony." *Ex
> parte Raines,* 429 So.2d 1111, 1112 (Ala.1982),
> cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76
> L.Ed.2d 368 (1983).

Arthur v. State, 711 So.2d 1031, 1057-1058 (Ala.Cr.App.

1996). The confusion anticipated by the defense in its

motion to dismiss the indictment became a reality in the

guilty plea proceedings.

Mr. Fergerson's guilty plea to what-he-thought was, in

essence, a felony-murder was then used as very damning

evidence before the jury. In fact, the prosecutor told the

jury in opening arguments that Mr. Fergerson admitted to

killing the victim. (R. 225, 226). Clearly, Mr. Fergerson

intended no such admission.

It does not matter whether the evidence produced at

trial supports Mr. Fergerson's guilty plea. All that

matters for the purposes of the issue raised in the appeal

is whether Mr. Fergerson, at the time he entered his guilty

plea, fully understood the nature of the charges against

him.  Mr. Fergerson respectfully maintains that he did not.

> "A plea may be involuntary either because the
> accused does not understand the nature of the
> constitutional protections that he is waiving.
> See E.g., Johnson v. Zerbst, 304 U.S. 458, 464-

35

465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, **or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.** Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859."

Henderson v. Morgan, 426 U.S. 637 at 645, 96 S.Ct. 2253 at 247, n. 13 (1976). (Emphasis added.)

In this case, "**the court took no steps to satisfy itself that this particular appellant understood the meaning of the charges, and to learn what acts allegedly committed by appellant constituted the elements of the charge.**" Griffith v. State, 545 So. 2d 236, 240 (Ala.Cr.App. 1989).(Emphasis added).

To determine whether Mr. Fergerson "understood the meaning of the charge", the trial court simply verified that Mr. Fergerson signed the "Ireland" form.  That form purportedly acknowledges Mr. Fergerson's understanding of the charge; however, the form contains **no** explanation of the charge.  Despite the ongoing controversy over the deficient indictment, the trial court did not explain the elements of the capital crime to Mr. Fergerson.  The trial court appears to rely on defense counsels' assurances that

36

they had explained the charges to Mr. Fergerson. Given Mr.

Fergerson's apparent confusion over the charge, this was

just not sufficient.  See Griffith, 545 So. 2d 236, 238.

Furthermore, the trial court did not attempt to "learn

what acts allegedly committed by the appellant constituted

the elements of the charge." Griffith, 545 So.2d 236, 240.

> The judge must determine 'that the conduct which
> the defendant admits constitutes the offense
> charged in the indictment or information or an
> offense included therein to which the defendant
> has pleaded guilty.' **Requiring this examination of
> the relation between the law and the acts the
> defendant admits having committed is designed to
> 'protect a defendant who is in the position of
> pleading voluntarily with an understanding of the
> nature of the charge but without realizing that
> his conduct does not actually fall within the
> charge.'**

McCarthy v. U.S., 394 U.S. 459, 467, 89 S.Ct. 1166,

1171 (U.S.Ill. 1969)(Emphasis added.)

Mr. Fergerson was **never** asked to testify to any facts

that would purportedly support his plea of guilty to

capital murder pursuant to the accomplice liability

doctrine. There was **no** evidence that Mr. Fergerson and

Jamarian Thornton discussed and agreed beforehand that the

manager would be killed if the manager did not cooperate.

There was **no** evidence that Mr. Fergerson "encouraged and

37

supported the killing and was present with [Thornton's] knowledge to render assistance [in the murder] should it become necessary." <u>Ex parte Ritter</u>, 375 So. 2d 270, 275 (Ala. 1979).

In fact, with the exception of Jamarian Thornton's self-serving claims, there is **no** evidence before, during, or after the guilty plea proceeding that establishes that Mr. Fergerson possessed the particularized intent to kill Patrick Hughes. See <u>Atteberry v. State</u>, 448 So. 2d 425, 427 (Ala.Cr.App. 1983) ("The finding of a factual basis must be grounded upon some indication in the record that the accused actually committed acts that would justify a conviction based upon his guilty plea.") All that is ever successfully established is that Mr. Fergerson intended to participate in the armed robbery and, as discussed above, this is not sufficient to support a conviction for capital murder.

In this case, the reading of the indictment did not satisfy the trial court's burden of ascertaining that there was a factual basis for the plea—the indictment was not "simple", and it failed to adequately charge or define the element of intent. See <u>Pierce v. State</u>, 484 So. 2d 506

38

(Ala.Cr.App. 1985). (Although the indictment tracked the

language of the statute, the mere reading of the indictment

was not sufficient to establish a factual basis for the

guilty plea because the indictment failed to define the

critical element of intent.)

> When some of the elements of the offense are not
> stated, misunderstandings are likely to occur.
> *United States v. Punch*, 709 F.2d 889, 894 (5th
> Cir.1983) (determination of compliance with
> Fed.R.Crim.P. 11). "[W]henever this possibility
> [of misunderstanding] is present and the defendant
> before sentencing claims that it was a reality,
> the courts should be loath to deny an accused his
> right to trial." *Id*. (quoting *United States v.
> Roberts*, 570 F.2d 999, 1011 (D.C.Cir.1977), aff'd,
> 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622
> (1980)). "[A] swift change of heart is itself
> strong indication that the plea was entered in
> haste and confusion." 709 F.2d at 895 n. 10
> (quoting *United States v. Barker*, 514 F.2d 208,
> 222 (D.C.Cir.), cert. denied, 421 U.S. 1013, 95
> S.Ct. 2420, 44 L.Ed.2d 682 (1975)). Like those in
> *Punch*, Pierce's remarks may be construed as
> revealing his ignorance either that intent was an
> element of the offense or that the prosecution had
> the burden of proof of intent, and, at the very
> least, they reveal considerable confusion on his
> part. 709 F.2d at 895.

Pierce v. State, 484 So.2d 506, 510 (Ala.Cr.App.1985)

From the time of his arrest until the present, Mr.

Fergerson has maintained that he did not intend to kill

Patrick Hughes, nor did he know or foresee that Jamarian

Thornton would kill Hughes. All he intended was to be an

39

accomplice in the robbery.  It is clear that Mr. Fergerson

did not understand the charge against him, nor did he

understand that by pleading guilty, he was admitting that

he possessed the requisite intent to kill Hughes.

> It is within the sound discretion of the trial
> court to refuse withdrawal of a plea of guilty,
> and the denial of the motion will not be disturbed
> except where an abuse of judicial discretion is
> shown. *State v. Holman*, 486 So.2d 500 (Ala.1986);
> *Dawson v. State*, 44 Ala.App. 525, 215 So.2d 459
> (1968), cert. denied, 283 Ala. 714, 215 So.2d 463
> (Ala.1968). We cite, with approval, the general
> rule found in 22 C.J.S. *Criminal Law* § 421(3)
> (1961), as follows:
>
> "In a proper case, the discretion of the court
> should be freely exercised to allow a withdrawal
> of a plea of guilty; **it should be liberally
> exercised especially in capital cases, in favor of
> life and liberty or innocence and liberty; and, as
> the law favors a trial on the merits, the court
> should resolve all doubts and exercise its
> discretion in favor of such a trial.**
>
> "... **[T]he withdrawal of the plea of guilty should
> not be denied in any case where it is in the least
> evident that the ends of justice will be subserved
> by permitting not guilty to be pleaded in its
> place.**
>
> "....
>
> "... **Where the evidence as to whether the plea was
> entered through fear, duress, misunderstanding, or
> improper influence is in hopeless conflict, the
> better practice is to permit the plea to be
> withdrawn. Indeed, any doubt as to the plea's
> being voluntary should be resolved in accused's
> favor.**" (Footnotes omitted.)

40

<u>Griffith v. State</u>, 545 So.2d 236, 237. (Emphasis added.)

　　As set forth above, Mr. Fergerson's guilty plea was not knowingly and voluntarily entered, therefore the trial court abused its discretion in denying his motion to withdraw his guilty plea.

　　This error was compounded by the Court of Criminal Appeal's holding that Mr. Fergerson's claim that his plea was not knowingly and voluntarily rendered was not properly before the Court because it was raised for the first time on appeal.　The Court reasoned:

> "… The appellant's position throughout the proceedings was that he was not the shooter.　**He did not claim that he did not understand the charge against him or argue that he was an accomplice in the underlying robbery only.**"

(Emphasis added.)

　　Contrary to the Court's curious conclusion, a review of the record indicates that Mr. Fergerson did present his claim to the trial court and therefore preserve his assertion for appellate review.　Over and over again, throughout the course of the entire proceedings, Mr. Fergerson expressed confusion over the nature of the

41

charge-he continually maintained that he only participated in the robbery and did not participate in the murder.

Mr. Fergerson's motion to withdraw his guilty plea and his argument on that motion were simply a reiteration of his previous position—that **all** he intended was to be an accomplice in a robbery. Although Mr. Fergerson may not have used the magic words "involuntary plea" in his pro se motion to withdraw his plea and in the subsequent hearing on that motion, there is little doubt that the trial court understood that motion to be a challenge to the voluntariness of the guilty plea—this was, after all, the same trial judge who presided over the **entire** proceedings. **Surely, given the extensive discussion over his original defense counsel's concerns regarding the charge, and the very apparent confusion exhibited by Mr. Fergerson at the guilty plea hearing, the trial court was aware that Mr. Fergerson did not understand the nature of the charge against him. If the trial court was not aware of this confusion, then that only highlights the problem in this case.**

Although Mr. Fergerson's trial attorneys were present at the hearing on the motion to withdraw his guilty plea,

42

they did not assist with or advocate his motion.  With all due respect, this Honorable Court should be mindful that these were the same attorneys who, however well intentioned, encouraged Mr. Fergerson to plead guilty to a capital offense despite his apparent and understandable confusion over the charge.  These same attorneys conceded any defense, and, in fact, implored the jury to find Mr. Fergerson guilty of the charge.

Mr. Fergerson was left with no recourse but to argue his motion to withdraw the guilty plea himself. While perhaps inarticulately worded and argued, his pro-se motion was sufficient to put the trial court on notice of the matter presented on appeal.

Whenever there is a possibility that a defendant does not understand the charge against him, the trial court should not accept a guilty plea. Pierce v. State, 484 So. 2d 506, 510 (Ala.Cr.App. 1985); Griffith v. State, 545 So. 2d 236, 237.  Given the very serious implications of Mr. Fergerson's guilty plea—it relieved the State of its burden of proving that he possessed the requisite intent to commit the murder—and his obvious confusion over the charge, the

43

trial court should not have accepted Mr. Fergerson's guilty plea.

Even so, the trial court had the opportunity to rectify the error by granting Mr. Fergerson's motion to withdraw his guilty plea. In fact, Rule 14.4(e), Ala.R.Cr.P., **mandates** that "[t]he court **shall** allow withdrawal of a plea of guilty when necessary to correct a manifest injustice." (Emphasis added.) Unfortunately, the trial court opted not to correct its previous error.  This error was compounded by the Court of Criminal Appeals erroneous conclusion that Mr. Fergerson failed to present his claim regarding the voluntariness of his plea to the trial court.

### Conclusion

Under the circumstances of this case, it is a miscarriage of justice and patently unfair to find that Mr. Fergerson failed to preserve his claim that his plea was not knowingly and voluntarily rendered. Accordingly, Petitioner respectfully requests that after a preliminary examination the writ of certiorari be granted and that this Court proceed under its rules to review the matters complained of, and to reverse the judgment of the Court of Criminal Appeals, and for such other relief as Petitioner

44

may be entitled.   Failure to do so will only invite a post-conviction petition challenging the guilty plea on the ground that Mr. Fergerson received ineffective assistance of trial counsel, and this Honorable Court does not invite petitions for post-conviction relief. Pardue v. State, 571 So. 2d 320, 330, n. 2 (Ala.Cr.App. 1989), rev'd on other grounds, Ex parte State of Alabama, 571 So. 2d 333 (Ala. 1990).

Respectfully Submitted,

Jeffrey G. Tickal
Attorney for Appellant

45

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing brief upon the following parties by United States Mail, postage prepaid, on this the 2ⁿᵈ day of July 2004.


Hon. Troy King
Attorney General
C/O Jack Willis
Attorney of Record
11 S. Union Street
Montgomery, AL  36101

William Whatley, Jr.
P.O. Box 230743
Montgomery, AL  36123-0743

G. Shane Cooper
P.O. Box 922
Auburn, AL  36831

Mr. Lane Mann
Clerk for the Court of Criminal Appeals
P.O. Box 301555
Montgomery, AL  36130-1555



Jeffrey O. Tickal


46

CR-05-1060

FILED
MAY 2 5 2006
CLERK
COURT CRIMINAL APPEALS

In the COURT of CRIMINAL APPEALS
of ALABAMA

◆

GREGORY MONTAE FERGERSON,

*Appellant,*

v.

STATE OF ALABAMA,

*Appellee.*

◆

On Appeal From the Circuit Court of
Lee County
(CC-01-128.60)

BRIEF OF APPELLANT

Troy King
*Attorney General*

Andy S. Poole
*Assistant Attorney General*

Jack Willis
*Assistant Attorney General*
Counsel of Record *

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

May 25, 2006

CR-05-1060

====================

*In the COURT of CRIMINAL APPEALS
of ALABAMA*

———————◆———————

GREGORY MONTAE FERGERSON,

*Appellant,*

v.

STATE OF ALABAMA,

*Appellee.*

———————◆———————

*On Appeal From the Circuit Court of
Lee County
(CC-01-128.60)*

====================

BRIEF OF APPELLANT

Troy King
*Attorney General*

Andy S. Poole
*Assistant Attorney General*

Jack Willis
*Assistant Attorney General*
Counsel of Record *

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

May 25, 2006

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument in this case.

i

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT......................... i

TABLE OF CONTENTS......................................... ii

TABLE OF AUTHORITIES.................................... iii

STATEMENT OF THE CASE AND FACTS........................... 1

ISSUE PRESENTED FOR REVIEW.............................. 12

STANDARD OF REVIEW...................................... 13

SUMMARY OF ARGUMENT..................................... 13

ARGUMENT................................................ 14

This Case Is Due To Be Remanded To The Lee County Circuit
Court For Further Proceedings........................... 14

CONCLUSION.............................................. 21

CERTIFICATE OF SERVICE.................................. 22

## TABLE OF AUTHORITIES

**Cases**

Baker v. State, 717 So. 2d 859, 860 (Ala. Crim.
  App. 1996) .......................................... 16

Dedeaux v. State, CR-04-0792, 2005 WL 350792,
  at *2 (Ala. Crim. App. Dec. 23, 2005) ................. 16

Ex parte Walker, 800 So. 2d 135, 138 (Ala. 2000)......... 19

Fergerson v. State, CR-03-0290 (Ala. Crim. App.
  May 21, 2004) ...................................... 16

## STATEMENT OF THE CASE AND FACTS

This appeal arises from the denial of Appellant Gregory Montae Fergerson's Rule 32 petition by Lee County Circuit Judge Jacob A. Walker, III.  Fergerson argues that the trial court erred when it summarily dismissed his Rule 32 petition without conducting an evidentiary hearing and without sufficiently addressing each claim of ineffective assistance of counsel in the court's order of dismissal. He also argues that his claim that his guilty plea was not voluntarily entered was not precluded from review under Rule 32, A.R.Crim.P..  Finally, he argues that his guilty plea was not voluntary, knowing, and intelligent.  Contrary to his contentions, the trial court did not err when it summarily dismissed Fergerson's Rule 32 petitions because the claims he raised therein were meritless or precluded. However, the Court did not address all of Fergerson's claims and this case should be remanded for further proceedings.

The following facts are taken from the appellate record on direct appeal of Fergerson's guilty plea and conviction for capital murder - the conviction that is the basis for his Rule 32 petition.  This Court's case number was CR-03-

0290.  The page references are to the record on direct
appeal until further noted.

On January 12, 2001, the Lee County Grand Jury indicted
Fergerson for the offense of capital murder.  Specifically,
the indictment charged that Fergerson intentionally caused
the death of Thomas Patrick Hughes IV by shooting him with
a rifle or a pistol while Fergerson was committing the
robbery of Wendy's Store Number 303 in Opelika.  (C. 13-14)
Fergerson applied for youthful offender status; on March
12, 2001, his application to be treated as a youthful
offender was denied.  (C. 10)  On May 3, 2001, Fergerson
pleaded not guilty and not guilty by reason of mental
disease or defect.  (C. 9)

On September 8, 2003, Fergerson, through his attorney,
advised the court that he desired to plead guilty to
capital murder with the agreement that the State would
recommend a sentence of life without the possibility of
parole.  (R. 115)  The court conducted an extensive
colloquy with Fergerson.  During the colloquy, the court
verified that Fergerson executed an Ireland form, Exhibit
A, and that the rights and matters set forth on that form
were read and explained to him by his attorneys.  (R. 115-

2

118)  The court read the indictment to Fergerson and verified that the capital murder charge had been explained to him by his attorneys.  (R. 119-122)  The court asked if Fergerson had any questions about the indictment and whether Fergerson wanted the court to read the indictment to him again.  (R. 122)  The court also asked Fergerson if he had discussed the facts of the case and his involvement in the crime with his attorneys.  (R. 122)

Fergerson stated that he had talked to his attorneys and, in response to the court's questions, stated that he committed the crime of robbery, but not murder.  (R. 123)  The court stated that that was not the question and again asked: "Did you commit the offense of capital murder?"  (R. 123)  Fergerson answered: "Yes, sir."  (R. 123)  When asked if he was pleading guilty of his own free will and because he was guilty, Fergerson stated: "I am not guilty of the murder, no sir."  His attorney then stated: "It's a capital murder.  You are pleading the capital murder."  (R. 124)  When asked again if he was pleading guilty of his own free will and because he was guilty, Fergerson answered that he was.  (R. 124)  When asked how he pleaded to the charge of capital murder, Fergerson stated that he pleaded guilty to

3

robbery.  (R. 126)  The court explained to him that the

charge was not robbery but capital murder, that was murder

taking place during the course of a robbery.  (R. 126)

Fergerson stated: "I plead guilty to it."  (R. 127)

Pursuant to Alabama Code Section 13A-5-42 (1975), a

jury was struck and the State presented evidence to prove

Fergerson's guilt.  The State submitted evidence that, on

November 4, 2000 at approximately 10:25 p.m., Fergerson and

Jamarian Thornton entered Wendy's Store 303 in Opelika and

attempted to rob it.  Employees of Wendy's told the police

that the robbers wore masks.  One of those masks was a

hockey goalie type mask made popular by the "Jason" movies.

The other mask was a "Scream" mask.  The employees could

not identify the robbers because they were masked, but they

testified that the robber wearing the "Scream" mask was

armed with a rifle and stayed in front while the robber

with the "Jason" mask, armed with a pistol, went to the

back with Hughes.  (R. 236-248)  Hughes was shot through

the head while in the back of the store.  (R. 269-270)

Thornton testified that Fergerson wore the "Jason" mask

that night, was armed with a pistol, and was the one that

shot Hughes.  (R. 354-359)  The "Jason" mask was recovered

4

and, upon testing, a DNA sample matching a known sample from Fergerson was found on the mask.  (R. 345-346) Fergerson told Thornton that he shot Hughes because he thought Hughes was trying to attack Fergerson.  (R. 363) Fergerson and Thornton fled the Wendy's and discarded their clothing and the weapons.  (R. 360-362)

After the evidence was submitted to the jury, the jury returned a verdict of guilty.  Upon adjudicating Fergerson guilty, he was sentenced, pursuant to the agreement, to life without parole.  On September 26, 2003, Fergerson filed a motion to withdraw his guilty plea.  The motion stated that Fergerson would like to withdraw his guilty plea and go to trial.  (C. 348)  A hearing was held on November 10, 2003.  At the hearing, Fergerson stated that he wanted to withdraw his guilty plea and go to trial.  His grounds for withdrawing his guilty plea were that, during Thornton's testimony, Thornton at first stated that it was he who had gone to the back of the Wendy's.  Thornton immediately corrected himself and stated that it was Fergerson who went to the back.  Fergerson stated that that evidence proved it was Thornton and not Fergerson who shot and killed the victim.  He also stated that he had learned

5

that Thornton had talked to certain individuals and told them he was the one who shot the victim.  Fergerson stated that those individuals would testify on Fergerson's behalf. (R. 417-418)  The State noted that Fergerson's assertion that he was not the shooter was known to everybody throughout the proceedings.  (R. 418)  The court stated that the evidence was sufficient to support the conviction for capital murder and denied Fergerson's motion to withdraw his guilty plea.  (R. 420)

On appeal to this Court, Fergerson argued that the trial court should have allowed him to withdraw his guilty plea because it was not knowing and voluntary.  He argued that the record "clearly indicates" that he did not understand the charge against him and that his pro se motion was sufficient to put the trial court on notice regarding this matter because his motion and argument were a reiteration of his previous petition that he did not intend to kill the store manager but simply intended to be an accomplice in the robbery of the store.  He argued that he did not understand that, by pleading guilty, he was agreeing that, even if he was only an accomplice, he possessed the requisite particularized intent to kill the

6

store manager.  This Court ruled that the grounds asserted
on appeal were not raised in the trial court and therefore
the claim concerning voluntariness could not be considered
on appeal.  Fergerson v. State, CR-03-0290 (Ala. Crim. App.
May 21, 2004).  The certificate of judgment was entered on
January 18, 2005.

On December 6, 2005, Fergerson executed a Rule 32
petition challenging his guilty plea and conviction to
capital murder.[1]  (C. 13)  Fergerson noted in his petition
that it was being mailed on December 8, 2005.  (C. 12)  It
was marked filed on December 13, 2005 by the Lee County
Circuit Court.  (C. 6)  Fergerson raised the following
claims for relief in his petition:

> (1)  The indictment charging capital murder was
> jurisdictionally defective because it charged
> Fergerson with "intentionally causing the death" of
> the victim instead of "with intent to cause the
> death" of the victim (C. 15-16);
>
> (2)  Trial counsel was ineffective because he did
> not fully explain the nature of the charge to
> Fergerson, the minimum and maximum penalties he
> could receive on his plea of guilty, or that the
> plea of guilty could subsequently be used against
> him during the trial, and therefore his guilty plea
> was involuntary, and counsel did not preserve the

---

[1] The following page references are to the appellate record
in the present case.

7

issue of the involuntariness of his guilty plea for appellate review (C. 17-19);

(3) Appellate counsel was ineffective because he did not raise the issue of the involuntariness of Fergerson's guilty plea at trial (C. 19-20); and,

(4) Fergerson's guilty plea was not knowingly or voluntarily made (C. 20-41).

On January 13, 2006, the State of Alabama filed a response and motion for summary dismissal. The State pleaded various preclusions and also pleaded that the claims were meritless. (C. 45-49)

On January 26, 2006, Fergerson filed a motion to amend his Rule 32 petition. (C. 57) He raised the following claims in the amendment:

(1) Appellate counsel was ineffective because he failed to raise the claim of ineffective assistance of trial counsel on the ground that trial counsel failed to object to the court's failure to instruct the jury on the presumption of innocence (C. 58-60);

(2) Appellate counsel was ineffective because he failed to raise a claim of ineffective assistance of trial counsel on the ground that trial counsel failed to object and preserve for review the trial court's failure to instruct the jury that they were not to draw any adverse inferences from Fergerson's exercise of his right not to testify on his own behalf (C. 61-62);

(3) Appellate counsel was ineffective for failing to raise an ineffective assistance of counsel claim on the ground that trial counsel failed to object and properly preserve the trial court's failure to

8

instruct the jury on how they were to consider
expert witness testimony (C. 63-65);

(4)   Appellate counsel was ineffective for failing
to raise a claim of ineffective assistance of trial
counsel on the ground that trial counsel failed to
object to the trial court's failure to instruct the
jury on the principles of accomplice testimony (C.
66-68); and,

(5)   Appellate counsel was ineffective because he
failed to raise the claim of ineffective assistance
of trial counsel on the ground that trial counsel
failed to object and properly preserve for review
the trial court proceeding with the guilty plea and
the trial without first conducting a hearing on
Fergerson's competence.   (C. 69-73)

On January 26, 2006, Fergerson filed a somewhat

confusing pleading entitled "Motion To Correct Or

Supplement Rule 32 Petition".   (C. 77)   In the petition he

stated that, if he could raise the claims of effective

assistance of counsel in the Rule 32 proceeding even though

he did not raise them at trial, there was no need to raise

the claims of ineffective assistance of appellate counsel

that he raised in his Rule 32 petition and amendment.   (C.

77-80)

On February 7, 2006, the trial court entered an order

denying the Rule 32 petition.   The court noted that

Fergerson appeared to be raising claims concerning only one

of his trial counsel, William Whatley.   The court stated

9

that it was familiar with Mr. Whatley's professionalism and
trial skill and that Whatley had represented several
defendants in capital murder cases before the court.  The
court found that Whatley was always willing to accept
capital murder appointments and it was the court's opinion
that he had always presented a well prepared and zealous
defense on behalf of his clients.  The court also ruled:

> Furthermore, most of the issues raised by the
> defendant have already been considered by the Court
> of Criminal Appeals in its opinion.  The
> defendant's allegation that the court was without
> jurisdiction to impose sentence is simply without
> merit.  Therefore, the court dismisses all issues
> raised by the defendant.  No material issue of fact
> or law exists which would entitle the petitioner to
> relief under this Rule and no purpose would be
> served by any further proceeding.

(C. 83)  The court also noted that Fergerson did not wish
to proceed against his appellate counsel pursuant to his
motion to correct or supplement the Rule 32 petition.  (C.
82-83)

On February 21, 2006, Fergerson filed an objection and
motion for reconsideration.  He argued that the trial court
was incorrect when it stated that Fergerson was voluntarily
dismissing all of the claims relating to ineffectiveness of
appellate counsel.  (C. 89)  He also pleaded that the trial
court, although noting that attorney Whatley was a

10

competent capital murder attorney, did not state that
Whatley had represented Fergerson in the same manner.   (C.
90)   Fergerson also asserted that part of his claims
involved facts that the court could not have personal
knowledge of and therefore an evidentiary hearing was
warranted.   (C. 90)   He also objected that the claims he
attempted to raise on appeal concerning the voluntariness
of his guilty plea were found to be not properly preserved
by the Court of Criminal Appeals.   (C. 90-91)

On March 13, 2006, the trial court entered an order
setting aside its previous ruling concerning appellate
counsel.   The court ruled that all of the portions of the
order remained in full force and effect.   The court also
ruled that pursuant to Rule 32.9, A.R.Crim.P., in lieu of
an evidentiary hearing, the court would allow the parties
to submit further evidence by affidavits, written
interrogatories, or depositions within 30 days.   (C. 92)
On March 17, 2006, the State filed a response to the
amendment of the Rule 32 petition.   (C. 96-97)   On April
13, 2006, the trial court entered an order finding that
Fergerson's claims of ineffective assistance of appellate
counsel were precluded.   The court also held that neither

trial counsel nor appellate counsel was ineffective in
failing to object to the trial court's alleged failure to
charge on the presumption of evidence, no adverse
inference, expert witnesses, and accomplice liability.  The
court held that outcome of the guilty plea trial would not
have been different even if the allegations regarding the
court's oral instructions were true.  The court's charge as
a whole was adequate and any errors in the charges given
were harmless.  The court also held that trial counsel was
not ineffective concerning the adjudication of Fergerson's
competence.  Further, the court ruled that the record
showed that Fergerson was aware of the range of punishment
– life without parole – that he would receive upon his plea
of guilty and that he understood the consequences of his
guilty plea.  (C. 108-109)

## ISSUE PRESENTED FOR REVIEW

Is this case due to be remanded to the Lee County
Circuit Court for further proceedings?

12

## STANDARD OF REVIEW

The standard of review of a trial court's denial of a Rule 32 petition is abuse of discretion. Grady v. State, 831 So. 2d 646, 648 (Ala. Crim. App. 2001). "Where the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White, 792 So. 2d 1097, 1098 (Ala. 2001).

## SUMMARY OF ARGUMENT

Fergerson argues that the trial court erred when it summarily dismissed his Rule 32 petition. He argues that the court did not sufficiently address all of his claims of ineffective assistance of counsel. He also argues that the trial court erred when it found his claim that his guilty plea to capital murder was not voluntary was precluded, and that his guilty plea was not voluntary, knowing, or intelligent.

This case is due to be remanded to the Lee County Circuit Court. The claim concerning the voluntariness of the guilty plea was not precluded from review. Although the trial court addressed some of the claims related to

13

voluntariness and the record supports the court's ruling
that the claim was meritless for those reasons, the court
did not address an allegation of ineffective assistance of
trial counsel that was relevant to the claim of
voluntariness.   The factual basis for the claim concerns
facts that arose outside the hearing and knowledge of the
trial court; therefore, further proceedings are required to
determine whether counsel's conduct when he advised
Fergerson to plead guilty amounted to ineffective
assistance of counsel that affected the voluntariness of
Fergerson's guilty plea.   This case should be remanded to
the Lee County Circuit Court for further proceedings on the
voluntariness of the guilty plea.


**ARGUMENT**

**This Case Is Due To Be Remanded To The Lee County Circuit
Court For Further Proceedings.**

     Fergerson argues that the trial court erred when it
summarily dismissed his Rule 32 petition.   He also contends
the trial court erred because it did not sufficiently
address each of his claims of ineffective assistance of
counsel.   Further, he argues that his guilty plea to

14

capital murder was not voluntary and the voluntariness
claim was not precluded from review.

Although the trial court addressed most claims, it did
not address a claim of ineffective assistance of counsel
where the factual basis for the claim arose outside the
hearing and knowledge of the trial court.  The trial court
also held that issues concerning the guilty plea, i.e.,
voluntariness of the guilty plea - were presented to the
Court of Criminal Appeals on direct appeal.  The court also
found certain issues concerning the voluntariness of the
guilty plea precluded because they were matters that could
have been presented on appeal, but were not.  (C. 108-109)

Although the trial court ruled that Fergerson could
have raised the issue of the voluntariness of his guilty
plea on appeal, that ruling was incorrect.  Fergerson filed
a pro se motion to withdraw his guilty plea after his
guilty plea and trial for capital murder but did so on the
grounds that he was innocent and that the co-defendant,
Jamarian Thornton, was the one who committed the murder.
Although he attempted to raise on appeal the issue of
voluntariness, this Court ruled that, because the issue had
not been raised in the trial court, it could not be raised

15

for the first time on appeal.  Fergerson v. State, CR-03-0290 (Ala. Crim. App. May 21, 2004).

The trial court also ruled that Fergerson's voluntariness claims could have been brought to the attention of the appeals court on direct appeal, or to the extent they were not presented on appeal, the claims were matters which could have been presented at trial but which were not.  The trial court held that, because Rule 32 is not a substitute for appeal, the claims were precluded. (C. 108)  This ruling was incorrect.

> In Cantu v. State, 660 So. 2d 1026 (Ala. 1994), the Alabama Supreme Court held that a challenge to the voluntariness of a guilty plea is not precluded in a timely filed Rule 32 petition 'even though it was a matter that could have been, but was not, raised in the trial court -- by a timely objection, a timely motion to withdraw the guilty plea, or a timely motion for new trial -- and then pursued on direct appeal.'

Dedeaux v. State, CR-04-0792, 2005 WL 350792, at *2 (Ala. Crim. App. Dec. 23, 2005); Baker v. State, 717 So. 2d 859, 860 (Ala. Crim. App. 1996).  Thus, Fergerson was not precluded from raising the voluntariness claim in a Rule 32 petition although he could have raised it in his motion to withdraw his guilty plea and could have thereafter raised it on appeal.

16

The court addressed some of the allegations concerning the voluntariness claims, finding that the allegations that Fergerson did not know the consequences of his plea of guilty to capital murder or that he was fully aware of his situation when he pleaded guilty to be meritless.  The record supports the ruling of the trial court in these matters and shows that a proper guilty plea colloquy was conducted.  The transcript on direct appeal supports the finding that Fergerson understood the nature of the charge to which he was pleading guilty and understood the consequences of his guilty plea.  Because there was a plea agreement in the case, Fergerson clearly knew that his range of punishment on his plea of guilt to capital murder was life without parole and nothing else.  He was also aware of the charge to which he was pleading because, although he seemed confused about whether he was pleading guilty to robbery or murder, the trial court made a special effort to explain to Fergerson the nature of the charge to assure itself that Fergerson was indeed knowingly pleading guilty to capital murder.  (Fergerson v. State, record on direct appeal at R. 115-127)

The record also shows that, on Fergerson's motion and agreement with the State, he was evaluated for competency to stand trial, his mental state at the time of the alleged offense, and competency to waive his Miranda rights.  The conclusions of the evaluator were that, taking into account Fergerson's age and the fact that he was likely functioning in the mental retardation range, Fergerson understood the nature and seriousness of the charges against him and could assist his attorney in his own defense.  (Fergerson v. State, record on direct appeal, at pg. C. 131-132)  The psychologist who conducted the evaluations took into account the factors Fergerson alleged in his Rule 32 petition that proved he was mentally incompetent to voluntarily and knowingly plead guilty to capital murder. Thus, the record supports the trial court's finding that the claims related to mental competency were meritless. (Fergerson v. State, record on direct appeal, at pgs. C. 126-132)

The trial court, though, did not address the issue concerning trial counsel's alleged coercion of Fergerson to plead guilty to capital murder.  This issue was raised in Fergerson's initial Rule 32 petition.  During the colloquy,

Fergerson told the court that he was not ready to plead guilty to capital murder.  A short recess was held and Fergerson spoke to trial counsel.  The conversations with trial counsel were not recorded in the record.  In his Rule 32 petition Fergerson alleged:

> "Whatley [trial counsel] told the petitioner that everything was set up for the plea, the petitioner stated that he wasn't guilty of murder, and he didn't want to plead guilty to murder, [trial counsel] explained that the court knew that Thornton the petitioner's accomplice was the man who pulled the trigger, it was the petitioner's understanding that Thornton would be found guilty of murder and that he himself would only be accountable for the robbery, [trial counsel] thus coerced the petitioner's plea through misrepresentations.  [trial counsel] also told the petitioner to 'just say yes' to every question during the plea colloquy."

(C. 17-18)

 Fergerson alleged matters concerning counsel making representations and engaging in coercive tactics to force Fergerson to plead guilty to capital murder against his will.  Because the trial judge could not have had personal knowledge of what occurred between trial counsel and Fergerson in their private meeting, he could not have based his order denying the voluntariness claim upon his personal knowledge of the performance of trial counsel.  Ex parte Walker, 800 So. 2d 135, 138 (Ala. 2000).  The trial court

19

did not address the claim; thus, for this reason, this case must be remanded to the trial court for it to conduct further proceedings on the claim that Fergerson did not knowingly and voluntarily enter his plea of guilty to capital murder because counsel coerced him into pleading guilty.

The record also indicates that, as part of a plea agreement, there may have been an agreement where Fergerson waived his right to appeal his guilty plea.  The State argued that the ineffective assistance of counsel claims were not subject to review because of the waiver of the right to appeal.  On remand, the trial court should clarify the record to determine whether, as part of the plea agreement, there was a separate waiver of Fergerson's right to appeal or seek collateral review of his guilty plea. The existence of such an agreement would be relevant to some of the claims that Fergerson raised in his Rule 32 petition and amendment.

Because the trial court did not address all of Fergerson's claims challenging the voluntariness of his guilty plea, and because those claims were not precluded,

20

this case should be remanded to the Lee County Circuit

Court for further proceedings.


## CONCLUSION

Based upon the foregoing, this case should be remanded

for further proceedings.

Respectfully submitted,

Troy King
*Attorney General*
By:


Jack W. Willis
*Assistant Attorney General*


21

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th of May, 2006, I did serve a copy of the foregoing on the attorney for Cannon, by placing the same in the United States Mail, first class, postage prepaid and addressed as follows:

> Gregory Montae Fergerson
> AIS # 231286
> WE Donaldson Correctional Facility
> 100 Warrior Lane
> Bessemer, Alabama 35023-7299

_____
Jack W. Willis
Assistant Attorney General

ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama  36130-0152
(334) 242-7300

133438/93250-001

22

*Willis*
*9 3250*

CR-05-1060

Gregory Mo~~ntae Fergerson~~,

Appellant,

VS.

State of Alabama,

Appellee.

**"REPLY BRIEF OF THE APPELLANT"**

(On appeal from Lee County Circui Court #CC01-128.60)

Gregory Montae Fergerson
#231286/E-66
100 Warrior Lane
Bessemer, AL 25023-7299

## TABLE OF CONTENTS

Table of Contents...............................P 1

Table of Authorities...........................P 1

Summary of Argument............................P 1

Argument........................................P 1

Conclusion.....................................P 3

Certificate of Service.........................P 3

## TABLE OF AUTHORITIES

<u>Pierce v. State</u>, 484 So.2d 506 (Ala.Cr.App. 1985)....P 2

<u>Rumpel v. State</u>, 847 So.2d 399 (Ala.Cr.App. 2002)....P 1

## SUMMARY OF ARGUMENT

Fergerson's claim of an involuntary plea was reiterated on appeal. The circuit court did not address that claim and it is due to be reviewed de novo by this court. Because the guilty plea colloquy clearly shows that Fergerson did not have true notice of the charge against him, the plea is due to be vacated.

Moreover, the case is due to be remanded for the circuit court to adequately address each claim Fergerson raised in his Rule 32 petition.

**ARGUMENT**

**I. This court should address Fergerson's involuntary plea claim de novo or order the trial court to address it on remand.**

The state requests that this court remand this cause for the circuit court to address the merits of Fergerson's claim of ineffective counsel as it relates to the voluntariness of his guilty plea. Fergerson agrees that a remand is in order for that reason. However, Fergerson also raised a separate claim in his Rule 32 petition that his guilty plea was involuntary. That claim was reiterated on appeal to this court. The circuit court did not address that claim because it erroneously found it was precluded. Therefore, this court's review of the claim on appeal is de novo. See Rumplel v. State, 847 So.2d 399, 401 (Ala.Cr.App. 2002)("When the facts are undisputed and an appellate court is presented with pure questions of law, the court's review in a Rule 32 proceeding is de novo.") Quoting Ex parte White, 792 So.2d 1097, 1098 (Ala. 2001).

Notwithstanding the argument presented in his initial brief to this court, Fergerson presents the following in reply to the arguments made by the state in the brief of the appellee.

The state argues that the trial court's ruling regarding the voluntariness of Fergerson's plea were correct because the record shows that Fergerson understood the nature of the charge of capital murder. (State's Brief, p.17). However, as argued above, the circuit court did not address Fergerson's claim , and therefore made no findings of fact as to this claim. Moreover, the record affirmatively shows that Fergerson did not understand the charge of capital murder to which he allegedly pleaded guilty. The transcript of the guilty plea colloquy clearly shows

that Fergerson thought that he was pleading guilty to robbery only. Taking into account the fact that Fergerson's mental evaluation showed he was likely functioning in the mental retardation range, neither the trial court nor defense counselor adequately explained and made ure Fergerson understood the nature of the charge.

It appears that this court's decision in <u>Pierce v. State</u>, 484 So.2d 506 (Ala.Cr.App. 1985) controls here. The colloquy in that case is similar to the instant case. Pierce maintained his innocence of the charge of sexual abuse, although he did admit to "hugging" his daughter and that he may have inadvertently touched her breast. Id. 506-508. Pierce also executed an Ireland form wherein he stated that he understood his rights, etc. After reviewing the colloquy, this court reversed and remanded the case with instructions that the trial court vacate the guilty plea. Similarly, here, Fergerson repeatedly stated that he was guilty of the robbery but **not the murder**. The guilty plea colloquy clearly shows that Fergerson did not inderstand the nature of the charge, even though he signed allegedly signed an Ireland form.[1]  In <u>Pierce</u>, this court held:

> "Accordingly, we hold that the record fails to reveal that Pierce received 'real notice of the true nature of the charge against him' and that, therefore, his plea did not represent 'a voluntary and intelligent choice among the alternative courses of action open to the defendant."

Id. 511. Accordingly, this case is due to be reversed and remanded and the circuit court instructed to vacate Fergerson's guilty plea.

---

[1] Fergerson also alleged in his Rule 32 petition that he could not read until he was taught how in school at his current prison.

2

## II. The case is due to be remanded for the circuit court to adequately address all of Fergerson's claims.

The state appears to argue that the only claim the circuit court should be required to address on remand is Fergerson's ineffective assistance of counsel claim as it relates to the voluntariness of his guilty plea. However, as fully set out in his initial brief to this court, Fergerson avers that the circuit court should be required to address each separate claim that he raised in his Rule 32 petition.

### CONCLUSION

Above considered, Fergerson prays that this court will reverse and remand this case for the circuit court to vacate his guilty plea or that this court will remand the case for the circuit court to adequately address each claim that he raised in his Rule 32 petition.

### CERTIFICATE OF SERVICE

I do hereby certify that a copy of this brief has been served by placing same in the prison mailbox, first class postage prepaid and thusly addressed:

State of Alabama
11 South Union Street
Montgomery, AL 36130

Respectfully Submitted,

*Gregory Fergerson*
Gregory Montae Fergerson

May 30, 2006

3

willis
93250

Gregory Montae Fergerson
# 231286/E-66
100 Warrior Lane
Bessemer, AL 35023-7299

June 26, 2006

IN RE: Fergerson v. State, CR-05-1060

Dear Mr. Willis:

Enclosed please find a copy of my application for rehearing concerning the case above. The Court of Appeals went against your recommendation to remand the case for the trial court to address my claim that my defense counsel coerced my plea through mirepresentations. I am asking for rehearing relying on the decision of Ford v. State, 831 So.2d 641 (Ala.Cr.App. 2001), which holds that when a petitioner makes allegations of misrepresentations of counsel the petitioner must be given an opportunity to present ecidence to meet his burden of proof. This is true even when the Ireland form and plea colloquy appear to contradict the petitioner's claims. Id at 642-44. In my case, the court clearly went against their own holdings.

I want to ask you if you would consider filing a brief in reply to my application for rehearing. To make sure the ends of justice are met, my claim needs to be addressed by the trial court. Rule 40(f), A.R.A.P., allows the opposition to file a brief in reply to an application for rehearing within 14 days of the application's filing. I'm sure you would like to point out to the court that you were correct in asking for a remand order. Think about it.

Thank you for your time.

Sincerely,

Gregory M. Fergerson

93250
Willis

CR-05-1060

"IN THE COURT OF CRIMINAL APPEALS OF ALABAMA"

Gregory Montae Fergerson,

Appellant,

VS.

State of Alabama,

Appellee.

(On appeal from Lee County Circuit Court # CC 01-128.60)

"APPLICATION FOR REHEARING AND BRIEF"

Gregory Montae Fergerson
# 231286/E-66
100 Warrior LAne
Bessemer, AL 35023-7299

## TABLE OF CONTENTS

Table of contents......................................P i

Table of authorities...................................P i

Application for rehearing..............................P ii

   Applicant's additional statement of facts...........P V

Summary of argument....................................P i

Argument...............................................P 2

Conclusion.............................................P 5

Certificate of service.................................P 5

## TABLE OF AUTHORITIES

Henderson v. Morgan, 426 US 637 (1976)..................P 4

North Carolina v. Alford, 400 US 25 (1970)..............P 2

Pierce v. State, 484 So.2d 506 (Ala.Cr.App. 1985).......P 2

Ford v. State, 831 So.2d 641 (Ala.Cr.App. 2001).........P 4

## APPLICATION FOR REHEARING

COMES NOW your applicant Gregory Montae Fergerson ("Fergerson")
and hereby applies to this court for a rehearing concerning
its affirmance of the circuit court's summary dismissal of a
Rule 32, A.R.Cr.P., petition. This court's judgment was issued
on June 16, 2006. In support of this application Fergerson shows
the following:

**I. Fergerson believes this court has misapprehended or overlooked
the following facts and/or points of law:**

(1) This court held that because Fergerson stated that his
attorneys had read and explained the rights and information
on the Ireland form, that he had read the form, that he understod
his rights, that he had signed the form, and that he did not
have any questions about the form, and that Fergerson indicated
he did want the indictment read again to him, or have any further
questions, that Fergerson understood he was pleading guilty
to capital murder, thus his plea was voluntarily entered. (Opin-
ion, p. 3-4). However, this court misapprehended or overlooked
the fact that this court's prior decision in <u>Pierce v. State</u>,
484 So.2d 506 (Ala.Cr.App. 1985), held that it was possible
for a defendant to execute an Ireland form, tell the court that
he understood all the rights explained therein and still not
understand the nature of the charge enough to enter a voluntary
plea. The transcript of the plea colloquy in Fergerson's case
clearly shows that Fergerson had no understanding of the nature
of the charge of capital murder, notwithstanding the signed
Ireland form, etc.

(2)  That this court's present opinion conflicts with control-
ling law as announced by the United States Supreme Court in

Henderson v. Morgan, 426 US 637 (1976). In that case the facts
are indistinguishable from the facts in Fergerson's case. The
defendant, Morgan, like Fergerson was classified as "Retarded".
Id. at 641. He entered a plea to second-degree murder, but be-
cause he was not aware that intent to cause death was an element
of that offense, the Supreme Court held his plea was involuntary.
This court is bound by the decisions of the United States Supreme
Court.

(3) This court held on page 7 of its opinion that Fergerson
had not pled sufficient facts to show that his attorney was
ineffective and coerced him into pleading guilty by telling
Fergerson to "just say yes" to every question during the plea
colloquy and by telling Fergerson that he was only being held
accountable for the robbery element of capital murder.

However, this court overlooked or misapprehended the fact
that all that is required at the pleading stage of a Rule 32
petition is ' a clear and specific statement of the grounds
upon which relief is sought.' Ford v. State, 831 So.2d 641,
644 (Ala.Cr.App. 2001). In Ford, the Rule 32 petitioner alleged
that his plea was involuntary because his defense counsel had
made misrepresentations to him by telling him as part of the
plea agreement he would receive a split sentence.The circuit
court denied the petition without a hearing. This court held
that the transcript of the guilty plea colloquy and the Ireland
form would not automatically refute claims involving misrepre-
sentations of counsel. This court held that Ford had satisfied
hisburden of pleading and was due an opportunity to present
evidence to prove his claim.

(11)

The facts of Ford are indistinguishable from Fergerson's case. Thus, the circuit court should have allowed Fergerson an opportuntiy to prove his claim.

Moreover, the State requested that this court remand the case specifically for the circuit court to address this claim. WHEREFORE, the premises considered, Fergerson prays that this court will grant the application for rehearing, withdraw its June 16, 2006, opinion, and issue an order remanding this case back to the circuit court.

Respectfully Submitted,

_Gregory M. Fergerson_     June 26, 2006
Gregory Montae Fergerson

IV

## APPLICANT'S ADDITIONAL STATEMENT OF FACTS

Although the Court of Criminal Appeals stated in their opinion that Gregory Montae Fergerson ("Fergerson") appeared in court with his attorneys on September 8, 2003, to enter a plea of guilty to capital murder but then changed his mind and requested a trial, the court failed to mention what transpired in the interim between that time and the entry of the guilty plea. (Opinion, p.3). Fergerson's defense counselor, William Watley, told Fergerson that everything was set up for the plea. Fergerson told Watley that He didn't kill anyone, and he was not guilty of murder. Watley then told Fergerson that the court knew that Fergerson's accomplice, Jamarian Thornton, was the one that pulled the trigger. It was Fergerson's understanding, as explained by Watley, that Thornton would be found guilty of the murder and that he himself would only be accountable for the robbery. When Fergerson seemed confused about the proceedings, Watley told him to "just say yes" to every question during the plea proceedings. These facts were alleged by Fergerson in his Rule 32 petition. (C 17-18).

The circuit court did not specifically address the above claim in its order dismissing the petition. (C 81-83). On appeal, Fergerson argued that the circuit court erred in failing to adress this claim. (Fergerson's Brief, p.9-10). The State agreed with Fergerson and requested a remand for the ciruit court to address this claim. (State's Brief, p. 14-21). However, the Court of Criminal Appeals affirmed the trial court's judgment without remanding the case.

Also relevant to the issues at hand is the fact that Fergerson

claimed in his Rule 32 petition that he was a special education student while he was in school, that he had trouble reading, writing, and comprehending what he read. Fergerson also claimed that, although he made it to the twelfth grade, he did not graduate. (C 17). The record supports these assertions. Fergerson was evaluated for competency to stand trial, and although the evaluator found him competent, Fergerson, who was 22 years old at the time, was found to be mentally retarded. (DA. C 131-132)[1].

Although lengthy, the pertinent part of the guilty plea colloquy of September 8, 2003, is critical to an understanding of the issues presented:

"THE COURT: Now has that charge been explained to you by your lawyers?

"Mr. Fergerson: Yes, Sir.

"THE COURT: Do you have any questions about it?

"MR. FERGERSON: No, Sir.

"THE COURT: Do you want me to read that indictment to you again?

"MR. FERGERSON: No, Sir.

"...

"THE COURT: All right. Now, have you discussed the facts and your involvement in this case with your lawyers?

"MR. FERGERSON: Involvement?

"THE COURT: Right, have you talked to your lawyers about this case?

"MR. WATLEY [dfense counsel]: Have you met with us to talk to us about the facts of this case?

---

1- Fergerson requests that this court take judicial notice of its own records in his direct appeal. ("DA."). See Ex parte Salter, 520 So.2d 213, 216-17 (Ala. 1987).

√1

"MR. FERGERSON: Yes, sir.

"THE COURT: Okay. and did you commit the offense of capital murder?

""MR. FERGERSON: Well, the robbery, yes, sir, but the murder , no sir.

"...

"MR. FERGERSON: I participated in the robbery, but I didn't pull the trigger.

"THE COURT: Well, that - that's not the question. Did you commit the offense of capital murder?

"MR. FERGERSON: Yes, sir.

"...

"THE COURT: And are you pleading guilty of your own free will and because you are guilty?

"MR. FERGERSON: I am not guilty of the murder, no, sir.

"MR. WATLEY [defense counsel]: It's a capital murder. You are pleading guilty to capital murder. Not asking to murder.

"THE COURT: Again, I am going to ask you again: Are you pleading guilty of you own free will and because you are guilty?

"MR. FERGERSON: Yes, sir.

"THE COURT: All right...

(DA. R 122-25). (Emphasis added).

   The trial court discussed the applicability of the Habitual

Offender statutes then the following occurred:

"THE COURT: Okay. Now, this question is to the attorneys. Have you conferred with the Defendant and advised him con- cerning the facts in this case and his rights?

"MR. WATLEY: Yes, Your Honor.

"MR. COOPER: Yes, sir.

"THE COURT: Have ya'll explained the nature of the charge to him?

"MR. COOPER: Yes, sir.

"MR. WATLEY: Yes, sir.

vii

"THE COURT: Do you recommend the Court accept his plea?

"MR. WATLEY: Yes, sir, we do.

"MR. COOPER: Yes, sir.

"THE COURT: Have you conferred with him regarding his appellate rights?

"MR. WATLEY: Yes, sir, we have.

"THE COURT: And at this point I think we should wait until we receive the verdict from the jury. And at this time I am not going to ask the allocution, but I will ask you again, Mr. Fergerson, to the charge of capital murder, how do you plead?

"MR. FERGERSON: I plead guilty to the robbery, sir.

"MR. WATLEY: Guilty to -

"THE COURT: Well, that's not the charge. The charge isn't robbery. To the charge of capital murder, how do you plead?

"MR. FERGERSON: I thought the charge was murder and robbery.

THE COURT: It is. It's murder - it's a murder taking place during the course of the robbery. That - that would be the definition of capital murder in your case.

"MR. FERGERSON: I plead guilty to it.

"THE COURT: Okay.

(DA. R 125-27)(Emphasis added).

The plea was then accepted, and Fergerson was sentenced to life without parole. (DA. C 3, R 413). On September 26, 2003, and again on October 17, 2003, Fergerson submitted pro se motions to withdraw his guilty plea. (DA. C 3, 347-349). On November 10, 2003, a hearing was held, although Fergerson's attorneys were present, the record reveals that Fergerson more-or-less represented himself. The court denied his motion. (DA. C 3, 351; R 416).

## SUMMARY OF ARGUMENT

The application for rehearing contained at the beginning of this brief is essentially the summary of the argument and is hereby adopted as same.

**ARGUMENT**

**I. This court misapprehended or overlooked the fact that it is not possible for a defendant to enter a voluntary plea unless he receives real notice of the true nature of the charge against him.**

During the plea colloquy, Fergerson made general statements that he committed the crime of capital murder, however those affirmations were offset by negative statements that he did not commit the murder but committed the robbery only. In <u>Pierce v. State</u>, 484 So.2d 506 (Ala.Cr.App. 1985), this court held that in such a case as Fergerson's the requirements of <u>North Carolina v. Alford</u>, 400 US 25 (1970) must be met, i.e, " a defendant may enter a valid plea of guilty while avowing innocence or refusing or unable to admit commission of the criminal act if the plea is voluntary and intelligently entered and there is a strong showing of actual guilt." <u>Pierce</u>, at 507.

In <u>Pierce</u>, the defendant was charged with first degree sexual abuse of his daughter. During the plea colloquy Pierce admitted to accidentally touching his daughter's breast while hugging her. After much confusion, Pierce finally said he was guilty of the charge. The court asked his attorney if he had been over the facts of the case with Pierce, and the attorney stated he had. The attorney also recommended that the court accept the guilty plea. On the same day Pierce executed an Ireland form.

This court held that, during the colloquy, the trial court did not explain or inform Pierce of the elements of the offense, there was no testimony that Pierce's attorney had explained the elements, and the Ireland form signed by Pierce contained no admission that his attorney had explained the elements and that he understood them. Moreover, that Pierce expressed no

2

understanding of the charge. Finally, that in a simple charge the reading of the indictment would put the defendant on notice of the nature of the charge, however, a reading o Pierce's indictment alone would not have been sufficient because the element of "intent" was not specifically alleged in the indictment. Thus, this court held that under the "totality of the circumstances", Pierce's plea was involuntary. at 508-10.

Similarly, in Fergerson's case, during the plea colloquy the court did not inform Fergerson that intent to kill was an element of capital murder and that although he was not the trigger man, by pleading guilty to capital murder Fergerson was admitting to having the same intent to kill as the actual trigger man. During the colloquy, Fergerson expressed no understanding of the charge whatsoever. He repeatedly stated he committed the robbery only, that he was not guilty of the murder. Moreover, although Fergerson answered "yes" when the court asked him if his lawyers had explained the charge to him, Fergerson also claimed in his Rule 32 petition that his lawyer coerced him into pleading guilty and told him to say "yes" to the court's questions during the colloquy. The transcript of the colloquy clearly shows that Fergerson had no understanding of the nature of the charge. Moreover, a simple reading of Fergerson's indictment was not sufficient because the indictment did not set forth the fact that Fergerson had the same intent to kill as the shooter.

Under the "totality of the circumstances" this court should also consider the fact that Fergerson was found to be mentally retarded. Therefore, under Pierce, Fergerson's plea was not

3

voluntary because he had no understanding of the charge.

**II. This court misapprehended or overlooked the fact that Fergerson's mental capacity coupled with his lack of understanding of the charge holds that his plea was involuntary under the law as established by the United States Supreme Court.**

In Henderson v. Morgan, 426 US 637 (1976), the Supreme Court reviewed a very similar case. The defendant, Morgan, was charge with first degree murder, and he pled guilty to second-degree murder as a lesser included offense. Morgan was classified as retarded, like Fergerson. The court held that because Morgan was unaware of the element of intent, that his plea was involuntary. That court held:

> "There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that [Morgan] had the requisite intent [to kill]. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent. In these circumstances it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary."

Id. at 646. (Emphasis added).

Based the above, Fergerson's plea was involuntary because the plea colloquy clearly shows he had no understanding that he was admitting to having the same intent to kill as the shooter

**III. This court overlooked or misapprehended the fact that Fergerson's claim that his plea was coerced by misrepresentations by his counsel was pleaded properly and he was due an opportunity to prove his claim.**

Fergerson claimed that his attorney misrepresented the facts and nature of the charge to him, specifically that He would only be held accountable for the robbery element of the charge. Further, that his attorney told him to "just say yes" to every question during the plea colloquy. Under this court's decision in Ford v. State, 831 So.2d 641 (Ala.Cr.App. 2001), Fergerson's

4

claim was properly pleaded and required giving Fergerson an opportunity to prove his claim. This court held that in the absence of testimony from counsel, the transcript of the guilty plea colloquy and the Ireland form will automatically refute claims involving misrepresentations of counsel, however, that a petitioner like Fergerson is entitled to an opportunity to present evidence to prove his claim. at 644. Here, Fergerson was not given an opportunity to prove his claim.

### CONCLUSION

Based on the above, the application for rehearing is due to be granted, this court's opinion withdrawn, and the case remanded back to the circuit court.

### CERTIFICATE OF SERVICE

I do hereby certify that a copy of this application has been served on the appellee by placing same in the prison mailbox, first class postage prepaid and thusly addressed:

Jack W. Willis,
Assistant Attorney General
11 South Union Street
Montgomery, AL 36130

Respectfully Submitted,

*Gregory M. Fergerson*
Gregory Montae Fergerson                    June 26, 2006

5